Filing # 166701824 E-Filed 02/13/2023 04:10:07 PM

IN THE CIRCUIT COURT OF THE 20th JUDICIAL CIRCUIT

IN AND FOR COLLIER COUNTY, FLORIDA

CASE NO.

ANTHONY NAINES

and PEGGY NAINES,

        Plaintiffs,

v.

FIRST PROTECTIVE INSURANCE COMPANY d/b/a

FRONTLINE INSURANCE

        Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiffs, ANTHONY NAINES and PEGGY NAINES, by and through undersigned counsel, and hereby sues Defendant, FIRST PROTECTIVE INSURANCE COMPANY d/b/a FRONTLINE INSURANCE, and states:

### GENERAL ALLEGATIONS

1. This action is for breach of contract.

2. This action exceeds $50,000.00, exclusive of attorney's fees and costs.

3. All allegations are at all times material hereto unless otherwise stated.

4. Plaintiffs reside, and Defendant is doing business, in Naples, Collier County Florida.

5. Venue is proper in this court.

6. Defendant insured Plaintiffs' property as follows:

    a.    Address:    4052 Crayton Rd

                               Naples, FL, 34103-3576

    b.    Flood Insurance Policy Number: F-2022-12-10897-000160482

    c.    Homeowner's Insurance Policy Number: FPH3-000118820

7. Plaintiffs' home was damaged by wind and flood which occurred during the policy period on September 28, 2022.

8. Plaintiffs notified Defendant of the resulting loss.

9. Defendant inspected the insured property to determine the loss.

10. Defendant prepared estimates for the loss.

11. Plaintiffs' loss exceeds Defendant's offers.

12. Plaintiffs' losses are covered under the Flood and Homeowner's Insurance Policies.

13. Plaintiffs retained counsel to protect all rights under the policies.

14. Plaintiffs are responsible for all reasonable attorney's fees and costs.

15. Plaintiffs have complied with all conditions precedent to recover under the policies.

## COUNT I:  BREACH OF CONTRACT – FLOOD INSURANCE

16. Allegations 1 through 15 above are adopted and incorporated herein.

17. The parties had a valid policy—i.e., contract. A copy of the Flood Declarations Page is attached as **Exhibit A.**

18. Defendant assigned claim number 384625 to this loss.

19. Defendant offered to pay the amount of its estimate minus the applicable deductible.

20. However, Plaintiffs' loss exceeds Defendant's offer.

21. Defendant materially breached its duty to pay Plaintiffs' loss under the policy.

22. As a result, Plaintiffs have suffered loss and resulting damages.

**WHEREFORE,** Plaintiffs demand (a) judgment against defendant for all damage and resulting loss set forth above, these losses are ongoing and will continue in the future; (b) attorney's fees and costs pursuant to 627.428 (attorney's fees), 57.041 (costs) and 92.231 (expert witness fees), Florida Statutes, or otherwise; and (c) trial by jury.

## COUNT II:  BREACH OF CONTRACT – HOMEOWNERS INSURANCE

23. Allegations 1 through 15 above are adopted and incorporated herein.

24. The parties had a valid policy—i.e., contract. A copy of the Homeowner's Policy is attached as **Exhibit B.**

25. Defendant assigned claim number 01000087448 to this loss.

26. Defendant determined the loss was below the applicable deductible.

27. However, Plaintiffs' loss exceeds Defendant's offer.

28. Defendant materially breached its duty to pay Plaintiffs' loss under the policy.

29. As a result, Plaintiffs have suffered loss and resulting damages.

**WHEREFORE,** Plaintiffs demand (a) judgment against defendant for all damage and resulting loss set forth above, these losses are ongoing and will continue in the future; (b) attorney's fees and costs pursuant to 627.428 (attorney's fees), 57.041 (costs) and 92.231 (expert witness fees), Florida Statutes, or otherwise; and (c) trial by jury.

Dated:  February 13, 2023.

/s/ *Destiny R. Barbosa*
Destiny R. Barbosa, Esq.
Florida Bar No. 1003196
Counsel for Plaintiffs
Keller, Melchiorre & Walsh, PLLC
3900 Military Trail, Suite 600
Jupiter, FL 33458
(561) 295-5825 Telephone
(561) 766-7054 Facsimile
Destiny@KMWLegal.com
pleadings@kmwlegal.com
mbravo@kmwlegal.com



**INSURANCE**

GULF COAST INSURANCE, INC.
7795 DAVIS BLVD. SUITE 205
NAPLES, FL 34104

Agency Phone:    (239) 403-3940

**EXHIBIT A**

| | |
|---|---|
| NFIP Policy Number: | 000016085 |
| Company Policy Number: | F-2022-12-10897-000160482 |
| Agent: | ANGELA ALLEN INACTIVE |
| Payor: | INSURED |
| Policy Term: | 05/31/2022 12:01 AM - 05/31/2023 12:01 AM |
| Policy Form: | DWELLING POLICY |
| To report a claim visit or call us at: | https://fpic.manageflood.com<br>(888) 481-1158 |

## NEW FLOOD INSURANCE POLICY DECLARATIONS
### NATIONAL FLOOD INSURANCE PROGRAM

**DELIVERY ADDRESS**

ANTHONY NAINES / PEGGY NAINES
4052 CRAYTON RD
NAPLES, FL 34103-3576

**INSURED NAME(S) AND MAILING ADDRESS**

ANTHONY NAINES / PEGGY NAINES
4052 CRAYTON RD
NAPLES, FL 34103-3576

**COMPANY MAILING ADDRESS**

FIRST PROTECTIVE INSURANCE
PO BOX 912094
DENVER, CO 80291-2094

**INSURED PROPERTY LOCATION**

4052 CRAYTON RD
NAPLES, FL 34103-3576

| | |
|---|---|
| BUILDING DESCRIPTION: | MAIN DWELLING |
| BUILDING DESCRIPTION DETAIL: | N/A |

**RATING INFORMATION**

| | | | |
|---|---|---|---|
| BUILDING OCCUPANCY: | SINGLE-FAMILY HOME | | |
| NUMBER OF UNITS: | N/A | DATE OF CONSTRUCTION: | 01/01/1987 |
| PRIMARY RESIDENCE: | YES | CURRENT FLOOD ZONE: | AE |
| PROPERTY DESCRIPTION: | SLAB ON GRADE (NON-ELEVATED), 2 FLOOR(S), MASONRY CONSTRUCTION | FIRST FLOOR HEIGHT (FEET): | 1.1 |
| PRIOR NFIP CLAIMS: | 0 CLAIM(S) | FIRST FLOOR HEIGHT METHOD: | FEMA DETERMINED |

**MORTGAGEE / ADDITIONAL INTEREST INFORMATION**

FIRST MORTGAGEE:                                    LOAN NO: N/A

SECOND MORTGAGEE:                                   LOAN NO: N/A

ADDITIONAL INTEREST:                                LOAN NO: N/A

DISASTER AGENCY:                                    CASE NO: N/A
                                                   DISASTER AGENCY:

**RATE CATEGORY — RATING ENGINE**

| | COVERAGE | DEDUCTIBLE |
|---|---|---|
| BUILDING: | $250,000 | $1,250 |
| CONTENTS: | $100,000 | $1,000 |

COVERAGE LIMITATIONS MAY APPLY. SEE YOUR POLICY FORM FOR DETAILS.
Please review this declaration page for accuracy. If any changes are needed, contact your agent.
Notes: The "FULL RISK PREMIUM" is for this policy term only. It is subject to change annually if there is any change in the rating elements. Your property's NFIP flood claims history can affect your premium, for questions please contact your agency. "MITIGATION DISCOUNTS" may apply if there are approved flood vents and/or the machinery & equipment is elevated appropriately. To learn more about your flood risk, please visit FloodSmart.gov/floodcosts.

### COMPONENTS OF TOTAL AMOUNT DUE

| | |
|---|---|
| BUILDING PREMIUM: | $4,204.00 |
| CONTENTS PREMIUM: | $1,945.00 |
| INCREASED COST OF COMPLIANCE (ICC) PREMIUM: | $75.00 |
| MITIGATION DISCOUNT: | ($0.00) |
| COMMUNITY RATING SYSTEM REDUCTION: | ($19.00) |
| FULL RISK PREMIUM: | $6,205.00 |
| ANNUAL INCREASE CAP DISCOUNT: | ($5,485.00) |
| STATUTORY DISCOUNTS: | ($0.00) |
| DISCOUNTED PREMIUM: | $720.00 |
| RESERVE FUND ASSESSMENT: | $130.00 |
| HFIAA SURCHARGE: | $25.00 |
| FEDERAL POLICY FEE: | $47.00 |
| PROBATION SURCHARGE: | $0.00 |
| TOTAL ANNUAL PREMIUM: | $922.00 |

IN WITNESS WHEREOF, I have signed this policy below and hereby enter into this insurance Agreement

*[signature]*

Thomas C. Poppell, III / Vice President of Product Management
This declarations page along with the Standard Flood Insurance Policy Form constitutes your flood insurance policy.

**Zero Balance Due - This Is Not A Bill**

| | | | |
|---|---|---|---|
| Policy issued by: | FIRST PROTECTIVE INSURANCE | Insurer NAIC Number: | 10897 |

File: 18631043    Page 1 of 1    DocID: 162981407

Printed  06/13/2022

**EXHIBIT B**

ANTHONY NAINES, PEGGY NAINES
4052 CRAYTON RD
NAPLES, FL 34103



## DIGITAL CONTENT NOTICE

Please visit https://insured.frontlineinsurance.com/ to view your applicable policy forms and endorsements. If you don't have a login you will need to create one.  Once logged in, click on your policy in the "My Policies" tab and scroll down to "Policy Documents". You have the right to request and obtain, without charge, a paper or electronic copy of your policy and endorsements by contacting your agent or emailing customer service at customerservice@flhi.com.

You may also download the Frontline app to quickly and conveniently view your documents. Scan the QR code below to download our app.



FIM NDR 03 22



**INSURANCE**

# Identity Theft Resolution Coverage

---

**3.3B**

CONSUMERS LOST
MORE THAN $3.3B TO
IDENTITY THEFT
AND FRAUD IN 2020



A NEW VICTIM
OCCURS
EVERY TWO
SECONDS



MORE THAN ONE
IN FOUR ADULTS,
AGED 55 AND OVER,
HAVE EXPERIENCED
IDENTITY THEFT

**GET COVERED TODAY**

Contact your agent to add this valuable
coverage to your policy.

frontlineinsurance.com

# FRONTline
### INSURANCE

HOMEOWNERS POLICY
RENEWAL DECLARATIONS

TRANSACTION DATE:
08/11/2022
DATE ISSUED: 06/17/22

Underwritten by:
First Protective Insurance Co.
PO Box 958405
Lake Mary, FL 32795

| POLICY NUMBER | POLICY PERIOD | |
|---|---|---|
| FPH3-000118820 | From: 08/11/2022 | To: 08/11/2023 |
| | 12:01 AM Standard Time | |

**IF YOU HAVE QUESTIONS ABOUT YOUR POLICY, PLEASE CONTACT YOUR AGENT AT 239-403-3940.**
TO REPORT A CLAIM, CALL 1-800-675-0145.

| INSURED: | AGENCY: | 523-23-20572 |
|---|---|---|
| ANTHONY NAINES, PEGGY NAINES 4052 CRAYTON RD NAPLES, FL 34103 | Gulf Coast Insurance, Inc. 7795 DAVIS BLVD STE 205 NAPLES, FL 34104-5373 | |
| Telephone: 239-643-5667 | Telephone: 239-403-3940 | |
| **LOCATION OF PROPERTY:** | | |
| 4052 CRAYTON RD, NAPLES, FL 34103 | | |

COVERAGE IS PROVIDED WHERE LIMIT OF LIABILITY AND PREMIUM ARE SHOWN.

**POLICY COVERAGES:**

| | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|
| SECTION I - PROPERTY | | |
| **A.** DWELLING | $493,475 | $4,797 |
| **B.** OTHER STRUCTURES | NOT INCLUDED | NOT INCLUDED |
| **C.** PERSONAL PROPERTY | $246,738 | INCLUDED |
| **D.** LOSS OF USE | $98,695 | INCLUDED |

SECTION I LOSSES ARE SUBJECT TO THE FOLLOWING:

ALL OTHER PERILS DEDUCTIBLE EXCEPT HURRICANE: $2,500

## CALENDAR-YEAR HURRICANE DEDUCTIBLE: $9,870 (2% OF COVERAGE A)

| SECTION II - LIABILITY | | |
|---|---|---|
| **E.** PERSONAL LIABILITY | $500,000 | $44 |
| **F.** MEDICAL PAYMENTS TO OTHERS | $5,000 | INCLUDED |

**OPTIONAL COVERAGES:**

| | | |
|---|---|---|
| CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY | $10,000 | $6 |
| INFLATION GUARD | 4% OF DWELLING | $407 |
| LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA (PER OCCURRENCE/AGGREGATE) | $50,000 / $50,000 | $90 |
| LOSS ASSESSMENT COVERAGE | $1,000 | INCLUDED |
| ORDINANCE OR LAW COVERAGE | 25% OF DWELLING | INCLUDED |
| PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT | INCLUDED | $989 |
| WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW COVERAGE | $5,000 | $25 |
| ANIMAL LIABILITY SPECIAL LIMITS | $25,000 | $25 |
| PERSONAL INJURY | INCLUDED | $45 |

**POLICY CREDITS AND CHARGES:**

| | | |
|---|---|---|
| MULTI-POLICY DISCOUNT    ($55.00) | | INCLUDED |
| WIND LOSS REDUCTION CREDIT    ($13,758.00) | | INCLUDED |
| 2022 FLORIDA INSURANCE GUARANTY ASSOCIATION SURCHARGE | | $45 |
| 2022 FLORIDA INSURANCE GUARANTY ASSOCIATION SURCHARGE - JULY | | $83.56 |
| EMERGENCY MANAGEMENT PREPAREDNESS AND ASSISTANCE | | $2 |
| POLICY FEE | | $25 |

| **PREMIUM SUMMARY:** | *** THIS IS NOT A BILL - AN INVOICE WILL BE MAILED SEPARATELY *** | | |
|---|---|---|---|
| **POLICY COVERAGES:** | **OPTIONAL COVERAGES:** | **POLICY CREDIT AND CHARGES:** | **TOTAL ANNUAL PREMIUM:** |
| $4,841.00 | $1,587.00 | $155.56 | $6,583.56 |

# FRONTline
## INSURANCE

HOMEOWNERS POLICY  TRANSACTION DATE: 08/11/2022
RENEWAL DECLARATIONS  DATE ISSUED: 06/17/22

Underwritten by:
First Protective Insurance Co.
PO Box 958405
Lake Mary, FL 32795

| POLICY NUMBER | POLICY PERIOD | |
|---|---|---|
| FPH3-000118820 | From:<br>08/11/2022 | To:<br>08/11/2023 |
| | 12:01 AM Standard Time | |

| INSURED: | AGENCY: | 523-23-20572 |
|---|---|---|
| ANTHONY NAINES, PEGGY NAINES<br>4052 CRAYTON RD<br>NAPLES, FL 34103 | Gulf Coast Insurance, Inc.<br>7795 DAVIS BLVD STE 205<br>NAPLES, FL 34104-5373 | |
| Telephone: 239-643-5667 | Telephone: 239-403-3940 | |
| LOCATION OF PROPERTY: | | |
| 4052 CRAYTON RD, NAPLES, FL 34103 | | |

| The portion of your premium for Hurricane is $5,042 | The Non-Hurricane portion of your premium is $1,542 |
|---|---|

**ADDITIONAL INTERESTS:**

**RATING INFORMATION:**

| | | | | |
|---|---|---|---|---|
| FORM TYPE: HO3 | PROTECTION CLASS: 2 | CONSTRUCTION TYPE:<br>MASONRY | NUMBER OF FAMILIES:<br>1 | TERRITORY: 541 |
| BCEG: 99 | YEAR BUILT: 1987 | OCCUPANCY: OWNER<br>OCCUPIED | USAGE: PRIMARY | |
| PROTECTIVE DEVICE<br>CREDIT: | BURGLAR ALARM: N | FIRE ALARM: N | SPRINKLERS: N | |

**FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY:**

| | | | | | |
|---|---|---|---|---|---|
| FIM NDR (03 22) | WELCOME LETTER<br>E (02 20) | ID THEFT INSERT<br>(11 21) | FP 00 02 (10 08) | FP 00 01 (10 08) | FP 00 03 (10 08) |
| IL P 001 (01 04) | FIM-FL-HO-DEC (01<br>19) | NCPT HO 03 (11 21) | FIM-WLR (04 10) | FIM-OC3 (06 15) | HO 00 03 (05 11) |
| FIM 00 23 (11 21) | FIM 00 51 (05 21) | FIM 00 13 (06 21) | FIM 00 17 (05 21) | FIM 00 19 (05 21) | FIM 00 24 (06 21) |
| FIM 00 29 (05 21) | FIM 00 33 (05 21) | FIM 00 39 (05 21) | FIM 00 42 (05 21) | FIM 00 49 (05 21) | FIM 00 72 (05 21) |
| FIM 03 51 (06 21) | FIM SEN (01 12) | HO 04 46 (10 00) | HO 04 53 (10 00) | HO 04 96 (10 00) | HO 05 99 (05 13) |
| HO 23 86 (05 13) | | | | | |

# *FRONTline*

### INSURANCE

HOMEOWNERS POLICY
RENEWAL DECLARATIONS

TRANSACTION DATE: 08/11/2022
DATE ISSUED: 06/17/22

Underwritten by:
First Protective Insurance Co.
PO Box 958405
Lake Mary, FL 32795

| POLICY NUMBER | POLICY PERIOD | |
|---|---|---|
| FPH3-000118820 | From: 08/11/2022 | To: 08/11/2023 |
| | 12:01 AM Standard Time | |

| INSURED: | AGENCY: | 523-23-20572 |
|---|---|---|
| ANTHONY NAINES, PEGGY NAINES 4052 CRAYTON RD NAPLES, FL 34103 | Gulf Coast Insurance, Inc. 7795 DAVIS BLVD STE 205 NAPLES, FL 34104-5373 | |
| Telephone: 239-643-5667 | Telephone: 239-403-3940 | |
| **LOCATION OF PROPERTY:** | | |
| 4052 CRAYTON RD, NAPLES, FL 34103 | | |

**COUNTERSIGNED BY:** _____

**DATE SIGNED:** 06/17/2022

FRONTLINE WEBSITE:
www.frontlineinsurance.com

FRONTLINE EMAIL:
info@frontlineinsurance.com

FIM-FL-HO-DEC (01/19)                    INSURED COPY                    **Page 3** of 4

# FRONTline

## INSURANCE

| | |
|---|---|
| HOMEOWNERS POLICY<br>RENEWAL DECLARATIONS | TRANSACTION DATE: 08/11/2022<br>DATE ISSUED: 06/17/22 |

Underwritten by:
First Protective Insurance Co.
PO Box 958405
Lake Mary, FL 32795

| POLICY NUMBER | POLICY PERIOD | |
|---|---|---|
| FPH3-000118820 | From:<br>08/11/2022 | To:<br>08/11/2023 |
| | 12:01 AM Standard Time | |

| INSURED: | AGENCY: | 523-23-20572 |
|---|---|---|
| ANTHONY NAINES, PEGGY NAINES<br>4052 CRAYTON RD<br>NAPLES, FL 34103 | Gulf Coast Insurance, Inc.<br>7795 DAVIS BLVD STE 205<br>NAPLES, FL 34104-5373 | |
| Telephone: 239-643-5667 | Telephone: 239-403-3940 | |
| LOCATION OF PROPERTY: | | |
| 4052 CRAYTON RD, NAPLES, FL 34103 | | |

THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

THIS POLICY PROVIDES AN INFLATION GUARD OPTION, THEREFORE, THE ACTUAL CALENDAR YEAR HURRICANE DEDUCTIBLE AMOUNT AT THE TIME OF LOSS MAY BE HIGHER THAN THE DOLLAR AMOUNT SHOWN IN THE DECLARATIONS.

LAW AND ORDINANCE: LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. PLEASE DISCUSS WITH YOUR INSURANCE AGENT.

FLOOD INSURANCE: YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE. YOUR HOMEOWNER'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE FOR DAMAGE RESULTING FROM FLOOD EVEN IF HURRICANE WINDS AND RAIN CAUSED THE FLOOD TO OCCUR. WITHOUT SEPARATE FLOOD INSURANCE COVERAGE, YOU MAY HAVE UNCOVERED LOSSES CAUSED BY FLOOD. PLEASE DISCUSS THE NEED TO PURCHASE SEPARATE FLOOD INSURANCE COVERAGE WITH YOUR INSURANCE AGENT.



**INSURANCE**

## NOTICE OF CHANGE IN POLICY TERMS

The purpose of this Notice Of Change In Policy Terms is to inform you of changes to the terms, coverage, duties and / or conditions of your policy.

## HO 00 03 HOMEOWNERS 3 – SPECIAL FORM

Your policy has implemented a general program revision. The current edition of your policy has been changed to a 05 11 edition and does not reflect any state specific requirements. Some of the significant changes to your policy are described below.

**The definition of "building structure" has been added:**

"Building Structure" means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent loss, using materials such as tarps, plastic sheeting, or other similar material, is still considered a "building structure".

A "building structure" includes:

**a.** The foundation supporting the structure, including:

**(1)** Slabs;

**(2)** Basement walls;

**(3)** Crawl space walls;

**(4)** Footings; and

**(5)** Gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item **a.(1)**, including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

**b.** Wall-to-wall carpeting attached to the structure.

**The definition of "insured" in the policy has been replaced with the following:**

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

**b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a resident of your household who is your relative; or

**c.** Under Section **II**:

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person described in **5.a.** or **b.;** or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**The definition of "insured location" in the policy has been replaced with the following:**

**6.** **"Insured location" means:**

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farmland, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**The definition of "residence premises" in the policy has been replaced with the following:**

**11.** "Residence premises" means:

**a.** The one-family dwelling where you reside;

**b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

**In SECTION I – PROPERTY COVERAGES, under C. Coverage C – Personal Property, the following paragraph 2. is added:**

**2.** **Limit For Property At Other Locations**

**a.** **Other Residences**

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

**(1)** Moved from the "residence premises" because it is:

**(a)** Being repaired, renovated or rebuilt; and

**(b)** Not fit to live in or store property in; or

**(2)** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

**b. Self-storage Facilities**

Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

**(1)** Moved from the "residence premises" because it is:

**(a)** Being repaired, renovated or rebuilt; and

**(b)** Not fit to live in or store property in; or

**(2)** Usually located in an "insured's" residence, other than the "residence premises".

**Paragraphs 4.c., 4.d. and 4.i. are replaced by the following:**

**3. Property Not Covered**

**c.** "Motor vehicles".

This includes a "motor vehicle's" equipment and parts. However, this Paragraph **4.c.** does not apply to:

**(1)** Portable electronic equipment that:

**(a)** Reproduces, receives or transmits audio, visual or data signals; and

**(b)** Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

**(2)** "Motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service a residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**i.** "Business" data, including such data stored in:

**(1)** Books of account, drawings or other paper records; or

**(2)** Computers and related equipment.

We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

**In SECTION I – PROPERTY COVERAGES, under E. Additional Coverages, the following paragraph 1.b. is replaced by the following:**

**1. Debris Removal**

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

**(1)** Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's trees felled by a Peril Insured Against under Coverage **C;**

provided the trees:

**(3)** Damage a covered structure; or

**(4)** Do not damage a covered structure, but:

    **(a)** Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

    **(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**Paragraph 7.c. is replaced by the following:**

**7. Loss Assessment**

    **c.** Paragraph **Q.** Policy Period under Section **I** – Conditions does not apply to this coverage.

**Paragraph 8. Collapse is replaced by the following:**

**8. Collapse**

    **a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

    **b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a "building structure" or any part of a "building structure" with the result that the "building structure" or part of the "building structure" cannot be occupied for its intended purpose.

    **c.** This Additional Coverage – Collapse does not apply to:

        **(1)** A "building structure" or any part of a "building structure" that is in danger of falling down or caving in;

        **(2)** A part of a "building structure" that is standing, even if it has separated from another part of the "building structure"; or

        **(3)** A "building structure" or any part of a "building structure" that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    **d.** We insure for direct physical loss to covered property involving abrupt collapse of a "building structure" or any part of a "building structure" if such collapse was caused by one or more of the following:

        **(1)** The Perils Insured Against named under Coverage **C;**

        **(2)** Decay, of a "building structure" or any part of a "building structure", that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

        **(3)** Insect or vermin damage, to a "building structure" or any part of a "building structure", that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

        **(4)** Weight of contents, equipment, animals or people;

        **(5)** Weight of rain which collects on a roof; or

        **(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

    **e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

    **f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

                              **FL NCPT HO 03 11 21**

In SECTION I – PERILS INSURED AGAINST, Paragraph A. Coverage A – Dwelling and Coverage B – Other Structures is replaced by the following:

**A. Coverage A – Dwelling And Coverage B – Other Structures**

    **1.** We insure against direct physical loss to property described in Coverages **A** and **B**.

    **2.** We do not insure, however, for loss:

        **a.** Excluded under Section **I** – Exclusions;

        **b.** Involving collapse, including any of the following conditions of property or any part of the property:

            **(1)** An abrupt falling down or caving in;

            **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

            **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above;

        except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

        **c.** Caused by:

            **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

                **(a)** Maintain heat in the building; or

                **(b)** Shut off the water supply and drain all systems and appliances of water.

            However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

            For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

            **(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

                **(a)** Fence, pavement, patio or swimming pool;

                **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

                **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

                **(d)** Pier, wharf or dock;

             **(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

            **(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

            **(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, rodents or insects;

**(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(i)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

    **i.** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

    **ii.** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace only that particular part of the "building structure" on the "residence premises", necessary to access the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a "building structure" on the "residence premises". If a loss insured to Coverage **A** property is caused by water, steam, or sewage escaping from a system or appliance, "we" will also pay the reasonable cost "you" incur to tear out and replace only that particular part of the "building structure" necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. "We" will not pay for the cost of repairing or replacing the system or appliance itself. The coverage does not increase the limit applying to Coverage **A** property.

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B.  Coverage C – Personal Property**

**Paragraph 9.b.(4)(c) is replaced by the following:**

**9.  Theft**

   **b.**  This peril does not include loss caused by theft:

   **(4)**  That occurs off the "residence premises" of:

   **(c)**  Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

**Paragraph 12.d. is replaced by the following:**

**12.  Accidental Discharge Or Overflow Of Water Or Steam**

   **d.**  Section I – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**Paragraph 14. Freezing is replaced by the following:**

**14.  Freezing**

   **a.**  This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

   **(1)**  Maintain heat in the building; or

   **(2)**  Shut off the water supply and drain all systems and appliances of water.

   However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   **b.**  In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**Paragraph 15. Sudden And Accidental Damage From Artificially Generated Electrical Current is replaced by the following:**

**15.  Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**In SECTION I – EXCLUSIONS, Paragraph A.2., A3. and A.7. are replaced by the following:**

**A.**  We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**3.  Water**

   This means:

   **a.**  Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

   **b.**  Water which:

   **(1)**  Backs up through sewers or drains; or

**(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section **I –** Conditions.

**In SECTION I – CONDITIONS, section is replaced by the following:**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

**D. Loss Settlement**

In this **Condition D.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11. Ordinance Or Law** under Section I – Property Coverages. Covered property losses are settled as follows:

**1.** Property of the following types:

**a.** Personal property;

**b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

**c.** Structures that are not buildings; and

**d.** Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

    **(1)** The actual cash value of that part of the building damaged; or

    **(2)** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

    **(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

    **(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

    **(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

    **(1)** Less than 5% of the amount of insurance in this policy on the building; and

    **(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**F. Mediation and Appraisal Paragraph 3. Is added as follows:**

**3.** You" and "We" do not waive any rights by demanding or submitting to an appraisal and retain all contractual rights to determine if coverage applies to each item in dispute.

Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

    **a.** Any other questions of fact;

    **b.** Questions of law;

    **c.** Questions of coverage;

    **d.** Other contractual issues; or

    **e.** To conduct appraisal on a class-wide-basis.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F. Appraisal, H. Suit Against Us** and **J. Loss Payment** under Section **I –** Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**S. Loss Payable Clause**

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

**Under SECTION II – EXCLUSIONS, Paragraph A.2. is replaced by the following:**

**A. "Motor Vehicle Liability"**

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service a residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place:

**(a)** On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.;** or

**(b)** Off an "insured location" and the "motor vehicle" is:

**(i)** Designed as a toy vehicle for use by children under seven years of age;

**(ii)** Powered by one or more batteries; and

**(iii)** Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

    **(c)** Cross public roads at designated points to access other parts of the golfing facility; or

    **(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**E.  Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

**Paragraph 1. Expected Or Intended Injury is replaced by the following:**

    **1.  Expected Or Intended Injury**

    "Bodily injury" or "property damage" which is expected or intended by one or more "insureds", even if the resulting "bodily injury" or "property damage":

    **a.**  Is of a different kind, quality or degree than initially expected or intended; or

    **b.**  Is sustained by a different person, entity or property than initially expected or intended.

    However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**Paragraph E.2.b. is replaced by the following:**

    **2.  "Business"**

    **b.**  This Exclusion **E.2.** does not apply to:

    **(1)** The rental or holding for rental of an "insured location";

        **(a)** On an occasional basis if used only as a residence;

        **(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

        **(c)** In part, as an office, school, studio or private garage; and

    **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**Paragraph 8. Controlled Substance is replaced by the following:**

    **8.  Controlled Substance**

    "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

**Paragraph 9. Pollution or Contaminants is added as follows:**

"Bodily injury" or "property damage" arising:

**a.**  Out of the ingestion of paint that has lead in it;

**b.**  Out of the ingestion of paint that has lead compounds in it;

**c.**  Out of the inhalation of paint that has lead in it;

**d.**  Out of the inhalation of paint that has lead compounds in it;

**e.**  From radon, or any other substance that emits radiation; or

**f.**  In any manner (including liability imposed by law) from the discharge, disposal, release or escape of:

    **(1)** Vapors or fumes;

    **(2)** Gas or oil;

    **(3)** Toxic chemicals, liquid or gas;

**(4)** Waste materials; or

**(5)** Irritants, contaminants or pollutants.

All other conditions are the same.

**Paragraph 10. Trampolines is added as follows:**

"Bodily injury" or "property damage" arising out of or relating in any way to:

**a.** The use, maintenance, or repair of a trampoline on the insured premises;

**b.** The use of a trampoline by an insured off of the insured premises;

**c.** The supervision by an insured of trampoline usage on the insured premises; or

**d.** The supervision by an insured of trampoline usage off of the insured premises.

A trampoline is defined as:

**(1)** A rebounding device;

**(2)** Constructed of a resilient sheet or web;

**(3)** Supported by springs in a metal frame; and

**(4)** Used as a springboard and landing area in tumbling and gymnastic springing.

**Paragraph 11. Roofing, Roof Accessories, and Tree Work is added as follows:**

"Bodily injury" or "property damage" arising out of, or related in any way to the performance of roofing work or gutter installation work or to tree cutting, pruning or removal work on the "insured location" by employees of, or those working for or with, persons or companies that were required to be, but were not, licensed to perform said work by all required state or local authorities, including city, town, and/or other municipal, governmental, or administrative bodies.

**Paragraph 12. "Criminal Activity" is added as follows:**

"Bodily injury" or "property damage" caused by, arising out of, or related in any way to criminal acts meaning any and all criminal acts performed by any "insured" regardless of whether the consequences of those acts were expected, intended or anticipated.

**Paragraph 13. "Assault or Battery" is added as follows:**

"Bodily injury" or "property damage" caused by, arising out of, or related in any way to assault or battery committed by or at the direction of an "insured."

**Paragraph 14. "Drone or Other Unmanned Aircraft Or Ship" is added as follows:**

"Bodily injury" or "property damage" arising out of, related in any way to, or resulting from the ownership, maintenance or use of a drone or other unmanned aircraft or ship that can navigate autonomously without human control or beyond line of sight by way of GPS, remote control, or onboard computer.

**Paragraph 15. "Excessive Liability" is added as follows:**

"Bodily injury" or "property damage" arising out of, related in any way to, or resulting from the ownership, maintenance or use, loading or unloading by anyone of:

**a.** any swimming pool slide, diving board, waterfall or similar structure.

**b.** any unfenced or uncovered swimming pool or spa.

**c.** a ramp, bowl, half-pipe or similar structure that is designed for use with bicycles, skateboards, scooters or skates.

**d.** a hoverboard or any other self-balancing two-wheeled scooter.

However, Exclusions **15.c.** and **15.d.** above does not apply when such structure is designed to assist a handicapped person and, at the time of an "occurrence", it is being used to assist a handicapped person.

**F.   Coverage E – Personal Liability**

**Paragraph F.6. is replaced by the following:**

6.  "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

    This exclusion also applies to any claim made or suit brought against you or an "insured" to:

    **a.**  Repay; or

    **b.**  Share damages with;

    another person who may be obligated to pay damages because of "bodily injury" to an "insured".

Paragraph **7.** is added as follows:

7.  Any "personal injury" offense.

**Under SECTION II – ADDITIONAL COVERAGES, Paragraph C.2.e.(3) is replaced by the following:**

**C.  Damage To Property Of Others**

2.  We will not pay for "property damage":

    **e.**  Arising out of:

        **(3)**  The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

        This Exclusion **e.(3)** does not apply to a "motor vehicle" that:

        **(a)**  Is designed for recreational use off public roads;

        **(b)**  Is not owned by an "insured"; and

        **(c)**  At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**Under SECTION II – CONDITIONS, Paragraph A. Limit Of Liability is replaced by the following:**

**A.  Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

**Under SECTION I and II – CONDITIONS, C. Cancellation and D. Nonrenewal are deleted and replaced by the following:**

**C.  Cancellation** is deleted and replaced by the following:

1.  You may cancel this policy at any time by returning it to us or by giving us advance written notice of the date cancellation is to take effect.

2.  If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, we may cancel this policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations, or provided to you electronically if we have your consent and agreement on file to receive documents electronically and you have not withdrawn such consent.

    Proof of mailing, whether by postal mail or electronically as described in the next sentence, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant

to an electronic transaction agreement, or upon directing it to an electronic mailbox that you designate to us for the purpose of receiving mail.

**a.** When you have not paid the premium, we may cancel during this period by letting you know at least 10 days before the date cancellation takes effect.

**b.** If:

**(1)** There has been a material misstatement or fraud related to the claim;

**(2)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

**(3)** We have paid policy limits;

We may cancel during this period by letting you know at least 45 days before the date cancellation takes effect.

**c.** We shall be entitled to collect any additional premium required to keep the policy in effect for this period.

However, this provision **C.2.c.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**3.** If the conditions described in Paragraph **C.2.** do not apply, we may cancel only for the following reasons:

**a.** When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

**b.** We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice:

**(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**(2)** When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

**(a)** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(b)** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**(c)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

Except as provided in Paragraphs **C.3.a.** and **C.3.b.(1)** of this provision, we will let you know of our action at least 20 days before the date cancellation takes effect.

**(3)** When this policy has been in effect for more than 90 days, we may cancel:

**(a)** If there has been a material misstatement;

**(b)** If the risk has changed substantially since the policy was issued;

**(c)** In the event of failure to comply, within 90 days of the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

**(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

**(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(f)** On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

We will provide written notice at least 120 days before the date cancellation takes effect.

**(4)** When this policy has been in effect for more than 90 days, we may not cancel:

**(a)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured"; or

**(b)** On the basis of credit information available in public records.

**4.** If the date of cancellation becomes effective during a "hurricane occurrence":

**a.** The date of cancellation will not become effective until the end of the "hurricane occurrence"; and

**b.** We shall be entitled to collect additional premium for the period beyond the original date of cancellation for which the policy remains in effect.

However, this provision **C.4.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**5.** Notwithstanding any other provision of law, we may cancel this policy after giving you at least 45 days' notice if the Florida Office of Insurance Regulation determines that early cancellation of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition or lack of adequate reinsurance coverage for hurricane risk.

**6.** When this policy is cancelled, the premium for the period of time from the date of cancellation to the expiration date will be refunded pro rata.

**7.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 days after the date cancellation takes effect.

**D.** **Nonrenewal** is deleted and replaced by the following:

**1.** We may elect not to renew this policy. We may do so by letting you know in writing at least 45 days before expiration of the policy. This nonrenewal notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically and you have not withdrawn such consent.

Proof of mailing, whether by postal mail or electronically as described in the next sentence, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox that you designate to us for the purpose of receiving mail.

**a.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, then, during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", we may elect not to renew this policy only if:

**(1)** You have not paid the renewal premium;

**(2)** There has been a material misstatement or fraud related to the claim;

FL NCPT HO 03 11 21

      **(3)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

      **(4)** We have paid policy limits.

   **b.** We shall be entitled to collect any additional premium required to keep the policy in effect during this period.

   However, this provision **D.1.b.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

   **c.** If the conditions described in Paragraph **D.1.a.** do not apply, we may elect to not renew this policy by providing written notice at least 120 days before the expiration date of this policy.

**2.** We will not nonrenew this policy:

   **a.** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

   **b.** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

   **c.** On the basis of filing claims for loss caused by sinkhole damage, unless:

      **(1)** The total of such property claim payments equal or exceed the policy limits of the policy in effect on the date of loss for property damage to the covered building; or

      **(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

   **d.** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

**3.** If the date of nonrenewal becomes effective during a "hurricane occurrence":

   **a.** The expiration date of this policy will not become effective until the end of the "hurricane occurrence"; and

   **b.** We shall be entitled to collect additional premium for the period the policy remains in effect.

   However, this provision **D.3.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**4.** Notwithstanding any other provision of law, we may nonrenew this policy after giving you at least 45 days' notice if the Florida Office of Insurance Regulation determines that early nonrenewal of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition or lack of adequate reinsurance coverage for hurricane risk.

The following Conditions are added:

**H.** **Renewal Notification.** If we elect to renew this policy, we will let you know, in writing:

**1.** Of our decision to renew this policy; and

**2.** The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy.

**I.** **Meetings or Inspections**

If we need access to an insured or claimant or to the insured property, we will provide you or the claimant 48 hours notice before scheduling a meeting or onsite inspection. You or the claimant may

deny access to the property if the notice has not been provided. You or the claimant may waive the 48 hour notice requirement.

**J.  Policy Period.**  This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

**K.  Concealment or Fraud.**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**a.**  Intentionally concealed or misrepresented any material fact or circumstance;

**b.**  Engaged in fraudulent conduct; or

**c.**  Made material false statements;

relating to this insurance.

However, if this policy has been in effect for more than 90 days, we may not deny a claim filed by you or an "insured" on the basis of credit information available in public records.

# SPECIAL PROVISIONS – FLORIDA

Your policy was previously endorsed with form **FIM 00 23 12 16**. That endorsement has been replaced with form **FIM 00 23 11 21**. Some of the significant changes to this form are described below.

| DEFINITIONS |
|---|

**8.**  "Occurrence" is deleted and replaced by the following:

**8.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.**  "Bodily injury"; or

**b.**  "Property damage."

All bodily injuries or property damages that are attributable to or arise out of one cause or a series of similar causes will be added together and will be treated as one occurrence irrespective of the period of time or area over which such losses occur and irrespective of the number of insured persons, injured persons, claims or claimants.

Assault or battery is not an "occurrence," when committed by, or at the direction of, or with the prior knowledge of an "insured."

The following Definitions are added:

**12.**  "Assignee" means a person who is assigned post-loss benefits through an "assignment agreement."

**13.**  "Assignment Agreement" means any instrument by which post-loss benefits under this policy are assigned, transferred, or acquired in any manner, in whole or in part, to or from a person providing services to protect, repair, restore, or replace property, or to mitigate against further damage to the property.

**14.**  "Assignor" means a person who assigns post-loss benefits under this policy to another person through an "assignment agreement."

**15.**  "Diminution in Value" means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

**16.**  "Hurricane Occurrence"

A "hurricane occurrence":

**a.**  Begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

**b.** Continues for the time period during which the hurricane conditions exist anywhere in Florida; and

**c.** Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**17.** "Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**18.** "Vermin" meaning an animal prone to enter into or under a structure, including but not limited to: armadillos, bats, opossums, porcupines, raccoons, skunks.

## SECTION I – PROPERTY COVERAGES

In Form **HO 00 03**:

**A. COVERAGE A – Dwelling** is deleted and replaced by the following:

**1.** We cover:

**a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling;

**b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises;" and

**c.** In-ground swimming pools.

**2.** This coverage does not apply to land, including land on which the dwelling is located.

**B. COVERAGE B – Other Structures** is deleted and replaced by the following:

**1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to in-ground swimming pools.

This coverage does not apply to land, including land on which the other structures are located.

**2.** We do not cover other structures:

**a.** Used in whole or in part for "business"; or

**b.** Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

**3.** The limit of liability for this coverage will not be more than the limit of liability shown in the Declarations for **Coverage B**. Use of this coverage does not reduce the Coverage **A** limit of liability.

**C. COVERAGE C – Personal Property** (In Form **HO 00 04**, this is **B. Coverage C – Personal Property**; in Form **HO 00 06**, this is **A. Coverage C – Personal Property**)

**3. Special Limits of Liability**

Item **a.** is deleted and replaced by the following:

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins medals, scrip, stored value cards. This also includes any virtual currency.

For purposes of this provision, virtual currency means a medium of exchange in electronic or digital format that is not a coin or currency of the United States or any other country.

Item **b.** is deleted and replaced by the following:

**b.** $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps.  This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

The following items are added to **SECTION I – PROPERTY COVERAGES, Coverage C – Personal Property, 3.**:

**l.** $500 is the maximum loss payable for covered property stored in freezers or refrigerators on the "residence premises."

**m.** $1,000, subject to a maximum amount of $250 per item, on all memorabilia and collectibles. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

**n.** $1,000 on portable floating docks.

**o.** $1,000 for loss to art glass windows and other works of art such as, but not limited to:

  **(1)** Statuary (including but not limited to Hummels);

  **(2)** Marbles;

  **(3)** Bronzes;

  **(4)** Porcelains;

  **(5)** Rare glass; and

  **(6)** Bric-a-brac.

**p.** 10% of the total of the **Coverage C – Personal Property** limit for art, including but not limited to paintings, prints, photographs, framed works, rugs, carpet (except wall-to-wall carpet), tapestries, wall-hangings, or any other similar article.  This limit is the total limit per loss for all items in this category.

**q.** $1,000 for bicycles and related equipment.

**r.** 5% of the total of the **Coverage C – Personal Property** limit for any one item of unscheduled personal property.

The following item is amended in **SECTION I – PROPERTY COVERAGES, Coverage C – Personal Property, 4.**:

**k.** Water or steam, or any utility or water bills or expenses for water or steam.

**D. COVERAGE D – Loss Of Use**

In Form **HO 00 03**:

Item **1.** is deleted and replaced by the following:

**1. Additional Living Expenses**

If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.  In either event, the payment(s) will be limited to 24 consecutive months from the date of the covered loss.

Item **2.** is deleted and replaced by the following:

    **2. Fair Rental Value**

If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the Fair Rental Value, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you, less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.  In either event, the payment(s) will be limited to 12 consecutive months from the date of the covered loss.

**B. COVERAGE D – Loss of Use**

In Forms **HO 00 04** and **HO 00 06**:

Item **1.** is deleted and replaced by the following:

    **1. Additional Living Expense**

If a loss by a Peril Insured Against under this policy to covered property or the building containing the property, makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.  In either event, the payment(s) will be limited to 24 consecutive months from the date of the covered loss.

Item **2.** is deleted and replaced by the following:

    **2. Fair Rental Value**

If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the Fair Rental Value, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you, less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.  In either event, the payment(s) will be limited to 12 consecutive months from the date of the covered loss.

**E. Additional Coverages** (In Form **HO 00 04** this is **C. Additional Coverages**; in Form **HO 00 06**, this is **D. Additional Coverages**.)

    **2. Reasonable Repairs** is deleted and replaced by the following:

    **2. Reasonable Emergency Measures.**

      **a.** We will pay up to the greater of $3,000 or 1% of your Coverage A limit of liability for the reasonable costs incurred by you for necessary measures taken solely to protect covered property from further damage when the damage or loss is caused by a Peril Insured Against.

Prior to taking any reasonable emergency measures as outlined in this paragraph **a.**, you must provide any photos, videos, or any other documentation that shows the damaged property, and the cause of loss, and the condition it was in at the time of loss.

      **b.** We will not pay more than the amount in **a.** above, unless you submit a written request for an increase.  We must be allowed to:

        **(1)** Inspect the damage before any work in excess of $3,000 or 1% of Coverage A limit of liability begins; and

        **(2)** Approve the scope and amount of the work before it takes place.

We will respond to you within forty-eight (48) hours of your request to us to exceed the greater of $3,000 or 1% of your Coverage A limit of liability.

c. The written request must include supporting documents and be sent by electronic mail to < email will print>. We will make such determination for an increase above the limit in **a.** above based upon submission of the following supporting documentation:

(1) The date the request is submitted to us;

(2) The identity of all Named Insureds;

(3) The date of loss;

(4) The address where loss occurred;

(5) Description of loss and location of damages;

(6) All photographs, videos, moisture readings, and work logs that demonstrate the damage and work performed up to the time of the request;

(7) Itemized estimate of proposed Reasonable Emergency Measures;

(8) Estimated timeframe of completion;

(9) All other information or documentation reasonably requested.

In such circumstance, we will pay only up to the additional costs for reasonable emergency measures necessary to protect the covered property from further damage that we authorize. Any additional unauthorized costs shall not be paid or payable. If we fail to approve or deny your request within forty-eight (48) hours of such request to us and the damage or loss is caused by a Peril Insured Against, you may exceed the amount in **a.** above to perform the reasonable emergency measures necessary to protect the covered property from further damage, but no more than the reasonable cost.

d. If damage occurs as a result of a covered "Hurricane Occurrence" as defined in your policy, the amount that we pay under this Additional Coverage will be the reasonable cost incurred by you for necessary measures taken solely to protect the property from further damage and is not limited to the amount in **a.** above.

e. A reasonable measure under this Additional Coverage may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.

f. Notwithstanding paragraphs **a.** through **e.** above, if an "assignment agreement" is executed for necessary measures to:

(1) Protect;

(2) Repair;

(3) Restore; or

(4) Replace covered property; or

(5) Mitigate against further damage to the property,

after damage or loss to covered property is caused by a Peril Insured Against, the "assignee" may not receive an assignment of post-loss benefits covered under this policy in excess of:

(1) $3,000, or

(2) 1% of the Coverage A limit of liability;

whichever is greater.

g. This coverage does not:

(1) Increase the limit of liability that applies to the covered property;

(2) Relieve you of your duties, in case of a loss to covered property, as set forth in **SECTION I – CONDITIONS C.**;

     **(3)** Pay for property not covered, or for repairs resulting from a peril not covered, or for loss excluded in this Policy.

**8.** **Collapse** is deleted and replaced by the following:

**8.** **Collapse**

    **a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

    **b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building to a flattened form or to rubble with the result that the building or part of the building cannot be occupied for its intended purpose.

    **c.** This Additional Coverage – Collapse does not apply to:

      **(1)** A building or any part of a building  that is in danger of falling down or caving in;

      **(2)** A part of a building that is standing, even if it has separated from another part of the building; or

      **(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    **d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

      **(1)** The Perils Insured Against named under Coverage C;

      **(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

      **(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

      **(4)** Weight of contents, equipment, animals or people;

      **(5)** Weight of rain which collects on a roof; or

      **(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

    **e.** Loss to an awning, fence, patio, deck, balcony, sidewalk, walk-way, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

    **f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9.** **Glass or Safety Glazing Material** is deleted and replaced by the following:

**9.** **Glass or Safety Glazing Material**

    **a.** We cover:

      **(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

      **(2)** The breakage caused directly by Earth Movement of glass or safety glazing material which is part of a covered building, storm door or storm window; and

      **(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

    **b.** This coverage does not include loss:

      **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this **Additional Coverage 9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

**11. Ordinance Or Law**

The lead-in paragraph of **11.a.** in Forms **HO 00 03** and **HO 00 04** (**10.a.** in Form **HO 00 06**) is deleted and replaced by the following:

**a.** You may use up to the Ordinance or Law percentage shown on the Declarations for the increased costs you incur due to the enforcement of building, zoning, or land use ordinances or laws. This coverage applies if the enforcement is directly caused by the same insured loss and is a covered cause of loss.

This applies to any building, zoning, or land use ordinances which requires or regulates:

Paragraph **d.** is added:

**d.** In the event that there are multiple methods of compliance with the building, zoning, or land use ordinance(s) or law(s) to which this Additional Coverage applies, the limit of liability will be up to the least amount of the available methods of compliance.

## SECTION I – PERILS INSURED AGAINST

Paragraph **A.1.** in Form **HO 00 03** is deleted and replaced by the following:

**1.** We insure for sudden and accidental direct physical loss to covered property described in Coverages **A** and **B** unless the loss is otherwise excluded or limited in this policy. However, loss does not include, and we will not pay for, any "diminution in value."

The first paragraph under **B.** in Form **HO 00 03** (in Form **HO 00 04**, the first paragraph in **SECTION I – PERILS INSURED AGAINST**) is deleted and replaced by the following:

We insure for sudden and accidental direct physical loss to covered property described in Coverage **C** caused by any of the following perils unless the loss is otherwise excluded or limited in this policy. However, loss does not include, and we will not pay for any "diminution in value."

The first paragraph in **SECTION I – PERILS INSURED AGAINST** in Form **HO 00 06** is deleted and replaced by the following:

We insure for sudden and accidental direct physical loss to covered property described in Coverages **A** and **C** caused by any of the following perils unless the loss is otherwise excluded or limited in this policy. However, loss does not include, and we will not pay for any "diminution in value."

In Form **HO 00 06** with **HO 17 32** or with **HO 17 52**, paragraph **1.** Is deleted and replaced by the following:

We insure for sudden and accidental direct physical loss to covered property described in Coverage **A** unless the loss is otherwise excluded or limited in this policy. However, loss does not include, and we will not pay for, any "diminution in value."

In Form **HO 00 03**:

## A.  COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES

Paragraph **2.c.(5)** is deleted and replaced by the following:

**(5)** Repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor, that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

**(c)** Smog, rust, decay or other corrosion;

Paragraph **2.c.(6)(g)** is deleted and replaced by the following:

**(g)** Birds, rodents, insects, "vermin," amphibians, or reptiles;

Paragraph **2.c.(6)(j)** is added as follows;

i. Erosion;

Paragraph **2.c.(6)(k)** is added as follows:

ii. Tree roots, whether or not the tree is located on the land on which the dwelling is located;

Paragraph **2.c.(6)(I)** is added as follows:

iii. The decomposition or deterioration of organic matter or debris.

The **Exception to c.(6)** is deleted and replaced by the following:

**Exception to c.(6)**

If any of these cause water damage not otherwise excluded or limited elsewhere in the policy, from a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and repairing only that particular part of a building or only that particular part of an other structure covered under Coverage **A** or **B** on the "residence premises" necessary to access and repair that  specific point of that system or appliance from which the water escaped.

The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that specific point of that system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not. However, such tear out and repair coverage only applies if the water or steam causes actual damage to a covered building on the "residence premises."

In the event that additional tear out and repair are required beyond the coverage provided for access and repair in the provision immediately above, we will still pay only for our portion of the access and repair cost required to repair only that specific point of that system or appliance that caused the covered loss as described above.

However, we do not cover loss:

**a.** To the system or appliance from which this water or steam escaped;

**b.** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises;"

**c.** To a plumbing system, whether above or below the ground, caused by:

**(1)** Age, collapse, obsolescence, wear, tear;

**(2)** Fading, oxidization, weathering;

**(3)** Deterioration, decay, marring, delamination, crumbling, settling, cracking;

**(4)** Shifting, bulging, racking, sagging, bowing, bending, leaning;

**(5)** Shrinkage, expansion, contraction, bellying, corrosion;

**(6)** The unavailability or discontinuation of a part or component of the system; or

**(7)** Any other age or maintenance-related issue;

**d.** To a plumbing system, whether above or below ground, caused by the impairment, state or condition of the system which prohibits repair or replacement including access, necessary to connect the adjoining parts of appliances, pipes, or system; or

**e.** Otherwise excluded or limited elsewhere in the Policy.

For the purposes of this provision, a plumbing system or household appliance does not include:

**i.** A sump, sump pump, irrigation system, or related equipment; or

**ii.** A roof drain, gutter, down spout, or similar fixtures or equipment.

This coverage does not increase the limit of liability that applies to the damaged covered property

Paragraph **3.** is added as follows:

**3.** If the dwelling where loss or damage occurs has been vacant for more than 30 consecutive days before the loss or damage, we will:

Not pay for any loss or damage caused by any of the following perils, even if they are Covered Causes of Loss:

**a.** Vandalism;

**b.** Sprinkler leakage, unless you have protected the system against freezing;

**c.** Dwelling glass breakage;

**d.** Water damage;

**e.** Theft; or

**f.** Attempted theft.

Dwellings under construction or seasonal and secondary residences are not considered vacant.

**B. COVERAGE C – PERSONAL PROPERTY**

**12. Accidental Discharge Or Overflow Of Water Or Steam**

The following paragraph **12.b.(4)** is replaced by the following:

**(4)** Caused by repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

In Form **HO 00 06**, paragraph **12.a.** is deleted and replaced by the following:

**a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or from within a household appliance. We also pay to tear out and repair only that particular part of a building  owned solely by you which is covered under Coverage **A** on the "residence premises" necessary to access and repair that specific point of that system or appliance from which the water escaped.

The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that specific point of that system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not. However, such tear out and repair coverage only applies if the water or steam causes actual damage to a building owned solely by you which is covered under Coverage **A** on the "residence premises."

In the event that additional tear out and repair are required beyond the coverage provided for access and repair in the provision immediately above, we will still pay only for our portion of the

access and repair cost required to repair only that specific point of that system or appliance that caused the covered loss as described above.

In Form **HO 00 06**, paragraph **12.b.(1)** is deleted and replaced by the following:

**12. Accidental Discharge Or Overflow Of Water Or Steam**

(1) To or within the "residence premises," if the building containing the "residence premises" has been vacant for more than 30 consecutive days immediately before the loss.  A building being constructed is not considered vacant.

In Form **HO 00 06**, paragraph **12.b.(5)** (in Form **HO 00 04**, paragraph **12.b.(4)**) is deleted and replaced by the following:

(5) Caused by repeated seepage or leakage of water or steam, or the presence of condensation of humidity, moisture or vapor that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

In Form **HO 00 06**, the following items are added to **12.b.**

(6) To a plumbing system, whether above or below the ground, caused by:

   (a) Age, collapse, obsolescence, wear, tear;

   (b) Fading, oxidization, weathering;

   (c) Deterioration, decay, marring, delamination, crumbling, settling, cracking;

   (d) Shifting, bulging, racking, sagging, bowing, bending, leaning;

   (e) Shrinkage, expansion, contraction, bellying, corrosion;

   (f) The unavailability or discontinuation of a part or component of the system; or

   (g) Any other age or maintenance-related issue;

(7) To a plumbing system, whether above or below ground, caused by the impairment, state or condition of the system which prohibits repair or replacement including access, necessary to connect the adjoining parts of appliances, pipes, or system; or

(8) Otherwise excluded or limited elsewhere in the Policy.

In Form **HO 00 06** with **HO 17 32** or **HO 17 52**:

Paragraph **2.c.(5)** is deleted and replaced by the following:

(5) Repeated seepage or leakage of water or steam, or the presence of condensation of humidity, moisture or vapor that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

(c) Smog, rust, decay or other corrosion;

Paragraph **2.c.(6)(g)** is deleted and replaced by the following:

(g) Birds, rodents, insects, "vermin," amphibians, or reptiles;

**Exception to c.(6)** is deleted and replaced by the following:

**Exception to c.(6)**

If any of these cause water damage not otherwise excluded or limited elsewhere in the policy, from a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and repairing only that particular part of a building owned solely by you which is covered under Coverage **A** on the "residence premises" necessary to access and repair that specific point of that system or appliance from which the water escaped.

The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that part specific point of that system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not. However, such tear out and repair coverage only applies if the water or steam causes actual damage to a building owned solely by you which is covered under Coverage **A** on the "residence premises."

In the event that additional tear out and repair are required beyond the coverage provided for access and repair in the provision immediately above, we will still pay only for our portion of the access and repair cost required to repair only that specific point of that system or appliance that caused the covered loss as described above.

However, we do not cover loss:

a. To or within the "residence premises" if the building containing the "residence premises" has been vacant for more than 30 consecutive days immediately before the loss.  A building being constructed is not considered vacant;

b. To the system or appliance from which this water or steam escaped;

c. To or within the "residence premises" caused by accidental discharge or overflow which occurs away from the building where the "residence premises" is located; or

d. To a plumbing system, whether above or below the ground, caused by:

(1) Age, collapse, obsolescence, wear, tear;

(2) Fading, oxidization, weathering;

(3) Deterioration, decay, marring, delamination, crumbling, settling, cracking;

(4) Shifting, bulging, racking, sagging, bowing, bending, leaning;

(5) Shrinkage, expansion, contraction, bellying, corrosion;

(6) The unavailability or discontinuation of a part or component of the system; or

(7) Any other age or maintenance-related issue;

e. To a plumbing system, whether above or below ground, caused by the impairment, state or condition of the system which prohibits repair or replacement including access, necessary to connect the adjoining parts of appliances, pipes, or system; or

f. Otherwise excluded or limited elsewhere in the Policy.

For the purposes of this provision, a plumbing system or household appliance does not include:

i. A sump, sump pump, irrigation system, or related equipment; or

ii. A roof drain, gutter, down spout, or similar fixtures or equipment.

This coverage does not increase the limit of liability that applies to the damaged covered property.

## SECTION I – EXCLUSIONS

1. **Ordinance or Law** is deleted and replaced by the following:

1. **Ordinance or Law**, meaning any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion **1.a.** does not apply to the amount of coverage that may be provided for under **Additional Coverages**, **Glass or Safety Glazing Material** or **Ordinance or Law**;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is exclusion **A.1.** in Form **HO 00 03**)

**2.** **Earth Movement** is deleted and replaced by the following:

**2.** **Earth Movement**, meaning:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

Caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss

This exclusion **2.** does not apply to loss by:

**a.** Theft; or

**b.** "Catastrophic ground cover collapse".

(This is Exclusion **A.2.** in Form **HO 00 03**.)

**3.** **Water** is deleted and replaced by the following:

**3.** **Water**

This means:

**a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, storm surge, wave wash, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.** Water which:

**(1)** Backs up through sewers or drains;

**(2)** Backs up or is otherwise discharged from a septic system or drain field, or related equipment or similar systems; or

**(3)** Overflows or is otherwise discharged from:

**(a)** A sump, sump pump, irrigation system, or related equipment; or

**(b)** A roof drain, gutter, down spout, or similar fixtures, or equipment;

**c.** Water below the surface of the ground, including water which exerts pressure on or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool, or other structure; or

**d.** Waterborne material, sewage, or any other substance carried or otherwise moved by any of the water referred to in paragraphs **a.** through **c.** of this Exclusion.

This Exclusion **3.**, applies to, but is not limited to, escape, overflow or discharge for any reason, of water, waterborne material, sewage, or any other substance, from a dam, levee, seawall, or any other boundary or containment system.

This Exclusion **3.** applies regardless of whether any of the above, in **3.a.** through **3.d.**, is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion, or theft resulting from any of the above in paragraphs **a.** through **d.** of this Exclusion is covered.

(This is exclusion **A.3.** in Form **HO 00 03**)

The following Exclusions are added to **SECTION I - EXCLUSIONS**:

**10. "Fungi," Wet Or Dry Rot, Yeast Or Bacteria**

**"Fungi," Wet Or Dry Rot, Yeast Or Bacteria**, meaning the presence, growth, proliferation, spread or any activity of "fungi," wet or dry rot, yeast or bacteria.

This Exclusion does not apply:

**a.** When "fungi," wet or dry rot, yeast or bacteria results from fire or lightning; or

**b.** To the extent coverage is provided for in the "Fungi," Wet Or Dry Rot, Yeast Or Bacteria Additional Coverage under Section **I – Property Coverages** with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi," wet or dry rot, yeast or bacteria is covered.

(This is exclusion **A.10.** in Form **HO 00 03**)

**11. Existing Damage**, meaning:

**a.** Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or

**b.** Claims for damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to policy inception.

This exclusion does not apply in the event of a total loss caused by a Peril Insured Against.

(This is exclusion **A.11.** in the **HO 00 03**)

**12. Repeated seepage or leakage** of water or steam, or the presence or condensation of humidity moisture or vapor that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

(This is exclusion **A.12.** in Form **HO 00 03**)

**13. Criminal Acts or Illegal Activity** meaning any and all criminal or illegal acts:

**a.** Performed by;

**b.** At the direction of; or

**c.** With the knowledge of;

any insured that result in damage to your structure or personal property set forth in your Declarations in Coverages **A, B,** or **C.**

---

**SECTION I – CONDITIONS**

---

**C. Duties After Loss** is deleted and replaced by the following:

**C. Duties After Loss.**

An "assignment agreement" does not change the obligations to perform the duties required under this Policy.

In case of a loss to covered property, you must see that the following are done. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1.  **"Your" Duties After Loss**

    **a.**  Give immediate notice to us or our agent.

    Except for Reasonable Emergency Measures taken under Additional Coverage **2.**, there is no coverage for repairs that begin before the earlier of:

    **(1)**  72 hours after we are notified of the loss;

    **(2)**  The time of loss inspection by us; or

    **(3)**  The time of other approval by us.

    If you unreasonably deny us access to inspect the loss during the period in **a.** above, coverage for repairs beyond Reasonable Emergency Measures begins the earlier of when we are given access to inspect the loss or when we fail to appear at a scheduled loss inspection.

    **b.**  To the degree reasonably possible, retain the damaged property and any photographs of the damaged property; and

    Allow us to inspect, subject to the paragraph above, all damaged property prior to its removal from the "residence premises" and make copies of the photographs.

    **c.**  Notify the police in case of loss by theft.

    **d.**  Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverages.

    **e.**  Protect the property from further damage. The following must be performed:

    **(1)**  Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage **2.**

    A reasonable emergency measure under **5.a.** above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.

    **(2)**  Keep an accurate record of repair expenses.  To the degree reasonably possible, take pictures prior to repairs commencing.

    **f.**  Cooperate with us in the investigation of a claim.

    This includes speaking to and sharing information with us or any person authorized to act on our behalf, and providing documents which can be reasonably obtained by you, to facilitate our investigation of the claim.

    You, any "insured" seeking coverage, or a representative of either of these:

    **(1)**  Must cooperate with our investigation;

    **(2)**  Must not act in any manner that prevents us or any person authorized to act on our behalf, from investigating the claim; and

    **(3)**  May not act in any manner to obstruct our investigation.

    **g.**  Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts, and related documents that justify the figures in the inventory.

    **h.**  As often as we reasonably require:

**(1)** Show us the damaged property and the cause of loss and the condition it was in at the time of loss, if possible, except as to any repairs performed under **SECTION I – PROPERTY COVERAGES, Additional Coverages, 2. Reasonable Emergency Measures;**

**(2)** Provide us with records and documents we request and permit us to make copies;

**(3)** You, and any and all "insureds;" and

Any member, officer, director, partner, or similar representative of the association, corporation, or other entity, if you are the association, corporation, or other entity, who is an "insured;" must:

    **(a)** Submit to examination under oath and recorded statements at the location insured or other reasonable location designated by us, while not in the presence of each other or any other "insured;"

    **(b)** Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement identifying who you are may be provided; and

    **(c)** Sign any transcript of the examinations under oath and recorded statements;

At our request, the examinations will be conducted separately and not in the presence of any other persons except legal representation;

Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us;

**(4)** Permit us to take samples of damaged and undamaged property for inspection, testing, and analysis; and

**(5)** Any and all "insureds" must execute all authorizations for the release of information when requested by us, which we deem relevant to the investigation of your loss.

**(6)** Allow us or any person authorized on our behalf:

    **(a)** Access to the "residence premises;"

    **(b)** To inspect the "residence premises" and to inspect, subject to **2.** above, all damaged property prior to its removal form the "residence premises;" and

    **(c)** To require an "insured" or their representative, or both if reasonably possible, to be present at our inspection and to assist in identifying the damaged property during the inspection;

**(7)** At our request, identify the person or persons with knowledge of how the loss occurred and the extent of damage;

**(8)** For losses covered under Coverage **A** and **B**, allow us to re-inspect, including but not limited to taking photographs and/or video of the property to confirm repairs invoiced by any "assignees(s)" or third parties were completed, or following a supplemental or re-opened claim.

**i.** Submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

**(1)** The description of the loss, including the date and time of the loss, the cause of loss, a description of how the loss occurred, when the loss was discovered, and who discovered the loss;

**(2)** The names of all persons who resided at the insured location at the time of the loss;

**(3)** The interest of all "insureds," "assignees" if any, and all others in the property involved and all liens on the property;

**(4)** Other insurance which may cover the loss;

        

**(5)** Changes in title or occupancy of the property during the term of the policy;

**(6)** Specifications of damage to the dwelling and other structures, including;

  **(a)** Detailed descriptions of the damage to the property;

  **(b)** Repair estimates which show the extent of damage to each item or property;

  **(c)** Estimated amount(s) to repair or replace each item of property; and

  **(d)** Amount(s) of payment made for any temporary or permanent repairs.

Photographs and other supporting documentation that exists should be included to the extent it is reasonable and practical to obtain;

**(7)** The inventory of damaged personal property described in **C.7.** above;

**(8)** Receipts for additional living expenses incurred and records that support the fair rental value; and

**(9)** Evidence or affidavit that support a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**k.** Produce any updates to the documents and information described above, including revised descriptions of loss, scope of loss, estimates, or other supporting information:

**(1)** As this information becomes available, and if additional loss or damage is discovered or incurred; and

**(2)** If you are provided with new estimates or invoices regarding the losses submitted or not submitted in the proof of loss.

The duties above apply regardless of whether you, an "insured" seeking coverage, or a representative of either retains or is assisted by a party who provides legal advice, insurance advice or expert claim advice, regarding an insurance claim under this Policy.

**2.** "Assignee(s)" Duties After Loss

Any agent, representative, "assignee," including any public adjuster, engaged on behalf of you or any "insured," or any member, officer, director, partner, or similar representative of an association, corporation, or other entity, must:

**a.** Give immediate notice to us or our agent.

Except for Reasonable Emergency Measures taken under Additional Coverage **2.**, there is no coverage for repairs that begin before the earlier of:

**(1)** 72 hours after we are notified of the loss;

**(2)** The time of loss inspection by us; or

**(3)** The time of other approval by us.

If you unreasonably deny us access to inspect the loss during the period in **a.** above, coverage for repairs beyond Reasonable Emergency Measures begins the earlier of when we are given access to inspect the loss or when we fail to appear at a scheduled loss inspection.

**b.** To the degree reasonably possible, retain the damaged property and any photographs of the damaged property; and

Allow us to inspect, subject to the paragraph above, all damaged property prior to its removal from the "residence premises" and make copies of the photographs.

**c.** Notify the police in case of loss by theft.

**d.** Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverages.

**e.** Protect the property from further damage. The following must be performed:

**(1)** Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage **2.**

A reasonable emergency measure under **5.a.** above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.

**(2)** Keep an accurate record of repair expenses.  To the degree reasonably possible, take pictures prior to repairs commencing.

**f.** Cooperate with us in the investigation of a claim.

This includes speaking to and sharing information with us or any person authorized to act on our behalf, and providing documents which can be reasonably obtained by you, to facilitate our investigation of the claim.

You, any "insured" seeking coverage, or a representative of either of these:

**(1)** Must cooperate with our investigation;

**(2)** Must not act in any manner that prevents us or any person authorized to act on our behalf, from investigating the claim; and

**(3)** May not act in any manner to obstruct our investigation.

**g.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts, and related documents that justify the figures in the inventory.

**h.** As often as we reasonably require:

**(1)** Show us the damaged property and the cause of loss and the condition it was in at the time of loss, if possible, except as to any repairs performed under **SECTION I – PROPERTY COVERAGES, Additional Coverages, 2. Reasonable Emergency Measures;**

**(2)** Provide us with records and documents we request and permit us to make copies;

**(3)** Any agent, representative, "assignee," including any public adjuster, engaged on behalf of you or any "insured," or any member, officer, director, partner, or similar representative of an association, corporation, or other entity, described in the paragraph above;

must:

**(a)** Submit to examination under oath and recorded statements at the location insured or other reasonable location designated by us, while not in the presence of each other or any other "insured;"

**(b)** Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement identifying who you are may be provided; and

**(c)** Sign any transcript of the examinations under oath and recorded statements;

At our request, the examinations will be conducted separately and not in the presence of any other persons except legal representation;

Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us;

**(4)** Permit us to take samples of damaged and undamaged property for inspection, testing, and analysis; and

**(5)** Any and all "insureds" must execute all authorizations for the release of information when requested by us, which we deem relevant to the investigation of your loss.

**(6)** Allow us or any person authorized on our behalf:

    **(a)** Access to the "residence premises;"

    **(b)** To inspect the "residence premises" and to inspect, subject to **2.** above, all damaged property prior to its removal from the "residence premises;" and

    **(c)** To require an "insured" or their representative, or both if reasonably possible, to be present at our inspection and to assist in identifying the damaged property during the inspection;

**(7)** At our request, identify the person or persons with knowledge of how the loss occurred and the extent of damage;

**(8)** For losses covered under Coverage **A** and **B**, allow us to re-inspect, including but not limited to taking photographs and/or video of the property to confirm repairs invoiced by any "assignees(s)" or third parties were completed, or following a supplemental or re-opened claim.

**i.** Submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

**(1)** The description of the loss, including the date and time of the loss, the cause of loss, a description of how the loss occurred, when the loss was discovered, and who discovered the loss;

**(2)** The names of all persons who resided at the insured location at the time of the loss;

**(3)** The interest of all "insureds," "assignees" if any, and all others in the property involved and all liens on the property;

**(4)** Other insurance which may cover the loss;

**(5)** Changes in title or occupancy of the property during the term of the policy;

**(6)** Specifications of damage to the dwelling and other structures, including:

    **(a)** Detailed descriptions of the damage to the property;

    **(b)** Repair estimates which show the extent of damage to each item or property;

    **(c)** Estimated amount(s) to repair or replace each item of property; and

    **(d)** Amount(s) of payment made for any temporary or permanent repairs.

Photographs and other supporting documentation that exists should be included to the extent it is reasonable and practical to obtain;

**(7)** The inventory of damaged personal property described in **C.7.** above;

**(8)** Receipts for additional living expenses incurred and records that support the fair rental value; and

**(9)** Evidence or affidavit that support a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**j.** Produce any updates to the documents and information described above, including revised descriptions of loss, scope of loss, estimates, or other supporting information:

**(1)** As this information becomes available, and if additional loss or damage is discovered or incurred; and

**(2)** If you are provided with new estimates or invoices regarding the losses submitted or not submitted in the proof of loss.

The duties above apply regardless of whether you, an "insured" seeking coverage, or a representative of either retains or is assisted by a party who provides legal advice, insurance advice or expert claim advice, regarding an insurance claim under this Policy.

**D.  Loss Settlement.**

In Forms **HO 00 03** and **HO 00 06,** the following paragraph is added at the beginning of **D. Loss Settlement**:

We will settle covered property losses according to the following, unless otherwise stated in this policy. However, the valuation of any covered property losses does not include, and we will not pay, any amount for "diminution in value."

In Forms **HO 00 03**:

Paragraph **D.2.a.** is deleted and replaced by the following:

**a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will initially pay the actual cash value of the loss, less any applicable deductible. We will then pay any remaining amounts necessary to perform the actual repair or replacement as work is performed and expenses are incurred, but not more than the least of the following amounts:

**(1)** The limit of liability under this policy that applies to the building;

**(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

**(3)** The necessary amount to repair or replace the damaged building.

If a total loss of the dwelling occurs, the provisions of **D.2.a.** above do not apply and we will pay the full replacement cost without reservation or holdback of any depreciation in value.

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

All repairs performed by repair person(s), contractors, or "assignees" shall not exceed the reasonable and necessary labor, materials, costs, or measures to repair the property, unless otherwise covered by the policy.

In Form **HO 00 04**:

**D. Loss Settlement** is deleted and replaced by the following:

**D. Loss Settlement.**

We will settle covered property losses according to the following, unless otherwise stated in this policy. However, the valuation of any covered property losses does not include, and we will not pay, any amount for "diminution in value."

Covered property losses are settled as follows:

**1.** Personal property at actual cash value at the time of loss but no more than the amount required to repair or replace.

In Form **HO 00 06**:

**D. Loss Settlement**

Paragraph **D.2.** is deleted and replaced by the following:

**2.** **Coverage A – Dwelling**, at the actual cost **to** repair or replace. We will initially pay the actual cash value of the loss, less any applicable deductible. We will then pay any remaining amounts necessary to perform the actual repair or replacement as work is performed and expenses are incurred. If a total loss occurs, we will pay the full replacement cost without reservation or holdback of any depreciation in value.

All repairs performed by repair person(s), contractors, or "assignees" shall not exceed the reasonable and necessary labor, materials, costs, or measures to repair the property, unless otherwise covered by the policy.

In this provision, the terms "repaired" or "replaced" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **D. 10. Ordinance or Law** under **SECTION I – PROPERTY COVERAGES.**

In Forms **HO 00 03**, **HO 00 04** and **HO 00 06**:

**F.** **Appraisal** is deleted and replaced by the following:

**F.** **Mediation or Appraisal.** If you and we fail to agree on the settlement regarding the loss, prior to filing suit, you must notify us of your disagreement in writing so that either may:

**1.** Demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss must be $500 or more, prior to the application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you. We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference.

However, if we fail to appear at a mediation conference, we will pay the actual cash expenses you incur in attending the conference and also pay the mediator's fee for that rescheduled conference.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

**2.** Request an appraisal of the loss if we fail to agree on the amount of the loss.

**a.** A request for appraisal must be in writing and be signed by all Named "Insureds" shown in the Declarations. You must comply with **SECTION I – CONDITIONS, C. Duties After Loss** before making a request for appraisal**.**

At least 10 days before requesting appraisal, the party seeking appraisal must provide the other party with a written estimate of the amount of any dispute that results from the covered cause of loss. The estimate shall include a description of each item of damaged property in dispute as a result of the covered loss, along with the extent of damage and the estimated amount to repair or replace the item.

**b.** In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. To qualify as a competent appraiser, neither the appraiser nor the company that employs the appraiser is entitled to receive a fee that is dependent on the amount of the appraisal award. However, the payment of an hourly or flat fee shall not render an appraiser incompetent under this provision.

**c.** The two appraisers will choose a competent, disinterested umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.

**d.** The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

In all instances, the written report of agreement will be in writing and shall include the following:

**(1)** A detailed list, including the amount to repair or replace, of each specific item included in the award from the appraisal findings;

**(2)** The agreed amount of each item, its replacement cost value and corresponding actual cash value; and

**(3)** The statement of "This award is made subject to the terms and conditions of the policy."

Each party will:

**(a)** Pay its own appraiser, including their costs associated with producing the estimate in **2.a.** of this provision, above; and

**(b)** Bear the other expenses of the appraisal and umpire equally.

**e.** You, we, the appraisers, and the umpire shall be given reasonable and timely access to inspect the property, in accordance with the terms of the policy.

**f.** You" and "We" do not waive any rights by demanding or submitting to an appraisal and retain all contractual rights to determine if coverage applies to each item in dispute.

**g.** Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

**(1)** Any other questions of fact;

**(2)** Questions of law;

**(3)** Questions of coverage;

**(4)** Other contractual issues; or

to conduct appraisal on a class-wide-basis.

**H.** **Suit Against Us** is deleted and replaced by the following

**H.** **Suit Against Us.**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under **Section I** of this policy and the action is started:

**a.** Within 5 years after the date of loss; or

**b.** Within any other applicable statutorily-required timeframe;

whichever is less.

**2.** If you and we fail to agree on the settlement regarding the loss, prior to filing suit, you, must notify us of your disagreement and intent to file suit in writing to allow us an opportunity to exercise our right to request and complete the mediation or appraisal process.

The written notice of intent to file suit must:

**a.** Be delivered to us by one of the following methods:

**(1)** Certified mail to the attention of: <Name Here> at <Street Address Will Print>, <City>, <State> <zip code>; or

**(2)** Electronic mail to: <Email Will Print>.

No fewer than either:

**i.** 10 business days prior to filing suit; or

**ii.** Any other statutorily-required timeframe for notice of intent to initiate litigation;

Whichever is greater.

**b.** Specify all of the following:

**(1)** The amount claimed;

**(2)** The damages in dispute; and

**(3)** A demand;

    **c.** Be signed by all Named "Insureds" shown in the Declarations;

    **d.** If an "assignment agreement" is executed, the "assignee" must, concurrent with this notice and as a precondition to filing suit, provide:

        **(1)** The named insured;

        **(2)** The insurer; and

        **(3)** The "assignor" if not the named insured;

    With a detailed written invoice or estimate of services, including:

        **i.** Itemized information on equipment, materials, and supplies; and

        **ii.** In the case of work performed, proof that the work has been performed in accordance with accepted industry standards.

**3.** If any "assignee(s)" and we fail to agree on the settlement regarding the loss, prior to filing suit, any "assignee(s), must notify us of your disagreement and intent to file suit in writing to allow us an opportunity to exercise our right to request and complete the mediation or appraisal process.

The written notice of intent to file suit must:

    **a.** Be delivered to us by one of the following methods:

        **(1)** Certified mail to the attention of: <Name Here> at <Street Address Will Print>, <City>, <State> <zip code>; or

        **(2)** Electronic mail to: <Email Will Print>.

    No fewer than either:

        **i.** 10 business days prior to filing suit; or
        **ii.** Any other statutorily-required timeframe for notice of intent to initiate litigation;

    Whichever is greater.

    **b.** Specify all of the following:

        **(1)** The amount claimed;

        **(2)** The damages in dispute; and

        **(3)** A demand;

    **c.** Be signed by all Named "Insureds" shown in the Declarations;

    **d.** If an "assignment agreement" is executed, the "assignee" must, concurrent with this notice and as a precondition to filing suit, provide:

        **(1)** The named insured;

        **(2)** The insurer; and

       **(3)** The "assignor" if not the named insured;

    With a detailed written invoice or estimate of services, including:

        **i.** Itemized information on equipment, materials, and supplies; and

        **ii.** In the case of work performed, proof that the work has been performed in accordance with accepted industry standards

**I.** **Our Option** is deleted and replaced by the following:

**I.** **Our Option.**

    **1.** At our option, in lieu of issuing any loss payment, if we choose to exercise our option:

        **a.** For losses settled on an actual cash value basis as outlined in **SECTION I – CONDITIONS, D. Loss Settlement**, we may repair or replace any part of the damaged property with material or property of like kind and quality.

                                                                  **FL NCPT HO 03 11 21**

     **b.**  For losses insured for replacement cost as outlined in **SECTION I – CONDITIONS, D. Loss Settlement**, we may elect to repair or replace any or all of the damaged property with material of like kind and quality without deduction for depreciation.

**2.**  If we choose to exercise our option, we will provide written notice to you no later than 30 days after we receive your signed sworn proof of loss.

    We may invoke our option to repair within the stated time frame after either a supplemental or re-opened claim regardless of whether we invoked our option during the adjustment of the initial claim, or a prior supplemental or re-opened claim.

**3.**  If we choose to exercise our option, you must cooperate with and grant us, or any person authorized to act on our behalf, reasonable access to the property in order for repairs to be made.

**4.**  You are responsible for payment of the deductible stated in your Declarations Page.

**5.**  You must comply with the duties described in **SECTION I – CONDITIONS, C. Duties After Loss.**

**6.**  As often as is reasonably necessary to effectuate repairs, you must:

    **a.**  Provide access to the property;

    **b.**  Execute any necessary city, county, or municipal permits for repairs to be undertaken;

    **c.**  Execute any work authorizations to allow contractors and related parties entry to the property;

    **d.**  Otherwise cooperate with the repairs to the property.

Our right to exercise our option to repair or replace, and our decision to do so is a material part of this contract and under no circumstances relieves you or us of our mutual duties and obligations under this policy.

Any contract entered into between you and any:

**i.**  Repair person(s);

**ii.**  "Assignee(s);"

**iii.**  Contractor(s);or

**iv.**  Other person or company;

To perform repairs or services except reasonable emergency measures in **SECTION I – PROPERTY COVERAGES, Additional Coverages, 2.**, for any loss attributed to a covered peril shall not interfere with this right.

**J.**  **Loss Payment** is deleted and replaced by the following:

**J.**  **Loss Payment.**  We will adjust all losses with you.  We will pay you unless some other person is named in the policy or is legally entitled to receive payment and we have not elected our option to repair.

**1.**  Loss will be payable upon the earlier of the following:

    **a.**  20 days after we receive your proof of loss in compliance with **SECTION I – CONDITIONS, C. Duties After Loss,** paragraph **9,** and reach written agreement with you; or

    **b.**  60 days after we receive your proof of loss in compliance with **SECTION I – CONDITIONS, C. Duties After Loss,** paragraph **9**; and

        **(1)**  There is an entry of a final judgment; or

        **(2)**  There is a filing of an appraisal award or a mediation settlement with us.

    **c.**  If payment is not denied, within 90 days after we receive notice of an initial, reopened or supplemental claim.

    However, this provision **c**. does not apply if factors beyond our control reasonably prevent such payment.

Failure to comply with this provision **c.** does not form the basis of a private cause of action against us.

2. If payment is denied in part, we will pay the undisputed amounts within the same time stated unless we have exercised our option under **SECTION I – CONDITIONS, I.**

3. Payment of a portion of the claim(s) being asserted in a loss under this policy does not act as a waiver of our right to dispute or deny any unpaid portion of any claim(s) that you may assert arose from a loss.

4. Any payment for expenses of engineering reports, professional services, or other expert opinions, reports, or estimates will not be covered or reimbursed unless we first request or approve the report, service, or other opinion.

5. Payments for all losses are deemed made on the date the payment is mailed to the "insured" or any other person named in the policy or legally entitled to receive payment.

6. The preceding paragraph **5.** does not relieve our duty to replace any such payment made by check not yet presented to our bank for payment upon your:

   **a.** Notice to us that you or other such intended payee named on the check are not in physical receipt of such payment; and

   **b.** Request of its reissuance.

7. In no event will we make duplicate payments for the same element of loss because of the "insured's" failure to notify us of the existence of or termination of an "assignment agreement."

**L. Mortgage Clause** in Forms **HO 00 03** and **HO 00 06:**

Paragraph **L.2.a.** is deleted and replaced by the following:

   **a.** Notifies us of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

   This includes immediately notifying us of foreclosure or if foreclosure proceedings have been initiated.

**R. Concealment Or Fraud** is deleted and replaced by the following:

**R. Concealment Or Fraud**

The entire policy will be void if, whether before or after a loss, any "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made material false statements;

relating to this insurance or relating to a claim under this policy.

However, if this policy has been in effect for more than 90 days, we may not terminate the policy on the basis of credit information available in public records.

(This is Condition **Q.** in Form **HO 00 04**)

The following conditions are added to **SECTION I – CONDITIONS** of your policy:

**T. Notice of Claim**

If your policy provides hurricane or windstorm coverage, then a claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm must be given to us in accordance with the terms of this policy and as follows:

   **a.** A claim or reopened claim must be reported within two years after the hurricane first made landfall or a windstorm other than a Hurricane caused the damage, or,

   **b.** A supplemental claim must be reported within three years after the hurricane first made landfall or a windstorm other than a Hurricane caused the damage, and,

**c.** Within any other applicable statutorily-required timeframe;

Whichever is less.

This condition concerning time for submission of claim does not affect any limitation for legal action against us as provided in this policy under the **Suit Against Us** Condition including any amendment to that condition.

(This is Condition **S**. in form **HO 00 04**)

---

## SECTION II – LIABILITY COVERAGES

Under **A. Coverage E – Personal Liability**, the following paragraph is added:

This insurance does not apply to any sums awarded as punitive or exemplary damages.

## SECTION II – EXCLUSIONS

Paragraph **A. "Motor Vehicle Liability," 1.c.(4)** is deleted and replaced by the following:

**(4)** Used for any business purpose.

Paragraph **A. "Motor Vehicle Liability," 2.b.** is deleted and replaced by the following:

**b.** Located on the "residence premises" at the time of an "occurrence" and used solely to service the "residence premises;"

Paragraph **A. "Motor Vehicle Liability," 2.e.(2)** is deleted and replaced by the following:

**(2)** A private residential community that contains the "insured's" "residence premises," provided the community has designated or otherwise permits its private roadways to be used by golf carts and provided the golf cart is being operated by a driver with a valid drivers license and who is at least 16 years of age.

This paragraph is added at the end of Paragraph **A.2.**

However, any coverage provided in **A.2.a.** through **A.2.e.** above does not apply to mopeds and motorized scooters except as provided in **A.2.c.**

Paragraph **B. "Watercraft Liability," 2.c.(1)(b)** is deleted.

Paragraph **B. "Watercraft Liability," 2.c.(2),** items **(b)** through **(d)** are deleted.

Under **E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others:**

Item **1.** is **Expected or Intended Injury** is deleted and replaced by the following :

**1. Expected or Intended Injury**

"Bodily injury" or "property damage" that:

**a.** Was a result of a:

**(1)** Willful and malicious; or

**(2)** Criminal;

act or omission of the "insured;"

**b.** Was intended by the "insured;" or

**c.** Would have been expected by the "insured" based upon a reasonable person standard.

Exclusions **a.** through **c.** above apply to all "bodily injury" or "property damage" even if the:

**i.** "Bodily injury" or "property damage" was sustained by a different person, entity, or property than was expected or intended;

**ii.** "Bodily injury" or "property damage" was a different kind, quality, or degree than was expected or intended;

    **iii.** "Insured" lacked the mental capacity to control his or her conduct;

    **iv.** "Insured" was not charged with or convicted of a criminal act or omission; or

    **v.** "Insured" was impaired by the abuse or mis-use of illegal drugs, legal drugs illegally used, or alcohol;

Item **7. Sexual Molestation, Corporal Punishment, Physical Or Mental Abuse** is deleted and replaced by the following:

    **7. Sexual Molestation, Corporal Punishment, Physical Or Mental Abuse**

    "Bodily injury" or "property damage" arising out of actual or threatened sexual molestation, sexual battery, sexual harassment, corporal punishment, or physical or mental abuse.

    This includes but is not limited to any:

    **a.** Verbal or nonverbal communication;

    **b.** Behavior or conduct with sexual connotations; or

    **c.** Infliction of physical, emotional, or psychological injury or harm;

    whether for gratification, discrimination, intimidation, coercion, or other purposes, regardless of whether such action or resulting injury is alleged to be intentionally or negligently caused, or as a result of violating any criminal statute regulating sexual activity.

The following items are added to **SECTION II – EXCLUSIONS, E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others** of your policy:

    **9. Pollution or Contaminants**

    "Bodily injury" or "property damage" arising:

    **a.** Out of the ingestion of paint that has lead in it;

    **b.** Out of the ingestion of paint that has lead compounds in it;

    **c.** Out of the inhalation of paint that has lead in it;

    **d.** Out of the inhalation of paint that has lead compounds in it;

    **e.** From radon, or any other substance that emits radiation; or

    **f.** In any manner (including liability imposed by law) from the discharge, disposal, release or escape of:

        **(1)** Vapors or fumes;

        **(2)** Gas or oil;

        **(3)** Toxic chemicals, liquid or gas;

        **(4)** Waste materials; or

        **(5)** Irritants, contaminants or pollutants.

    All other conditions are the same.

    **10. Trampolines**

    "Bodily injury" or "property damage" arising out of or relating in any way to:

    **a.** The use, maintenance, or repair of a trampoline on the insured premises;

    **b.** The use of a trampoline by an insured off of the insured premises;

    **c.** The supervision by an insured of trampoline usage on the insured premises; or

    **d.** The supervision by an insured of trampoline usage off of the insured premises.

    A trampoline is defined as:

        **(1)** A rebounding device;

    **(2)** Constructed of a resilient sheet or web;

    **(3)** Supported by springs in a metal frame; and

    **(4)** Used as a springboard and landing area in tumbling and gymnastic springing.

**11. Roofing, Roof Accessories, and Tree Work**

"Bodily injury" or "property damage" arising out of, or related in any way to the performance of roofing work or gutter installation work or to tree cutting, pruning or removal work on the "insured location" for which there is a monetary compensation by employees of, or those working for or with, persons or companies that were required to be, but were not, licensed to perform said work by all required state or local authorities, including city, town, and/or other municipal, governmental, or administrative bodies.

**12. "Criminal Activity"**

"Bodily injury" or "property damage" caused by, arising out of, or related in any way to criminal acts meaning any and all criminal acts performed by, at the direction of, or with the prior knowledge of any "insured" regardless of whether the consequences of those acts were expected, intended or anticipated.

**13. "Assault or Battery"**

"Bodily injury" or "property damage" caused by, arising out of, or related in any way to assault or battery committed by or at the direction of an "insured."

**14. "Drone or Other Unmanned Aircraft Or Ship"**

"Bodily injury" or "property damage" arising out of, related in any way to, or resulting from the ownership, maintenance or use of a drone or other unmanned aircraft or ship that can navigate autonomously without human control or beyond line of sight by way of GPS, remote control, or onboard computer.

**15. "Excessive Liability"** is added as follows:

"Bodily injury" or "property damage" arising out of, related in any way to, or resulting from the ownership, maintenance or use, loading or unloading by anyone of:

    **a.** any swimming pool slide, diving board, waterfall or similar structure.

    **b.** any unfenced or uncovered swimming pool or spa.

    **c.** a ramp, bowl, half-pipe or similar structure that is designed for use with bicycles, skateboards, scooters or skates.

    **d.** a hoverboard or any other self-balancing two-wheeled scooter.

However, Exclusions **15.c.** and **15.d.** above does not apply when such structure is designed to assist a handicapped person and, at the time of an "occurrence", it is being used to assist a handicapped person.

Under **Exclusion F. Coverage E – Personal Liability**, the following paragraph **7.** is added:

    **7.** Any "personal injury" offense.

---

**SECTION II – CONDITIONS**

---

**C. Duties After "Occurrence"** is deleted and replaced by the following:

**C. Duties After Occurrence.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

    **1.** Give written notice to us or our agent as soon as is practical, which sets forth:

      **a.**  The identity of the policy and "insured";

      **b.**  Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

      **c.**  Names and addresses of any claimants and witnesses;

**2.**  As often as we reasonably require:

      **a.**  You, and any and all "insureds;" and

      **b.**  Any member, officer, director, partner, or similar representative of the association, corporation, or other entity, if you are the association, corporation, or other entity, who is an "insured;" and

      **c.**  Any agent, representative, including any public adjuster, engaged on behalf of you or any "insured;" or any member, officer, director, partner, or similar representative of an association, corporation, or other entity, described in the paragraph above;

          must:

          **(1)**  Submit to examination under oath and recorded statements at the location insured or other reasonable location designated by us, while not in the presence of each other or any other insured;"

          **(2)**  Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement identifying who you are may be provided; and

          **(3)**  Sign any transcript of the examinations under oath and recorded statements;

          At our request, the examinations will be conducted separately and not in the presence of any other persons except legal representation;

    Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us;

**3.**  Cooperate with us in the investigation, settlement or defense of any claim or suit;

**4.**  Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

**5.**  At our request, help us:

      **a.**  To make settlement;

      **b.**  To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      **c.**  With the conduct of suits and attend hearings and trials; and

      **d.**  To secure and give evidence and obtain the attendance of witnesses;

**6.**  Under the **SECTION II – ADDITIONAL COVERAGES, C. - Damage to Property of Others** submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

**7.**  No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation, or incur expense other than for first aid to others at the time of the "bodily injury."

**D.**  **Duties of an Injured Person – Coverage F – Medical Payments to Others** is deleted and replaced by the following:

**D.**  **Duties of Person making a claim for "bodily injury" or "property damage."**

    In case of an accident or "occurrence," the person making a claim for "bodily injury" or "property damage" or someone acting for that person will perform the following duties that apply:

  **1.**  Give us written proof of claim, under oath if required, as soon as is practical;

  **2.**  Authorize us to obtain copies of medical reports and records;

3. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

4. As often as we reasonably require:

   a. You, and any and all "insureds;" and

   b. Any member, officer, director, partner, or similar representative of the association, corporation, or other entity, if you are the association, corporation, or other entity, who is an "insured;" and

   c. Any agent, representative, including any public adjuster, engaged on behalf of you or any "insured;" or any member, officer, director, partner, or similar representative of an association, corporation, or other entity, described in the paragraph above;

   must:

   (1) Submit to examination under oath and recorded statements at the location insured or other reasonable location designated by us, while not in the presence of each other or any other insured;"

   (2) Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement identifying who you are may be provided; and

   (3) Sign any transcript of the examinations under oath and recorded statements;

   At our request, the examinations will be conducted separately and not in the presence of any other persons except legal representation;

   Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us.

J. **Concealment or Fraud** is deleted and replaced by the following:

J. **Concealment or Fraud**

The entire policy will be void if, whether before or after a loss, any "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made material false statements;

relating to this insurance or relating to a claim under this policy.

However, if this policy has been in effect for more than 90 days, we may not terminate the policy on the basis of credit information available in public records.

---

**SECTIONS I AND II – CONDITIONS**

---

C. **Cancellation** is deleted and replaced by the following:

1. You may cancel this policy at any time by returning it to us or by giving us advance written notice of the date cancellation is to take effect.

2. If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, we may cancel this policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations, or provided to you electronically if we have your consent and agreement on file to receive documents electronically and you have not withdrawn such consent.

   Proof of mailing, whether by postal mail or electronically as described in the next sentence, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant

to an electronic transaction agreement, or upon directing it to an electronic mailbox that you designate to us for the purpose of receiving mail.

**a.** When you have not paid the premium, we may cancel during this period by letting you know at least 10 days before the date cancellation takes effect.

**b.** If:

**(1)** There has been a material misstatement or fraud related to the claim;

**(2)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

**(3)** We have paid policy limits:

We may cancel during this period by letting you know at least 45 days before the date cancellation takes effect.

**c.** We shall be entitled to collect any additional premium required to keep the policy in effect for this period.

However, this provision **C.2.c.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**3.** If the conditions described in Paragraph **C.2.** do not apply, we may cancel only for the following reasons:

**a.** When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

**b.** We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice:

**(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**(2)** When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

**(a)** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(b)** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**(c)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

Except as provided in Paragraphs **C.3.a.** and **C.3.b.(1)** of this provision, we will let you know of our action at least 20 days before the date cancellation takes effect.

**(3)** When this policy has been in effect for more than 90 days, we may cancel:

**(a)** If there has been a material misstatement;

**(b)** If the risk has changed substantially since the policy was issued;

**(c)** In the event of failure to comply, within 90 days of the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

    **(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

    **(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

    **(f)** On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

We will provide written notice at least 120 days before the date cancellation takes effect.

  **(4)** When this policy has been in effect for more than 90 days, we may not cancel:

    **(a)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured"; or

    **(b)** On the basis of credit information available in public records.

**4.** If the date of cancellation becomes effective during a "hurricane occurrence":

  **a.** The date of cancellation will not become effective until the end of the "hurricane occurrence"; and

  **b.** We shall be entitled to collect additional premium for the period beyond the original date of cancellation for which the policy remains in effect.

However, this provision **C.4.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**5.** Notwithstanding any other provision of law, we may cancel this policy after giving you at least 45 days' notice if the Florida Office of Insurance Regulation determines that early cancellation of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition or lack of adequate reinsurance coverage for hurricane risk.

**6.** When this policy is cancelled, the premium for the period of time from the date of cancellation to the expiration date will be refunded pro rata.

**7.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 days after the date cancellation takes effect.

**D. Nonrenewal** is deleted and replaced by the following:

**D. Nonrenewal.**

  **1.** We may elect not to renew this policy. We may do so by letting you know in writing at least 45 days before expiration of the policy. This nonrenewal notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically and you have not withdrawn such consent.

Proof of mailing, whether by postal mail or electronically as described in the next sentence, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox that you designate to us for the purpose of receiving mail.

  **a.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, then, during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", we may elect not to renew this policy only if:

**(1)** You have not paid the renewal premium;

**(2)** There has been a material misstatement or fraud related to the claim;

**(3)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

**(4)** We have paid policy limits.

**b.** We shall be entitled to collect any additional premium required to keep the policy in effect during this period.

However, this provision **D.1.b.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**c.** If the conditions described in Paragraph **D.1.a.** do not apply, we may elect to not renew this policy by providing written notice at least 120 days before the expiration date of this policy.

**2.** We will not nonrenew this policy:

**a.** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**b.** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

**c.** On the basis of filing claims for loss caused by sinkhole damage, unless:

**(1)** The total of such property claim payments equal or exceed the policy limits of the policy in effect on the date of loss for property damage to the covered building; or

**(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**d.** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

**3.** If the date of nonrenewal becomes effective during a "hurricane occurrence":

**a.** The expiration date of this policy will not become effective until the end of the "hurricane occurrence"; and

**b.** We shall be entitled to collect additional premium for the period the policy remains in effect.

However, this provision **D.3.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**4.** Notwithstanding any other provision of law, we may nonrenew this policy after giving you at least 45 days' notice if the Florida Office of Insurance Regulation determines that early nonrenewal of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition or lack of adequate reinsurance coverage for hurricane risk.

**F. Subrogation** is deleted and replaced by the following:

**Subrogation**

All rights of recovery against any person or business for your damages are automatically transferred to us from you upon our payment to you under any coverage of this policy to the extent of our payment without need to obtain written assignment or transfer of rights from you. You must do nothing after loss to impair our recovery rights. Upon our request, you must sign and deliver all papers and cooperate with us in the prosecution of our subrogated claim.

Subrogation does not apply to Coverage **F.** or Paragraph **C. Damage to Property of Others** under **SECTION II – ADDITIONAL COVERAGES.**

The following Conditions are added:

**H.**  **Renewal Notification.**  If we elect to renew this policy, we will let you know, in writing:

  **1.**  Of our decision to renew this policy; and

  **2.**  The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy.

**I.**  **Meetings or Inspections**

If we need access to an insured or claimant or to the insured property, we will provide you or the claimant 48 hours notice before scheduling a meeting or onsite inspection. You or the claimant may deny access to the property if the notice has not been provided. You or the claimant may waive the 48 hour notice requirement.

**J.**  **Policy Period.**  This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

**K.**  **Change in Ownership, Occupancy, or Usage of "Residence Premises."**

If we have not been notified by you within sixty (60) days of any change in ownership, title, use, or occupancy of the "residence premises," including:

  **1.**  The rental of the "residence premises;"
  **2.**  Vacancy or abandonment of the "residence premises;"

The use of the "residence premises" for any purpose other than a residential unit;

Any loss occurring from the 61st day after such change to the date proper notice is given, will be excluded from coverage. If this occurs, premium will be refunded for the period during which the coverage is suspended.

All other provisions of this policy apply.

## LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE POLICY CHANGE

Your policy was previously endorsed with form **FIM 00 13 05 21**. That endorsement has been replaced with form **FIM 00 13 06 21.**

Your policy has been amended with changes to Additional Coverages and Perils Insured Against.

**In SECTION I – PROPERTY COVERAGES, "Fungi", Wet Or Dry Rot, Or Bacteria, language has been added to read:**
   1.      The total of all loss or costs payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

**In SECTION I – PROPERTY COVERAGES, "Fungi", Wet Or Dry Rot, Or Bacteria, the following paragraph has been revised to read as follows**:
   This coverage does not increase the limit of liability applying to any of the SECTION I – Property Coverages shown in the Declarations to which this coverage applies.

**In SECTION – I PERILS INSURED AGAINST, COVERAGE A – DWELLING and COVERAGE B - OTHER STRUCTURES, the language has been added:**

Paragraph **2.c.(5)** is deleted and replaced by the following:

5.      Repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor, that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

Paragraph **2.c.(6)(g)** is deleted and replaced by the following:

g.      Birds, rodents, insects, "vermin," amphibians, or reptiles;

The **Exception to c.(6)** is deleted and replaced by the following:

**Exception to c.(6)**

If any of these cause water damage not otherwise excluded or limited elsewhere in the policy, from a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and repairing only that particular part of a building or only that particular part of an other structure covered under Coverage **A** or **B** on the "residence premises" necessary to access and repair that specific point of that system or appliance from which the water escaped.

The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that specific point of that system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not. However, such tear out and repair coverage only applies if the water or steam causes actual damage to a covered building on the "residence premises."

In the event that additional tear out and repair are required beyond the coverage provided for access and repair in the provision immediately above, we will still pay only for our portion of the access and repair cost required to repair only that specific point of that system or appliance that caused the covered loss as described above.

However, we do not cover loss:

a.      To the system or appliance from which this water or steam escaped;

b.      On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises;"

c.      To a plumbing system, whether above or below the ground, caused by:

1. Age, collapse, obsolescence, wear, tear;
2. Fading, oxidization, weathering;
3. Deterioration, decay, marring, delamination, crumbling, settling, cracking;
4. Shifting, bulging, racking, sagging, bowing, bending, leaning;
5. Shrinkage, expansion, contraction, bellying, corrosion;
6. The unavailability or discontinuation of a part or component of the system; or
7. Any other age or maintenance-related issue;

d.      To a plumbing system, whether above or below ground, caused by the impairment, state or condition of the system which prohibits repair or replacement including access, necessary to connect the adjoining parts of appliances, pipes, or system; or

e.      Otherwise excluded or limited elsewhere in the Policy.

For the purposes of this provision, a plumbing system or household appliance does not include:

i. A sump, sump pump, irrigation system, or related equipment; or
ii. A roof drain, gutter, down spout, or similar fixtures or equipment.

This coverage does not increase the limit of liability that applies to the damaged covered property.

**SECTION I – PERILS INSURED AGAINST, COVERAGE A – DWELLING and COVERAGE B-OTHER STRUCTURES, Paragraph 2.c.(6)(j) has been removed**.

## <CALENDAR YEAR HURRICANE DEDUCTIBLE (FIXED DOLLAR) WITH SUPPLEMENTAL REPORTING REQUIREMENT – FLORIDA POLICY CHANGE

Your policy was previously endorsed with form **HO 03  52 01 06.** That endorsement has been replaced by form **FIM 03 52 06 21**. Some of the significant changes to this form are described below.

The following deductible language is has been replaced by this policy:

**HURRICANE DEDUCTIBLE**
The deductible for loss caused by a "hurricane" is the Hurricane Deductible as shown in the Schedule above. If a deductible is not shown in the Schedule above, the deductible for Hurricane shown in the Declarations will apply.
In the event of a single loss caused by a "hurricane" during the calendar year, this deductible will apply in place of any other deductible stated in the policy.
For any subsequent loss caused by a "hurricane" during the calendar year, the deductible applied will be the greater of:
      1.     The remaining amount of the Hurricane Deductible; or
      2.     The All Other Perils Deductible amount shown in the Declarations.
In no event will the deductible applied to the loss caused by a "hurricane" be less than the All Other Perils Deductible amount shown in the Declarations. Any deductible applied under a policy not issued by us or an insurer in the same insurer group will not be applied to any loss under this policy.
If you experience "hurricane" losses in the same calendar year, on more than one policy issued by us or an insurer in the same insurer group for the same insured location, the applicable deductible will be the highest amount stated in any one of the policies. If you incurred a "hurricane" loss, any lower deductibles on policies subsequently issued or renewed by us or an insurer in the same insurer group within the same calendar year covering the same property will not apply to loss caused by "hurricane" until January 1 of the following calendar year.
If the renewal or replacement policy provides a lower hurricane deductible than the prior policy and you have not incurred a loss caused by a "hurricane" in that same calendar year, the lower hurricane deductible will take effect on the effective date of the renewal or replacement policy.
The Hurricane Deductible applies only to direct physical loss or damage to covered property caused by wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a "hurricane."
We require that you promptly report any loss or damage caused by a "hurricane" that is below the hurricane deductible so that we may consider the amount of such loss when adjusting claims for subsequent "hurricane" occurrences that occur during the calendar year.
The Hurricane Deductible does not apply to **SECTION I – PROPERTY COVERAGES, Additional Coverages, 7. Loss Assessment** (if a limit for this coverage is shown in the Declarations).

**DEFINITIONS:**
When used in this endorsement:
"Hurricane" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service. The duration of the "hurricane" includes the time period, in Florida:
      1.   Beginning at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;
      2.   Continuing for the time period during which the hurricane conditions exist anywhere in Florida; and

      3.   Ending 72 hours following the termination of the last hurricane watch or hurricane warning for any part of Florida by the National Hurricane Center of the National Weather Service.>

## <CALENDAR YEAR HURRICANE DEDUCTIBLE (PERCENTAGE) WITH SUPPLEMENTAL REPORTING REQUIREMENT – FLORIDA POLICY CHANGE

Your policy was previously endorsed with form **HO 03 51 01 06**. That endorsement has been replaced with form **FIM 03 51 06 21**. Some of the significant changes to this form are described below.

The following deductible language is replaced with the following:

**HURRICANE DEDUCTIBLE** The deductible for loss caused by a "hurricane" is the Hurricane Deductible as shown in the Schedule above. If a deductible is not shown in the Schedule above, the deductible for Hurricane shown in the Declarations will apply.
In the event of a single loss caused by a "hurricane" during the calendar year, this deductible will apply in place of any other deductible stated in the policy.
For any subsequent loss caused by a "hurricane" during the calendar year, the deductible applied will be the greater of:
       1.     The remaining amount of the Hurricane Deductible; or
       2.     The All Other Perils Deductible amount shown in the Declarations.
In no event will the deductible applied to the loss caused by a "hurricane" be less than the All Other Perils Deductible amount shown in the Declarations. Any deductible applied under a policy not issued by us or an insurer in the same insurer group will not be applied to any loss under this policy.

If you experience "hurricane" losses in the same calendar year, on more than one policy issued by us or an insurer in the same insurer group for the same insured location, the applicable deductible will be the highest amount stated in any one of the policies. If you incurred a "hurricane" loss, any lower deductibles on policies subsequently issued or renewed by us or an insurer in the same insurer group within the same calendar year covering the same property will not apply to loss caused by "hurricane" until January 1 of the following calendar year.
If the renewal or replacement policy provides a lower hurricane deductible than the prior policy and you have not incurred a loss caused by a "hurricane" in that same calendar year, the lower hurricane deductible will take effect on the effective date of the renewal or replacement policy.
The Hurricane Deductible applies only to direct physical loss or damage to covered property caused by wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a "hurricane."
We require that you promptly report any loss or damage caused by a "hurricane" that is below the hurricane deductible so that we may consider the amount of such loss when adjusting claims for subsequent "hurricane" occurrences that occur during the calendar year.
The Hurricane Deductible does not apply to **SECTION I – PROPERTY COVERAGES, Additional Coverages, 7. Loss Assessment** (if a limit for this coverage is shown in the Declarations).

**DEFINITIONS:**
When used in this endorsement:
"Hurricane" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service. The duration of the "hurricane" includes the time period, in Florida:
       1.     Beginning at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service


       2.     Continuing for the time period during which the hurricane conditions exist anywhere in Florida; and
       3.     Ending 72 hours following the termination of the last hurricane watch or hurricane warning for any part of Florida by the National Hurricane Center of the National Weather Service. >

## <ORDINANCE OR LAW COVERAGE POLICY CHANGE

Your policy was previously endorsed with form **FIM 00 24 06 07**. That endorsement has been replaced with form **FIM 00 24 06 21**. Some of the significant changes to this form are described below.

Your policy has been amended to reflect revisions made in SECTION 1 – PROPERTY COVERAGES, E. Additional Coverages, 11.

Some of the significant changes to this form are described below.

In **SECTION 1 – ADDITIONAL COVERAGES the** following paragraph has been revised to read as follows:

11.    **Ordinance or Law.**
a.    You may use up to the Ordinance or Law percentage shown on the declarations page for the increased costs you incur due to the enforcement of building, zoning, or land use ordinance or laws. This coverage applies if the enforcement is directly caused by the same insured loss and the requirement is in effect at the time the covered loss occurs.
This applies to any building, zoning, or land use ordinances which requires or regulates:

Paragraph **11.d** has been added to address the applicable limit of coverage for Ordinance or Law.

d.    In the event that there are multiple methods of compliance with the building, zoning, or land use ordinance(s) or law(s) to which this Additional Coverage applies, the limit of liability will be up to the least amount of the available methods of compliance. >

## <GUARDIAN ENDORSEMENT POLICY CHANGE

Your policy was previously endorsed with form **FIM 00 27 09 08**. That endorsement has been replaced with form **FIM 00 27 06 21**. Some of the significant changes to this form are described below.

**Section I – Perils Insured Against** has been replaced with the following:
All paragraphs are deleted and replaced by the following:
We insure against risk of direct loss to property described  in Coverages **A**, **B** and **C**, only if that loss is a  physical loss to property. We do not insure, however, for loss:
1.    Under Coverages **A, B** and **C**:
a.  Excluded under **SECTION I – EXCLUSIONS**;
b.  Involving collapse, including any of the following conditions of property or any part of the property:
1.    An abrupt falling down or caving in;
2.    Loss of structural integrity, including separation of parts of the property or property in danger of  falling down or caving in; or
3.    Any cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion of such condition relates to **(1)** or **(2)** above;
Except as provided in **E.8.** Collapse under **SECTION I – PROPERTY COVERAGES**.
c.  Caused by:
1.    Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household  appliance, or by discharge, leakage or overflow from within the system or appliance  caused by freezing. This exclusion applies only while the  dwelling is vacant, unoccupied or  being constructed, unless you have used reasonable care to:
a.  Maintain heat in the building; or
b.  Shut off the water supply and drain the system and appliances of water;
However, if the building is protected by an automatic fire protective sprinkler system, you must use  reasonable care to continue the water supply and maintain heat in the building for coverage to  apply.
For purposes of this provision, a plumbing system or household appliance does not include a sump, sump  pump or related  equipment or a roof drain, gutter, downspout, or similar fixtures  or equipment;
2.    Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
a.  Fence, pavement, patio or swimming pool;

    b.  Footing, foundation, wall, bulkhead, or any other structure or device that supports all or part of a building or other structure;

    c.  Retaining wall or bulkhead that does not support all or part of a building or other structure; or

    d.  Pier, wharf or dock;

    3.  Theft in or to a dwelling  under construction, or of materials and supplies for use in the construction  until the dwelling is finished and occupied;

    4.  Repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor, that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began;

    5.  Any of the following:

    a.  Wear and tear, marring, deterioration;

    b.  Inherent vice, latent defect;

    c.  Smog, rust or other corrosion, mold, wet or dry rot;

    d.  Smoke from agricultural smudging or operations;

    e.  Discharge, industrial dispersal, seepage, migration, release or escape of pollutants unless  the discharge, dispersal, seepage, migration, release or escape is itself caused by one or more of the Perils Insured Against that would apply under Coverage **C** of the policy form endorsement if were this not attached to the policy form.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

    f.  Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

    g.  Birds, rodents, insects, "vermin," amphibians, or reptiles; or

    h.  Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and repairing only that particular part of a building or only that particular part of another structure covered under Coverage **A** or **B** on the "residence premises" necessary to access and repair that  specific point of that system or appliance from which the water escaped.

The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that specific point of that system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not. However, such tear out and repair coverage only applies if the water or steam causes actual damage to a covered building on the "residence premises."

In the event that additional tear out and repair are required beyond the coverage provided for access and repair in the provision immediately above, we will still pay only for our portion of the access and repair cost required to repair only that specific point of that system or appliance that caused the covered loss as described above.

However, we do not cover loss:

    1.  To the system or appliance from which this water or steam escaped;

    2.  On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises;"

    3.  To a plumbing system, whether above or below the ground, caused by:

     i. Age, collapse, obsolescence, wear, tear;

     ii. Fading, oxidization, weathering;

     iii. Deterioration, decay, marring, delamination, crumbling, settling, cracking;

     iv. Shifting, bulging, racking, sagging, bowing, bending, leaning;

     v. Shrinkage, expansion, contraction, bellying, corrosion;

     vi. The unavailability or discontinuation of a part or component of the system; or

vii. Any other age or maintenance-related issue;

4.    To a plumbing system, whether above or below ground, caused by the impairment, state or condition of the system which prohibits repair or replacement including access, necessary to connect the adjoining parts of appliances, pipes, or system; or

5.    Otherwise excluded or limited elsewhere in the Policy.

For the purposes of this provision, a plumbing system or household appliance does not include:

i. A sump, sump pump, irrigation system, or related equipment; or

ii. A roof drain, gutter, down spout, or similar fixtures or equipment.

This coverage does not increase the limit of liability that applies to the damaged covered property.

Under items **(1)** through **(5)**, any ensuing loss to property described in Coverages **A**, **B** and **C** not excluded or limited in this policy is covered.

2.    Under Coverages **A** and **B**:

a.    Caused by vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

b.    Involving collapse, other than as provided in Additional Coverage **8**. **Collapse**. However, any ensuing loss to property described in Coverages **A** and **B** not excluded or excepted in this policy is covered.

3.    Under Coverage **C** caused by:

a.    Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen, if the theft is:

1.    Committed by an "insured";

2.    From that part of a "residence premises" rented by an "insured" to other than an "insured."

Loss caused by theft that occurs off the "residence premises" of:

1.    Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

2.    Watercraft, and their furnishings, equipment and outboard engines or motors; or

3.    Trailers and campers.

b.    Weight of ice, snow or sleet which causes damage to property contained in a building.

c.    Accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance if this loss is:

1.    To the system or appliance from which the water or steam escaped;

2.    On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

d.    Sudden and accidental damage from artificially generated electrical current to a tube, transistor or similar electronic equipment.

e.    Breakage of eyeglasses, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles other than jewelry, watches, bronzes, cameras and photographic lenses.

However, there is coverage for breakage of the property by or resulting from:

1.    Fire, lightning, windstorm, hail;

2.    Smoke, other than smoke from agricultural smudging or industrial operations;

3.    Explosion, riot, civil commotion;

4.    Aircraft, vehicles, vandalism and malicious mischief, earthquake or volcanic eruption;

5.    Collapse of a building or any part of a building;

6.    Water not otherwise excluded;

7.    Theft or attempted theft; or

8.    Sudden and accidental tearing apart, cracking, burning or bulging of:

a.    A steam or hot water system;

b.  An air conditioning or automatic fire protective sprinkler system; or

c.  An appliance for heating water;

f.  Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

g.  Refinishing, renovating or repairing property other than watches, jewelry and furs;

h.  Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard engines or motors;

i.  Destruction, confiscation or seizure by order of any government or public authority; or

j.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss to property described in Coverage **C** not excluded or excepted in this policy is covered.

**Section I – Conditions** has been replaced with the following:

The following paragraph is added at the beginning of **D. Loss Settlement**:

**D.**  We will settle covered property losses according to the following, unless otherwise stated in this policy. However, the valuation of any covered property losses does not include, and we will not pay, any amount for "diminution in value."

Loss Settlement paragraph **D.1.a.** is deleted.

The following Loss Settlement paragraph **D.3.** is added:

3.  Personal property replacement cost loss settlement:

a.  Covered losses to the following property are settled at replacement cost at the time of the loss:

1.  Coverage **C**; and

2.  If covered in this policy, awnings, outdoor antennas and outdoor equipment, and carpeting and household appliances; whether or not attached to buildings.

b.  This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed loss settlement:

1.  Jewelry;

2.  Furs and garments:

a.  Trimmed with fur; or

b.  Consisting primarily of fur;

3.  Cameras, projection machines, films and related articles of equipment;

4.  Musical equipment and related articles of equipment;

5.  Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

a.  Pens or pencils;

b.  Flasks;

c.  Smoking implements; or

d.  Jewelry; and

6.  Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

c.  **Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1.  Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2.  Memorabilia, souvenirs, collectors' items and similar articles whose age or history contributes to their value.

3.  Articles not maintained in good or workable condition.

4.  Articles that are outdated or obsolete and are stored or not being used.

d.  **Replacement Cost Settlement Condition Loss**

The following loss settlement condition applies to all property described in 1. above: We will pay no more than the least of the following amounts:

1. Replacement cost at  the time of loss without deduction for depreciation;
2. The full cost of repair at the time of  loss;
3. The limit of liability that applies to Coverage **C**, if applicable;
4. Any applicable special limits of liability stated in this policy; or
5. For loss to any item described in **1.b.(1)(6)** above, the limit of liability that applies to the item. >

All other provisions of this policy apply.

# Notice of Premium Discounts for Hurricane Loss Mitigation

## *** Important Information ***
### About Your Personal Residential Insurance Policy
8/11/2022

Dear Homeowner,

Hurricanes have caused tens of billions of dollars in insured damages and predictions of more catastrophic hurricanes making landfall in Florida have triggered increases in insurance premiums to cover potential future losses. Enclosed is information regarding wind loss mitigation that will make your home more resistant to wind and help protect your family during a catastrophic event. In addition to reducing your hurricane wind premium by installing mitigation features, you may also reduce the likelihood of out of pocket expenses, such as your hurricane deductible, you may otherwise incur after a catastrophic event.

**What factors are considered in establishing my premium?**

Your location: The closer a home is to the coast, the more vulnerable it is to damage caused by hurricane winds. This makes the hurricane-wind premium higher than for similar homes in other areas of the state.

Your policy: Your insurance policy is divided into two premiums: one for damage caused by hurricane force winds (hurricane-wind) and one for all other damage (all perils), such as fire.

Your deductible:  Under the law, you are allowed to choose a $500, 2%, 5% or 10% deductible, depending on the actual value of your home. The larger your deductible, the lower your hurricane-wind premium. However, if you select a higher deductible your out-of-pocket expenses in the event of a hurricane claim will be higher.

Improvements to your home: The state requires insurance companies to offer discounts for protecting your home against damage caused by hurricane winds. Securing your roof so it doesn't blow off and protecting your windows from flying debris are the two most cost effective measures you can take to safeguard your home and reduce your hurricane –wind premium. These discounts apply only to the hurricane-wind portion of your policy.

The costs of the improvement projects vary.  Homeowners should contact a licensed contractor for an estimate.  You can find a Certified Contractor in your area by visiting the Florida Department of Business and Professional Regulation online at www.myfloridalicense.com.

Your maximum discount:  Discounts are not calculated cumulatively.  The total discount is not the sum of the individual discounts.  Instead, when one discount is applied, other discounts are reduced until you reach your maximum discount of 83%.

**How can I take advantage of the discounts?**

Homeowners will need a qualified inspector such as a general, building, or residential contractor licensed under Section 489.111, Florida Statutes, or a professional engineer licensed under Section 471.015, Florida Statutes, who has passed the appropriate equivalency test of the Building Code training program as required by Section 553.841, Florida Statutes, or a professional architect licensed under Section 481.213, Florida Statutes, or a building code inspector certified under Section 468.607, to inspect the home to identify potential mitigation measures and verify improvements. For a listing of individuals and/or inspection companies meeting these qualifications contact your insurance agent or insurance company.

**The following is an example of how much you can reduce your insurance premium if you have mitigating features on your home. The example is based on your hurricane-wind premium\* of $5,042.00 which is part of your total annual premium of $6,583.56. Remember, the discounts shown only apply to the hurricane-wind portion of the premium and the discounts for the construction techniques and features listed below are not cumulative.**

**\* Wind mitigation credits apply to that portion of your premium that covers the peril of wind, whether or not a hurricane exists.**

### Homes built prior to the 2001 building code

| Description of Feature | Estimated\* Premium Discount Percent | Estimated\* Annual Premium ($) is **Reduced** by: |
|---|---|---|
| <u>Roof Covering (i.e., shingles or tiles)</u><br>• Meets the Florida Building Code. | .11 | $555 |
| • Reinforced Concrete Roof Deck.<br>(If this feature is installed on your home you most likely will not qualify for any other discount.) | .82 | $4,134 |
| <u>How Your Roof is Attached</u><br>• Using a 2" nail spaced at 6" from the edge of the plywood and 12" in the field of the plywood. | .00 | $0 |
| • Using a 2 1/2" nail spaced at 6" from the edge of the plywood and 12" in the field of the plywood. | .09 | $454 |
| • Using a 2 1/2" nail spaced at 6" from the edge of the plywood and 6" in the field of the plywood. | .09 | $454 |

| | | |
|---|---|---|
| Roof-to-Wall Connection | | |
| • Using "Toe Nails" – defined as three nails driven at an angle through the rafter and into the top roof. | .00 | $0 |
| • Using Clips - defined as pieces of metal that are nailed into the side of the rafter/truss and into the side of the top plate or wall stud. | .35 | $1,765 |
| • Using Single Wraps – a single strap that is attached to the side and/or bottom of the top plate and are nailed to the rafter/truss. | .35 | $1,765 |
| • Using Double Wraps - straps are attached to the side and/or bottom of the top plate and are nailed to the rafter/truss. | .35 | $1,765 |
| Roof Shape | | |
| • Hip Roof – defined as your roof sloping down to meet all your outside walls (like a pyramid). | .47 | $2,370 |
| • Other. | .00 | $0 |
| Secondary Water Resistance (SWR) | | |
| • SWR – defined as a layer of protection between the shingles and the plywood underneath that protects the building if the shingles blow off. | .06 | $303 |
| • No SWR. | .00 | $0 |
| Shutters | | |
| • None. | .00 | $0 |
| • Intermediate Type —shutters that are strong enough to meet half the old Miami-Dade building code standards. | .35 | $1,765 |
| • Hurricane Protection Type -- shutters that are strong enough to meet the current Miami-Dade building code standards. | .44 | $2,218 |

\* Estimate is based on information currently on file and the actual amount may vary.

**Homes built under the 2001 building code or later**

| Description of Feature | Estimated* Premium Discount Percent | Estimated* Annual Premium ($) is **Reduced** by: |
|---|---|---|
| Homes built under the 2001 Florida Building Code or later edition (also including the 1994 South Florida Building Code for homes in Miami-Dade and Broward Counties) are eligible for a minimum 68% discount on the hurricane-wind portion of your premium.  You may be eligible for greater discount if other mitigation features are installed on your home. | | |
| Shutters<br>• None.<br><br>• Intermediate Type —shutters that are strong enough to meet half the old Miami-Dade building code standards.<br><br>• Hurricane Protection Type -- shutters that are strong enough to meet the current Miami-Dade building code standards. | | |
| Roof Shape<br>• Hip Roof – defined as your roof sloping down to meet all your outside walls (like a pyramid).<br><br>• Other. | | |

* Estimate is based on information currently on file and the actual amount may vary.

Alternately and regardless of the year of construction, if you meet the minimum fixture and construction requirements of the 2001 Florida Building Code you have the option to reduce your hurricane-wind deductible from $9,870 to $500.

If you have further questions about the construction techniques and features or other construction techniques and features that could result in a discount, please contact your insurance agent at (239) 403-3940 or First Protective Insurance Co. at 1-877-744-5224.

# Checklist of Coverage

Policy Type:

| Homeowners |
| --- |

Named Insured(s): | ANTHONY NAINES, PEGGY NAINES | Policy Number: | FPH3-000118820 |
| --- | --- | --- | --- |

**The following checklist is for informational purposes only. Florida law prohibits this checklist from changing any of the provisions of the insurance contract which is the subject of this checklist. Any endorsement regarding changes in types of coverage, exclusions, limitations, reductions, deductibles, coinsurance, renewal provisions, cancellation provisions, surcharges, or credits will be sent separately.**

Reviewing this checklist together with your policy can help you gain a better understanding of your policy's actual coverages and limitations, and may even generate questions. By addressing any questions now, you will be more prepared later in the event of a claim. Experience has shown that many questions tend to arise regarding the coverage of attached or detached screened pool enclosures, screened porches, and other types of enclosures. Likewise, if your policy insures a condominium unit, questions may arise regarding the coverage of certain items, such as individual heating and air conditioning units; individual water heaters; floor, wall, and ceiling coverings; built-in cabinets and counter tops; appliances; window treatments and hardware; and electrical fixtures.

A clear understanding of your policy's coverages and limitations will reduce confusion that may arise during claims settlement.

Please refer to the policy for details and any exceptions to the coverages listed in this checklist. All coverages are subject to the provisions and conditions of the policy and any endorsements. If you have questions regarding your policy, please contact your agent or company. Consumer assistance is available from the Department of Financial Services, Division of Consumer Services' Helpline at (800) 342-2762 or www.fldfs.com.

This form was adopted by the Florida Financial Services Commission.

| **Dwelling Structure Coverage (Place of Residence)** | | |
| --- | --- | --- |
| Limit of Insurance: $493,475 | Loss Settlement Basis: | Replacement Cost <br> (i.e., Replacement Cost, Actual Cash Value, Stated Value, etc.) |
| **Other Structures Coverage (Detached from Dwelling)** | | |
| Limit of Insurance: NOT INCLUDED | | |
| Loss Settlement Basis: | **Replacement Cost** - for **Buildings** Detached from the Dwelling <br><br> **Actual Cash Value** - for Detached Structures **Other Than Buildings** <br> (i.e., Replacement Cost, Actual Cash Value, Stated Value, etc.) | |
| **Personal Property Coverage** | | |
| Limit of Insurance: $246,738 | Loss Settlement Basis: | Replacement Cost Value <br> (i.e., Replacement Cost, Actual Cash Value, Stated Value, etc.) |
| **Deductibles** | | |
| Annual Hurricane: 2% OF COVERAGE A | All Perils (Other Than Hurricane): | $2,500 |

**Checklist of Coverage**

**Checklist of Coverage (continued)**

The above Limit of Insurance, Deductibles, and Loss Settlement Basis apply to the following perils insured against:
(Items below marked **Y (Yes)** indicate coverage IS included, those marked **N (No)** indicate coverage is NOT included)
**Special limits and loss settlement exceptions may apply to certain items. Refer to your policy for details.**

| | |
|---|---|
| Fire or Lightning | Y |
| Hurricane | Y |
| Flood (Including storm surge) | N |
| Windstorm or Hail (other than hurricane) | Y |
| Explosion | Y |
| Riot or Civil Commotion | Y |
| Aircraft | Y |
| Vehicles | Y |
| Smoke | Y |
| Vandalism or Malicious Mischief | Y |
| Theft | Y |
| Falling Objects | Y |
| Weight of Ice, Snow or Sleet | Y |
| Accidental Discharge or Overflow of Water or Steam | Y |
| Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging | Y |
| Freezing | Y |
| Sudden and Accidental Damage from Artificially Generated Electrical Current | Y |
| Volcanic Eruption | Y |
| Sinkhole | N |
| Any Other Peril Not Specifically Excluded (dwelling and other structures only) | Y |

| Loss of Use Coverage | | | |
|---|---|---|---|
| Coverage | | Limit of Insurance | Time Limit |
| (Items below marked **Y (Yes)** indicate coverage IS included, those marked **N (No)** indicate coverage is NOT included) | | | |
| Additional Living Expense | Y | $98,695 | The shortest time required to repair or replace the damage, up to 24 months |
| Fair Rental Value | Y | (The above limit is the total limit for all Loss of Use Coverages combined) | |
| Civil Authority Prohibits Use | Y | | 2 Weeks |

| Property - Additional/Other Coverages | | | |
|---|---|---|---|
| (Items below marked **Y (Yes)** indicate coverage IS included, those marked **N (No)** indicate coverage is NOT included) | Limit of Insurance (if applicable) | Amount of insurance is an additional amount of coverage or is included within the policy limit. | |
| | | Included | Additional |
| Debris Removal | | Y | |
| Reasonable Repairs | | Y | |
| Property Removed | | Y | |
| Credit Card, Electronic Fund Transfer Card, or Access Device, Forgery and Counterfeit Money | $10,000 | | Y |
| Loss Assessment | $1,000 | Y | |
| Collapse | | Y | |
| Glass or Safety Glazing Material | | Y | |
| Landlord's Furnishings | $2,500 | | Y |
| Law and Ordinance | 25% OF DWELLING | | Y |

**Checklist of Coverage**

**Property - Additional/Other Coverages (continued)**

| | | | |
|---|---|---|---|
| Mold / Fungi | $50,000 | | Y |
| Grave Markers | | N | N |
| Screen Enclosure Hurricane Damage | | N | N |

| Discounts | |
|---|---|
| (Items below marked **Y (Yes)** indicate discount IS included, those marked **N (No)** indicate discount is NOT included) | Dollar ($) Amount of Discount |

| | | |
|---|---|---|
| Sprinkler | N | **N/A** |
| Central Burglar Alarm | N | **N/A** |
| Central Fire Alarm | N | **N/A** |
| Wind Loss Reduction | Y | **$13,758.00** |
| Building Code Effectiveness Grading | N | |

---

**Personal Liability Coverage**

**Limit of Insurance:** $500,000

**Medical Payments to Others Coverage**

**Limit of Insurance:** $5,000

---

**Liability - Additional/Other Coverages**

| (Items below marked **Y (Yes)** indicate coverage IS included, those marked **N (No)** indicate coverage is NOT included) | Limit of Insurance (if applicable) | Amount of insurance is an additional amount of coverage or is included within the policy limit. | |
|---|---|---|---|
| | | Included | Additional |
| Claim Expenses | | | Y |
| First Aid Expenses | | | Y |
| Damage to Property of Others | $500 | | Y |
| Loss Assessment | $1,000 | Y | |

---

**Liability - Miscellaneous Coverages**

| (Items below marked **Y (Yes)** indicate coverage IS included, those marked **N (No)** indicate coverage is NOT included) | Limit of Insurance (if applicable) | Amount of insurance is an additional amount of coverage or is included within the policy limit. | |
|---|---|---|---|
| | | Included | Additional |
| Mold / Fungi | $50,000 | | Y |
| Personal Injury | | Y | |
| Animal Liability | $25,000 | Y | |

# HOMEOWNERS 3 – SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

**b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a resident of your household who is your relative; or

**c.** Under Section **II:**

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person described in **5.a.** or **b.; or**

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one-family dwelling where you reside;

**b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

    © Insurance Services Office, Inc., 2010

**SECTION I – PROPERTY COVERAGES**

**A. Coverage A – Dwelling**

  **1.** We cover:

    **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

    **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

  **2.** We do not cover land, including land on which the dwelling is located.

**B. Coverage B – Other Structures**

  **1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

  **2.** We do not cover:

    **a.** Land, including land on which the other structures are located;

    **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

    **c.** Other structures from which any "business" is conducted; or

    **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

  **3.** The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

**C. Coverage C – Personal Property**

  **1. Covered Property**

    We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

    **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

  **2. Limit For Property At Other Locations**

    **a. Other Residences**

      Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

      **(1)** Moved from the "residence premises" because it is:

        **(a)** Being repaired, renovated or rebuilt; and

        **(b)** Not fit to live in or store property in; or

      **(2)** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

    **b. Self-storage Facilities**

      Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

      **(1)** Moved from the "residence premises" because it is:

        **(a)** Being repaired, renovated or rebuilt; and

        **(b)** Not fit to live in or store property in; or

      **(2)** Usually located in an "insured's" residence, other than the "residence premises".

 © Insurance Services Office, Inc., 2010

3. **Special Limits Of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**j.** $1,500 on portable electronic equipment that:

**(1)** Reproduces, receives or transmits audio, visual or data signals;

**(2)** Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

**(3)** Is in or upon a "motor vehicle".

**k.** $250 for antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

4. **Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

This includes a "motor vehicle's" equipment and parts. However, this Paragraph **4.c.** does not apply to:

**(1)** Portable electronic equipment that:

**(a)** Reproduces, receives or transmits audio, visual or data signals; and

**(b)** Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

**(2)** "Motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service a residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's trees felled by a Peril Insured Against under Coverage **C;**

provided the trees:

(3) Damage a covered structure; or

(4) Do not damage a covered structure, but:

(a) Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section **I – Conditions.**

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

  © Insurance Services Office, Inc., 2010  HO 00 03 05 11

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **Q.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse does not apply to:

**(1)** A building or any part of a building that is in danger of falling down or caving in;

**(2)** A part of a building that is standing, even if it has separated from another part of the building; or

**(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C;**

**(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling And Coverage B – Other Structures**

**1.** We insure against direct physical loss to property described in Coverages **A** and **B**.

**2.** We do not insure, however, for loss:

  **a.** Excluded under Section **I** – Exclusions;

  **b.** Involving collapse, including any of the following conditions of property or any part of the property:

    **(1)** An abrupt falling down or caving in;

    **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

    **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above;

  except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

  **c.** Caused by:

    **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

      **(a)** Maintain heat in the building; or

      **(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

  **(a)** Fence, pavement, patio or swimming pool;

  **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

  **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

  **(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

  **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

  **(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, rodents or insects;

**(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(i)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**

This peril includes self-propelled missiles and spacecraft.

6. **Vehicles**

7. **Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

9. **Theft**

   **a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   **b.** This peril does not include loss caused by theft:

   **(1)** Committed by an "insured";

   **(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   **(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

   **(4)** That occurs off the "residence premises" of:

   **(a)** Trailers, semitrailers and campers;

   **(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

   **(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

10. **Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

12. **Accidental Discharge Or Overflow Of Water Or Steam**

   **a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   **b.** This peril does not include loss:

   **(1)** To the system or appliance from which the water or steam escaped;

   **(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

   **(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

   **(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   **c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   **d.** Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

   **a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

      **(1)** Maintain heat in the building; or

      **(2)** Shut off the water supply and drain all systems and appliances of water.

      However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

   This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I – EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   **1. Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

   **a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

   **b.** The requirements of which result in a loss in value to property; or

   **c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion **A.1.** applies whether or not the property has been physically damaged.

**2. Earth Movement**

   Earth Movement means:

   **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   **b.** Landslide, mudslide or mudflow;

   **c.** Subsidence or sinkhole; or

   **d.** Any other earth movement including earth sinking, rising or shifting.

   This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.d.,** is caused by an act of nature or is otherwise caused.

   However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.d.,** is covered.

**3. Water**

   This means:

   **a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

   **b.** Water which:

      **(1)** Backs up through sewers or drains; or

      **(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

   **c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

   **d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section **I – Conditions.**

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I – CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

## C. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I – Property Coverages**;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

   **a.** Make reasonable and necessary repairs to protect the property; and

   **b.** Keep an accurate record of repair expenses;

**5.** Cooperate with us in the investigation of a claim;

**6.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

   **a.** Show the damaged property;

   **b.** Provide us with records and documents we request and permit us to make copies; and

   **c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

**8.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   **a.** The time and cause of loss;

   **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

   **c.** Other insurance which may cover the loss;

   **d.** Changes in title or occupancy of the property during the term of the policy;

   **e.** Specifications of damaged buildings and detailed repair estimates;

   **f.** The inventory of damaged personal property described in **6.** above;

   **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   **h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I –** Property Coverages, stating the amount and cause of loss.

## D. Loss Settlement

In this Condition **D.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I – Property Coverages.** Covered property losses are settled as follows:

**1.** Property of the following types:

   **a.** Personal property;

   **b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   **c.** Structures that are not buildings; and

   **d.** Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   **a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

     **(1)** The limit of liability under this policy that applies to the building;

     **(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

     **(3)** The necessary amount actually spent to repair or replace the damaged building.

   If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

© Insurance Services Office, Inc., 2010

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**I. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

  **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

  **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

  **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

  **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

  **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

© Insurance Services Office, Inc., 2010

## R. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

## S. Loss Payable Clause

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

## A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

## B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

**a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

**b.** Is caused by the activities of an "insured";

**c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

**d.** Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

## A. "Motor Vehicle Liability"

**1.** Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

**c.** Is being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used to carry persons or cargo for a charge; or

**(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service a residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

(2) Owned by an "insured" provided the "occurrence" takes place:

(a) On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.;** or

(b) Off an "insured location" and the "motor vehicle" is:

(i) Designed as a toy vehicle for use by children under seven years of age;

(ii) Powered by one or more batteries; and

(iii) Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

(1) A golfing facility and is parked or stored there, or being used by an "insured" to:

(a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

(1) Less than 26 feet in overall length; or

(2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

(1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

(a) 50 horsepower or less and not owned by an "insured"; or

(b) More than 50 horsepower and not owned by or rented to an "insured"; or

(2) One or more outboard engines or motors with:

(a) 25 total horsepower or less;

(b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

(c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

(i) You declare them at policy inception; or

(ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

    © Insurance Services Office, Inc., 2010    HO 00 03 05 11

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

© Insurance Services Office, Inc., 2010

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

    **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

    **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

        **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

        **(2)** Where the liability of others is assumed by you prior to an "occurrence";

        unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

        **(1)** Nuclear Energy Liability Insurance Association;

        **(2)** Mutual Atomic Energy Liability Underwriters;

        **(3)** Nuclear Insurance Association of Canada;

    or any of their successors; or

    **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

    **a.** Repay; or

    **b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F – Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

      This Exclusion **e.(3)** does not apply to a "motor vehicle" that:

      (a) Is designed for recreational use off public roads;

      (b) Is not owned by an "insured"; and

      (c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph **I.** Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

© Insurance Services Office, Inc., 2010

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

  **a.** The identity of the policy and the "named insured" shown in the Declarations;

  **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

  **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

  **a.** To make settlement;

  **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

  **c.** With the conduct of suits and attend hearings and trials; and

  **d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

  **a.** Give us written proof of claim, under oath if required, as soon as is practical; and

  **b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II**.

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

    **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

    **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

© Insurance Services Office, Inc., 2010

**THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY**

# SPECIAL PROVISIONS – FLORIDA

## DEFINITIONS

**8.** "Occurrence" is deleted and replaced by the following:

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

  **a.** "Bodily injury"; or

  **b.** "Property damage."

All bodily injuries or property damages that are attributable to or arise out of one cause or a series of similar causes will be added together and will be treated as one occurrence irrespective of the period of time or area over which such losses occur and irrespective of the number of insured persons, injured persons, claims or claimants.

Assault or battery is not an "occurrence," when committed by, or at the direction of, or with the prior knowledge of an "insured."

The following Definitions are added:

**12.** "Assignee" means a person who is assigned post-loss benefits through an "assignment agreement."

**13.** "Assignment Agreement" means any instrument by which post-loss benefits under this policy are assigned, transferred, or acquired in any manner, in whole or in part, to or from a person providing services to protect, repair, restore, or replace property, or to mitigate against further damage to the property.

**14.** "Assignor" means a person who assigns post-loss benefits under this policy to another person through an "assignment agreement."

**15.** "Diminution in Value" means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

**16.** "Hurricane Occurrence"

A "hurricane occurrence":

  **a.** Begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

  **b.** Continues for the time period during which the hurricane conditions exist anywhere in Florida; and

  **c.** Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**17.** "Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

  **e.** Oral or written publication of material that violates a person's right of privacy.

**18.** "Vermin" meaning an animal prone to enter into or under a structure, including but not limited to: armadillos, bats, opossums, porcupines, raccoons, skunks.

## SECTION I – PROPERTY COVERAGES

In Form HO 00 03:

**A.** **COVERAGE A – Dwelling** is deleted and replaced by the following:

  **1.** We cover:

    **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling;

    **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises;" and

    **c.** In-ground swimming pools.

  **2.** This coverage does not apply to land, including land on which the dwelling is located.

**B. COVERAGE B – Other Structures** is deleted and replaced by the following:

  **1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

    This coverage does not apply to in-ground swimming pools.

    This coverage does not apply to land, including land on which the other structures are located.

  **2.** We do not cover other structures:

    **a.** Used in whole or in part for "business"; or

    **b.** Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

  **3.** The limit of liability for this coverage will not be more than the limit of liability shown in the Declarations for **Coverage B**. Use of this coverage does not reduce the Coverage **A** limit of liability.

**C. COVERAGE C – Personal Property** (In Form **HO 00 04**, this is **B. Coverage C – Personal Property**; in Form **HO 00 06**, this is **A. Coverage C – Personal Property**)

  **3. Special Limits of Liability**

    Item **a.** is deleted and replaced by the following:

    **a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins medals, scrip, stored value cards. This also includes any virtual currency.

    For purposes of this provision, virtual currency means a medium of exchange in electronic or digital format that is not a coin or currency of the United States or any other country.

Item **b.** is deleted and replaced by the following:

  **b.** $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

The following items are added to **SECTION I – PROPERTY COVERAGES, Coverage C – Personal Property, 3.**:

  **l.** $500 is the maximum loss payable for covered property stored in freezers or refrigerators on the "residence premises."

  **m.** $1,000, subject to a maximum amount of $250 per item, on all memorabilia and collectibles. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

  **n.** $1,000 on portable floating docks.

  **o.** $1,000 for loss to art glass windows and other works of art such as, but not limited to:

    **(1)** Statuary (including but not limited to Hummels);

    **(2)** Marbles;

    **(3)** Bronzes;

    **(4)** Porcelains;

    **(5)** Rare glass; and

    **(6)** Bric-a-brac.

  **p.** 10% of the total of the **Coverage C – Personal Property** limit for art, including but not limited to paintings, prints, photographs, framed works, rugs, carpet (except wall-to-wall carpet), tapestries, wall-hangings, or any other similar article. This limit is the total limit per loss for all items in this category.

**q.** $1,000 for bicycles and related equipment.

**r.** 5% of the total of the **Coverage C – Personal Property** limit for any one item of unscheduled personal property.

The following item is amended in **SECTION I – PROPERTY COVERAGES, Coverage C – Personal Property, 4.**:

**k.** Water or steam, or any utility or water bills or expenses for water or steam.

**D. COVERAGE D – Loss Of Use**

In Form **HO 00 03**:

Item **1.** is deleted and replaced by the following:

**1. Additional Living Expenses**

If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere. In either event, the payment(s) will be limited to 24 consecutive months from the date of the covered loss.

Item **2.** is deleted and replaced by the following:

**2. Fair Rental Value**

If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the Fair Rental Value, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you, less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental. In either event, the payment(s) will be limited to 12 consecutive months from the date of the covered loss.

**B. COVERAGE D – Loss of Use**

In Forms **HO 00 04** and **HO 00 06**:

Item **1.** is deleted and replaced by the following:

**1. Additional Living Expense**

If a loss by a Peril Insured Against under this policy to covered property or the building containing the property, makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere. In either event, the payment(s) will be limited to 24 consecutive months from the date of the covered loss.

Item **2.** is deleted and replaced by the following:

**2. Fair Rental Value**

If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the Fair Rental Value, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you, less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental. In either event, the payment(s) will be limited to 12 consecutive months from the date of the covered loss.

**E. Additional Coverages** (In Form **HO 00 04** this is **C. Additional Coverages**; in Form **HO 00 06**, this is **D. Additional Coverages**.)

**2. Reasonable Repairs** is deleted and replaced by the following:

**2. Reasonable Emergency Measures.**

**a.** We will pay up to the greater of $3,000 or 1% of your Coverage A limit of liability for the reasonable costs incurred by you for necessary measures taken solely to protect covered property from further

damage when the damage or loss is caused by a Peril Insured Against.

Prior to taking any reasonable emergency measures as outlined in this paragraph **a.**, you must provide any photos, videos, or any other documentation that shows the damaged property, and the cause of loss, and the condition it was in at the time of loss.

**b.** We will not pay more than the amount in **a.** above, unless you submit a written request for an increase. We must be allowed to:

**(1)** Inspect the damage before any work in excess of $3,000 or 1% of Coverage A limit of liability begins; and

**(2)** Approve the scope and amount of the work before it takes place.

We will respond to you within forty-eight (48) hours of your request to us to exceed the greater of $3,000 or 1% of your Coverage A limit of liability.

**c.** The written request must include supporting documents and be sent by electronic mail to legalnotices@flhi.com. We will make such determination for an increase above the limit in **a.** above based upon submission of the following supporting documentation:

**(1)** The date the request is submitted to us;

**(2)** The identity of all Named Insureds;

**(3)** The date of loss;

**(4)** The address where loss occurred;

**(5)** Description of loss and location of damages;

**(6)** All photographs, videos, moisture readings, and work logs that demonstrate the damage and work performed up to the time of the request;

**(7)** Itemized estimate of proposed Reasonable Emergency Measures;

**(8)** Estimated timeframe of completion;

**(9)** All other information or documentation reasonably requested.

In such circumstance, we will pay only up to the additional costs for reasonable emergency measures necessary to protect the covered property from further damage that we authorize. Any additional unauthorized costs shall not be paid or payable. If we fail to approve or deny your request within forty-eight (48) hours of such request to us and the damage or loss is caused by a Peril Insured Against, you may exceed the amount in **a.** above to perform the reasonable emergency measures necessary to protect the covered property from further damage, but no more than the reasonable cost.

**d.** If damage occurs as a result of a covered "Hurricane Occurrence" as defined in your policy, the amount that we pay under this Additional Coverage will be the reasonable cost incurred by you for necessary measures taken solely to protect the property from further damage and is not limited to the amount in **a.** above.

**e.** A reasonable measure under this Additional Coverage may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.

**f.** Notwithstanding paragraphs **a.** through **e.** above, if an "assignment agreement" is executed for necessary measures to:

**(1)** Protect;

**(2)** Repair;

**(3)** Restore; or

**(4)** Replace covered property; or

**(5)** Mitigate against further damage to the property,

after damage or loss to covered property is caused by a Peril Insured Against, the "assignee" may not receive an assignment of post-loss benefits covered under this policy in excess of:

**(1)** $3,000, or

**(2)** 1% of the Coverage A limit of liability;

whichever is greater.

g. This coverage does not:

(1) Increase the limit of liability that applies to the covered property;

(2) Relieve you of your duties, in case of a loss to covered property, as set forth in **SECTION I – CONDITIONS C.**;

(3) Pay for property not covered, or for repairs resulting from a peril not covered, or for loss excluded in this Policy.

8. **Collapse** is deleted and replaced by the following:

8. **Collapse**

a. The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

b. For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building to a flattened form or to rubble with the result that the building or part of the building cannot be occupied for its intended purpose.

c. This Additional Coverage – Collapse does not apply to:

(1) A building or any part of a building that is in danger of falling down or caving in;

(2) A part of a building that is standing, even if it has separated from another part of the building; or

(3) A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

d. We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage **C;**

(2) Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is

known to an "insured" prior to collapse;

(3) Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

e. Loss to an awning, fence, patio, deck, balcony, sidewalk, walk-way, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

f. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

(2) The breakage caused directly by Earth Movement of glass or safety glazing material which is part of a covered building, storm door or storm window; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing

material has been broken, except as provided in **a.(3)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this **Additional Coverage 9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

**11. Ordinance Or Law**

The lead-in paragraph of **11.a.** in Forms **HO 00 03** and **HO 00 04** (**10.a.** in Form **HO 00 06**) is deleted and replaced by the following:

~~a.~~ You may use up to the Ordinance or Law percentage shown on the Declarations for the increased costs you incur due to the enforcement of building, zoning, or land use ordinances or laws. This coverage applies if the enforcement is directly caused by the same insured loss and is a covered cause of loss.

This applies to any building, zoning, or land use ordinances which requires or regulates:

Paragraph **d.** is added:

**d.** In the event that there are multiple methods of compliance with the building, zoning, or land use ordinance(s) or law(s) to which this Additional Coverage applies, the limit of liability will be up to the least amount of the available methods of compliance.

**SECTION I – PERILS INSURED AGAINST**

Paragraph **A.1.** in Form **HO 00 03** is deleted and replaced by the following:

**1.** We insure for sudden and accidental direct physical loss to covered property described in Coverages **A** and **B** unless the loss is otherwise excluded or limited in this policy. However, loss does not include, and we will not pay for, any "diminution in value."

The first paragraph under **B.** in Form **HO 00 03** (in Form **HO 00 04**, the first paragraph in **SECTION I – PERILS INSURED AGAINST**) is deleted and replaced by the following:

We insure for sudden and accidental direct physical loss to covered property described in Coverage **C** caused by any of the following perils unless the loss is otherwise excluded or limited in this policy. However, loss does not include, and we will not pay for any "diminution in value."

The first paragraph in **SECTION I – PERILS INSURED AGAINST** in Form **HO 00 06** is deleted and replaced by the following:

We insure for sudden and accidental direct physical loss to covered property described in Coverages **A** and **C** caused by any of the following perils unless the loss is otherwise excluded or limited in this policy. However, loss does not include, and we will not pay for any "diminution in value."

In Form **HO 00 06** with **HO 17 32** or with **HO 17 52**, paragraph **1.** Is deleted and replaced by the following:

We insure for sudden and accidental direct physical loss to covered property described in Coverage **A** unless the loss is otherwise excluded or limited in this policy. However, loss does not include, and we will not pay for, any "diminution in value."

In Form **HO 00 03**:

**A. COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

Paragraph **2.c.(5)** is deleted and replaced by the following:

(5) Repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor, that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

Homeowners
FIM 00 23 11 21

**(c)** Smog, rust, decay or other corrosion;

Paragraph **2.c.(6)(g)** is deleted and replaced by the following:

**(g)** Birds, rodents, insects, "vermin," amphibians, or reptiles;

Paragraph **2.c.(6)(j)** is added as follows;

i.   Erosion;

Paragraph **2.c.(6)(k)** is added as follows:

ii.  Tree roots, whether or not the tree is located on the land on which the dwelling is located;

Paragraph **2.c.(6)(l)** is added as follows:

iii. The decomposition or deterioration of organic matter or debris.

The **Exception to c.(6)** is deleted and replaced by the following:

**Exception to c.(6)**

If any of these cause water damage not otherwise excluded or limited elsewhere in the policy, from a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and repairing only that particular part of a building or only that particular part of an other structure covered under Coverage **A** or **B** on the "residence premises" necessary to access and repair that specific point of that system or appliance from which the water escaped.

The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that specific point of that system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not. However, such tear out and repair coverage only applies if the water or steam causes actual damage to a covered building on the "residence premises."

In the event that additional tear out and repair are required beyond the coverage provided for access and

repair in the provision immediately above, we will still pay only for our portion of the access and repair cost required to repair only that specific point of that system or appliance that caused the covered loss as described above.

However, we do not cover loss:

**a.**  To the system or appliance from which this water or steam escaped;

**b.**  On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises;"

**c.**  To a plumbing system, whether above or below the ground, caused by:

**(1)** Age, collapse, obsolescence, wear, tear;

**(2)** Fading, oxidization, weathering;

**(3)** Deterioration, decay, marring, delamination, crumbling, settling, cracking;

**(4)** Shifting, bulging, racking, sagging, bowing, bending, leaning;

**(5)** Shrinkage, expansion, contraction, bellying, corrosion;

**(6)** The unavailability or discontinuation of a part or component of the system; or

**(7)** Any other age or maintenance-related issue;

**d.**  To a plumbing system, whether above or below ground, caused by the impairment, state or condition of the system which prohibits repair or replacement including access, necessary to connect the adjoining parts of appliances, pipes, or system; or

**e.**  Otherwise excluded or limited elsewhere in the Policy.

For the purposes of this provision, a plumbing system or household appliance does not include:

**i.**  A sump, sump pump, irrigation system, or related equipment; or

ii.   A roof drain, gutter, down spout, or similar fixtures or equipment.

This coverage does not increase the limit of liability that applies to the damaged covered property

Paragraph **3.** is added as follows:

**3.**   If the dwelling where loss or damage occurs has been vacant for more than 30 consecutive days before the loss or damage, we will:

Not pay for any loss or damage caused by any of the following perils, even if they are Covered Causes of Loss:

**a.**   Vandalism;

**b.**   Sprinkler leakage, unless you have protected the system against freezing;

**c.**   Dwelling glass breakage;

**d.**   Water damage;

**e.**   Theft; or

**f.**   Attempted theft.

Dwellings under construction or seasonal and secondary residences are not considered vacant.

**B.   COVERAGE C – PERSONAL PROPERTY**

**12. Accidental Discharge Or Overflow Of Water Or Steam**

The following paragraph **12.b.(4)** is replaced by the following:

(4)   Caused by repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

In Form **HO 00 06**, paragraph **12.a.** is deleted and replaced by the following:

**a.**   This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or from within a household appliance. We

also pay to tear out and repair only that particular part of a building owned solely by you which is covered under Coverage **A** on the "residence premises" necessary to access and repair that specific point of that system or appliance from which the water escaped.

The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that specific point of that system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not. However, such tear out and repair coverage only applies if the water or steam causes actual damage to a building owned solely by you which is covered under Coverage **A** on the "residence premises."

In the event that additional tear out and repair are required beyond the coverage provided for access and repair in the provision immediately above, we will still pay only for our portion of the access and repair cost required to repair only that specific point of that system or appliance that caused the covered loss as described above.

In Form **HO 00 06**, paragraph **12.b.(1)** is deleted and replaced by the following:

**12. Accidental Discharge Or Overflow Of Water Or Steam**

(1)   To or within the "residence premises," if the building containing the "residence premises" has been vacant for more than 30 consecutive days immediately before the loss. A building being constructed is not considered vacant.

In Form **HO 00 06**, paragraph **12.b.(5)** (in Form **HO 00 04**, paragraph **12.b.(4)**) is deleted and replaced by the following:

(5)   Caused by repeated seepage or leakage of water or steam, or the presence of condensation of humidity, moisture or vapor that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any

damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

In Form **HO 00 06**, the following items are added to **12.b.**

 **(6)** To a plumbing system, whether above or below the ground, caused by:

  **(a)** Age, collapse, obsolescence, wear, tear;

  **(b)** Fading, oxidization, weathering;

  **(c)** Deterioration, decay, marring, delamination, crumbling, settling, cracking;

  **(d)** Shifting, bulging, racking, sagging, bowing, bending, leaning;

  **(e)** Shrinkage, expansion, contraction, bellying, corrosion;

  **(f)** The unavailability or discontinuation of a part or component of the system; or

  **(g)** Any other age or maintenance-related issue;

 **(7)** To a plumbing system, whether above or below ground, caused by the impairment, state or condition of the system which prohibits repair or replacement including access, necessary to connect the adjoining parts of appliances, pipes, or system; or

 **(8)** Otherwise excluded or limited elsewhere in the Policy.

In Form **HO 00 06** with **HO 17 32** or **HO 17 52**:

Paragraph **2.c.(5)** is deleted and replaced by the following:

 **(5)** Repeated seepage or leakage of water or steam, or the presence of condensation of humidity, moisture or vapor that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

 **(c)** Smog, rust, decay or other corrosion;

Paragraph **2.c.(6)(g)** is deleted and replaced by the following:

 **(g)** Birds, rodents, insects, "vermin," amphibians, or reptiles;

**Exception to c.(6)** is deleted and replaced by the following:

**Exception to c.(6)**

 If any of these cause water damage not otherwise excluded or limited elsewhere in the policy, from a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and repairing only that particular part of a building owned solely by you which is covered under Coverage **A** on the "residence premises" necessary to access and repair that specific point of that system or appliance from which the water escaped.

 The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that part specific point of that system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not. However, such tear out and repair coverage only applies if the water or steam causes actual damage to a building owned solely by you which is covered under Coverage **A** on the "residence premises."

 In the event that additional tear out and repair are required beyond the coverage provided for access and repair in the provision immediately

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

above, we will still pay only for our portion of the access and repair cost required to repair only that specific point of that system or appliance that caused the covered loss as described above.

However, we do not cover loss:

**a.** To or within the "residence premises" if the building containing the "residence premises" has been vacant for more than 30 consecutive days immediately before the loss. A building being constructed is not considered vacant;

**b.** To the system or appliance from which this water or steam escaped;

**c.** To or within the "residence premises" caused by accidental discharge or overflow which occurs away from the building where the "residence premises" is located; or

**d.** To a plumbing system, whether above or below the ground, caused by:

**(1)** Age, collapse, obsolescence, wear, tear;

**(2)** Fading, oxidization, weathering;

**(3)** Deterioration, decay, marring, delamination, crumbling, settling, cracking;

**(4)** Shifting, bulging, racking, sagging, bowing, bending, leaning;

**(5)** Shrinkage, expansion, contraction, bellying, corrosion;

**(6)** The unavailability or discontinuation of a part or component of the system; or

**(7)** Any other age or maintenance-related issue;

**e.** To a plumbing system, whether above or below ground, caused by the impairment, state or condition of the system which prohibits repair or replacement

including access, necessary to connect the adjoining parts of appliances, pipes, or system; or

**f.** Otherwise excluded or limited elsewhere in the Policy.

For the purposes of this provision, a plumbing system or household appliance does not include:

**i.** A sump, sump pump, irrigation system, or related equipment; or

**ii.** A roof drain, gutter, down spout, or similar fixtures or equipment.

This coverage does not increase the limit of liability that applies to the damaged covered property.

## SECTION I – EXCLUSIONS

**1.** **Ordinance or Law** is deleted and replaced by the following:

**1.** **Ordinance or Law**, meaning any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion **1.a.** does not apply to the amount of coverage that may be provided for under **Additional Coverages**, **Glass or Safety Glazing Material** or **Ordinance or Law**;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is exclusion **A.1.** in Form **HO 00 03**)

**2.** **Earth Movement** is deleted and replaced by the following:

**2.** **Earth Movement**, meaning:

a.  Earthquake, including land shock waves or tremors before, during or after a volcanic eruption

b.  Landslide, mudslide or mudflow;

c.  Subsidence or sinkhole; or

d.  Any other earth movement including earth sinking, rising or shifting;

Caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss

This exclusion **2.** does not apply to loss by:

a.  Theft; or

b.  "Catastrophic ground cover collapse".

(This is Exclusion **A.2.** in Form **HO 00 03**.)

3.  **Water** is deleted and replaced by the following:

3.  **Water**

This means:

a.  Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, storm surge, wave wash, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

b.  Water which:

   (1)  Backs up through sewers or drains;

   (2)  Backs up or is otherwise discharged from a septic system or drain field, or related equipment or similar systems; or

   (3)  Overflows or is otherwise discharged from:

      (a)  A sump, sump pump, irrigation system, or related equipment; or

      (b)  A roof drain, gutter, down spout, or similar fixtures, or equipment;

c.  Water below the surface of the ground, including water which exerts pressure on or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool, or other structure; or

d.  Waterborne material, sewage, or any other substance carried or otherwise moved by any of the water referred to in paragraphs **a.** through **c.** of this Exclusion.

This Exclusion **3.**, applies to, but is not limited to, escape, overflow or discharge for any reason, of water, waterborne material, sewage, or any other substance, from a dam, levee, seawall, or any other boundary or containment system.

This Exclusion **3.** applies regardless of whether any of the above, in **3.a.** through **3.d.**, is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion, or theft resulting from any of the above in paragraphs **a.** through **d.** of this Exclusion is covered.

(This is exclusion **A.3.** in Form **HO 00 03**)

The following Exclusions are added to **SECTION I - EXCLUSIONS**:

10.  **"Fungi," Wet Or Dry Rot, Yeast Or Bacteria**

   **"Fungi," Wet Or Dry Rot, Yeast Or Bacteria,** meaning the presence, growth, proliferation, spread or any activity of "fungi," wet or dry rot, yeast or bacteria.

   This Exclusion does not apply:

   a.  When "fungi," wet or dry rot, yeast or bacteria results from fire or lightning; or

   b.  To the extent coverage is provided for in the "Fungi," Wet Or Dry Rot, Yeast Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

   Direct loss by a Peril Insured Against resulting from "fungi," wet or dry rot, yeast or bacteria is covered.

   (This is exclusion **A.10.** in Form **HO 00 03**)

11.  **Existing Damage**, meaning:

   a.  Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or

   b.  Claims for damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to policy inception.

   This exclusion does not apply in the event of a total loss caused by a Peril Insured Against.

   (This is exclusion **A.11.** in the **HO 00 03**)

**12. Repeated seepage or leakage** of water or steam, or the presence or condensation of humidity moisture or vapor that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

(This is exclusion **A.12.** in Form **HO 00 03**)

**13. Criminal Acts or Illegal Activity** meaning any and all criminal or illegal acts:

  **a.** Performed by;

  **b.** At the direction of; or

  **c.** With the knowledge of;

any insured that result in damage to your structure or personal property set forth in your Declarations in Coverages **A, B,** or **C.**

---

## SECTION I – CONDITIONS

**C. Duties After Loss** is deleted and replaced by the following:

**C. Duties After Loss.**

An "assignment agreement" does not change the obligations to perform the duties required under this Policy.

In case of a loss to covered property, you must see that the following are done. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

  **1. "Your" Duties After Loss**

    **a.** Give immediate notice to us or our agent.

Except for Reasonable Emergency Measures taken under Additional Coverage **2.**, there is no coverage for repairs that begin before the earlier of:

    **(1)** 72 hours after we are notified of the loss;

    **(2)** The time of loss inspection by us; or

    **(3)** The time of other approval by us.

If you unreasonably deny us access to inspect the loss during the period in **a.** above, coverage for repairs beyond Reasonable Emergency Measures

begins the earlier of when we are given access to inspect the loss or when we fail to appear at a scheduled loss inspection.

  **b.** To the degree reasonably possible, retain the damaged property and any photographs of the damaged property; and

Allow us to inspect, subject to the paragraph above, all damaged property prior to its removal from the "residence premises" and make copies of the photographs.

  **c.** Notify the police in case of loss by theft.

  **d.** Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverages.

  **e.** Protect the property from further damage. The following must be performed:

    **(1)** Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage **2.**

A reasonable emergency measure under **5.a.** above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.

    **(2)** Keep an accurate record of repair expenses. To the degree reasonably possible, take pictures prior to repairs commencing.

  **f.** Cooperate with us in the investigation of a claim.

This includes speaking to and sharing information with us or any person authorized to act on our behalf, and providing documents which can be reasonably obtained by you, to facilitate our investigation of the claim.

Homeowners
FIM 00 23 11 21

You, any "insured" seeking coverage, or a representative of either of these:

**(1)** Must cooperate with our investigation;

**(2)** Must not act in any manner that prevents us or any person authorized to act on our behalf, from investigating the claim; and

**(3)** May not act in any manner to obstruct our investigation.

**g.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts, and related documents that justify the figures in the inventory.

**h.** As often as we reasonably require:

**(1)** Show us the damaged property and the cause of loss and the condition it was in at the time of loss, if possible, except as to any repairs performed under **SECTION I – PROPERTY COVERAGES, Additional Coverages, 2. Reasonable Emergency Measures**;

**(2)** Provide us with records and documents we request and permit us to make copies;

**(3)** You, and any and all "insureds;" and

Any member, officer, director, partner, or similar representative of the association, corporation, or other entity, if you are the association, corporation, or other entity, who is an "insured;" must:

**(a)** Submit to examination under oath and recorded statements at the location insured or other reasonable location designated by us, while not in the presence of each other or any other "insured;"

**(b)** Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement

identifying who you are may be provided; and

**(c)** Sign any transcript of the examinations under oath and recorded statements;

At our request, the examinations will be conducted separately and not in the presence of any other persons except legal representation;

Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us;

**(4)** Permit us to take samples of damaged and undamaged property for inspection, testing, and analysis; and

**(5)** Any and all "insureds" must execute all authorizations for the release of information when requested by us, which we deem relevant to the investigation of your loss.

**(6)** Allow us or any person authorized on our behalf:

**(a)** Access to the "residence premises;"

**(b)** To inspect the "residence premises" and to inspect, subject to **2.** above, all damaged property prior to its removal from the "residence premises;" and

**(c)** To require an "insured" or their representative, or both if reasonably possible, to be present at our inspection and to assist in identifying the damaged property during the inspection;

**(7)** At our request, identify the person or persons with knowledge of how the loss occurred and the extent of damage;

**(8)** For losses covered under Coverage **A** and **B**, allow us to re-inspect, including but not limited to taking photographs and/or video of the property to confirm

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

repairs invoiced by any "assignees(s)" or third parties were completed, or following a supplemental or re-opened claim.

**i.** Submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   **(1)** The description of the loss, including the date and time of the loss, the cause of loss, a description of how the loss occurred, when the loss was discovered, and who discovered the loss;

   **(2)** The names of all persons who resided at the insured location at the time of the loss;

   **(3)** The interest of all "insureds," "assignees" if any, and all others in the property involved and all liens on the property;

   **(4)** Other insurance which may cover the loss;

   **(5)** Changes in title or occupancy of the property during the term of the policy;

   **(6)** Specifications of damage to the dwelling and other structures, including;

     **(a)** Detailed descriptions of the damage to the property;

     **(b)** Repair estimates which show the extent of damage to each item or property;

     **(c)** Estimated amount(s) to repair or replace each item of property; and

     **(d)** Amount(s) of payment made for any temporary or permanent repairs.

   Photographs and other supporting documentation that exists should be included to the extent it is reasonable and practical to obtain;

   **(7)** The inventory of damaged personal property described in **C.7.** above;

   **(8)** Receipts for additional living expenses incurred and records that support the fair rental value; and

   **(9)** Evidence or affidavit that support a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**j.** Produce any updates to the documents and information described above, including revised descriptions of loss, scope of loss, estimates, or other supporting information:

   **(1)** As this information becomes available, and if additional loss or damage is discovered or incurred; and

   **(2)** If you are provided with new estimates or invoices regarding the losses submitted or not submitted in the proof of loss.

The duties above apply regardless of whether you, an "insured" seeking coverage, or a representative of either retains or is assisted by a party who provides legal advice, insurance advice or expert claim advice, regarding an insurance claim under this Policy.

**2.** "Assignee(s)" Duties After Loss

Any agent, representative, "assignee," including any public adjuster, engaged on behalf of you or any "insured," or any member, officer, director, partner, or similar representative of an association, corporation, or other entity, must:

**a.** Give immediate notice to us or our agent.

Except for Reasonable Emergency Measures taken under Additional Coverage **2.**, there is no coverage for repairs that begin before the earlier of:

   **(1)** 72 hours after we are notified of the loss;

   **(2)** The time of loss inspection by us; or

   **(3)** The time of other approval by us.

If you unreasonably deny us access to inspect the loss during the period in **a.** above, coverage for repairs beyond Reasonable Emergency Measures begins the earlier of when we are given access to inspect the loss or when we fail to appear at a scheduled loss inspection.

**b.** To the degree reasonably possible, retain the damaged property and any photographs of the damaged property; and

Allow us to inspect, subject to the paragraph above, all damaged property prior to its removal from the "residence premises" and make copies of the photographs.

**c.** Notify the police in case of loss by theft.

**d.** Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverages.

**e.** Protect the property from further damage. The following must be performed:

**(1)** Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage **2.**

A reasonable emergency measure under **5.a.** above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.

**(2)** Keep an accurate record of repair expenses. To the degree reasonably possible, take pictures prior to repairs commencing.

**f.** Cooperate with us in the investigation of a claim.

This includes speaking to and sharing information with us or any person authorized to act on our behalf, and

providing documents which can be reasonably obtained by you, to facilitate our investigation of the claim.

You, any "insured" seeking coverage, or a representative of either of these:

**(1)** Must cooperate with our investigation;

**(2)** Must not act in any manner that prevents us or any person authorized to act on our behalf, from investigating the claim; and

**(3)** May not act in any manner to obstruct our investigation.

**g.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts, and related documents that justify the figures in the inventory.

**h.** As often as we reasonably require:

**(1)** Show us the damaged property and the cause of loss and the condition it was in at the time of loss, if possible, except as to any repairs performed under **SECTION I – PROPERTY COVERAGES, Additional Coverages, 2. Reasonable Emergency Measures;**

**(2)** Provide us with records and documents we request and permit us to make copies;

**(3)** Any agent, representative, "assignee," including any public adjuster, engaged on behalf of you or any "insured," or any member, officer, director, partner, or similar representative of an association, corporation, or other entity, described in the paragraph above;

must:

**(a)** Submit to examination under oath and recorded statements at the location insured or other reasonable location designated by us, while not in the presence of each other or any other "insured;"

**(b)** Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement identifying who you are may be provided; and

**(c)** Sign any transcript of the examinations under oath and recorded statements;

At our request, the examinations will be conducted separately and not in the presence of any other persons except legal representation;

Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us;

**(4)** Permit us to take samples of damaged and undamaged property for inspection, testing, and analysis; and

**(5)** Any and all "insureds" must execute all authorizations for the release of information when requested by us, which we deem relevant to the investigation of your loss.

**(6)** Allow us or any person authorized on our behalf:

**(a)** Access to the "residence premises;"

**(b)** To inspect the "residence premises" and to inspect, subject to **2.** above, all damaged property prior to its removal from the "residence premises;" and

**(c)** To require an "insured" or their representative, or both if reasonably possible, to be present at our inspection and to assist in identifying the damaged property during the inspection;

**(7)** At our request, identify the person or persons with knowledge of how the loss occurred and the extent of damage;

**(8)** For losses covered under Coverage **A** and **B**, allow us to re-inspect, including but not limited to taking photographs and/or video of the property to confirm repairs invoiced by any "assignees(s)" or third parties were completed, or following a supplemental or re-opened claim.

**i.** Submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

**(1)** The description of the loss, including the date and time of the loss, the cause of loss, a description of how the loss occurred, when the loss was discovered, and who discovered the loss;

**(2)** The names of all persons who resided at the insured location at the time of the loss;

**(3)** The interest of all "insureds," "assignees" if any, and all others in the property involved and all liens on the property;

**(4)** Other insurance which may cover the loss;

**(5)** Changes in title or occupancy of the property during the term of the policy;

**(6)** Specifications of damage to the dwelling and other structures, including;

**(a)** Detailed descriptions of the damage to the property;

**(b)** Repair estimates which show the extent of damage to each item or property;

**(c)** Estimated amount(s) to repair or replace each item of property; and

**(d)** Amount(s) of payment made for any temporary or permanent repairs.

Photographs and other supporting documentation that exists should be included to the extent it is reasonable and practical to obtain;

**(7)** The inventory of damaged personal property described in **C.7.** above;

**(8)** Receipts for additional living expenses incurred and records that support the fair rental value; and

**(9)** Evidence or affidavit that support a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**j.** Produce any updates to the documents and information described above, including revised descriptions of loss, scope of loss, estimates, or other supporting information:

**(1)** As this information becomes available, and if additional loss or damage is discovered or incurred; and

**(2)** If you are provided with new estimates or invoices regarding the losses submitted or not submitted in the proof of loss.

The duties above apply regardless of whether you, an "insured" seeking coverage, or a representative of either retains or is assisted by a party who provides legal advice, insurance advice or expert claim advice, regarding an insurance claim under this Policy.

**D. Loss Settlement.**

In Forms **HO 00 03** and **HO 00 06,** the following paragraph is added at the beginning of **D. Loss Settlement**:

We will settle covered property losses according to the following, unless otherwise stated in this policy. However, the valuation of any covered property losses does not include, and we will not pay, any amount for "diminution in value."

In Forms **HO 00 03**:

Paragraph **D.2.a.** is deleted and replaced by the following:

**a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss,

we will initially pay the actual cash value of the loss, less any applicable deductible. We will then pay any remaining amounts necessary to perform the actual repair or replacement as work is performed and expenses are incurred, but not more than the least of the following amounts:

**(1)** The limit of liability under this policy that applies to the building;

**(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

**(3)** The necessary amount to repair or replace the damaged building.

If a total loss of the dwelling occurs, the provisions of **D.2.a.** above do not apply and we will pay the full replacement cost without reservation or holdback of any depreciation in value.

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

All repairs performed by repair person(s), contractors, or "assignees" shall not exceed the reasonable and necessary labor, materials, costs, or measures to repair the property, unless otherwise covered by the policy.

In Form **HO 00 04**:

**D. Loss Settlement** is deleted and replaced by the following:

**D. Loss Settlement.**

We will settle covered property losses according to the following, unless otherwise stated in this policy. However, the valuation of any covered property losses does not include, and we will not pay, any amount for "diminution in value."

Covered property losses are settled as follows:

**1.** Personal property at actual cash value at the time of loss but no more than the amount required to repair or replace.

In Form **HO 00 06**:

**D.  Loss Settlement**

Paragraph **D.2.** is deleted and replaced by the following:

**2.  Coverage A – Dwelling**, at the actual cost **to** repair or replace. We will initially pay the actual cash value of the loss, less any applicable deductible. We will then pay any remaining amounts necessary to perform the actual repair or replacement as work is performed and expenses are incurred. If a total loss occurs, we will pay the full replacement cost without reservation or holdback of any depreciation in value.

All repairs performed by repair person(s), contractors, or "assignees" shall not exceed the reasonable and necessary labor, materials, costs, or measures to repair the property, unless otherwise covered by the policy.

In this provision, the terms "repaired" or "replaced" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **D. 10. Ordinance or Law** under **SECTION I – PROPERTY COVERAGES**.

In Forms **HO 00 03**, **HO 00 04** and **HO 00 06**:

**F.  Appraisal** is deleted and replaced by the following:

**F.  Mediation or Appraisal.** If you and we fail to agree on the settlement regarding the loss, prior to filing suit, you must notify us of your disagreement in writing so that either may:

**1.** Demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss must be $500 or more, prior to the application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft

we provided to you. We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference.

However, if we fail to appear at a mediation conference, we will pay the actual cash expenses you incur in attending the conference and also pay the mediator's fee for that rescheduled conference.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

**2.** Request an appraisal of the loss if we fail to agree on the amount of the loss.

**a.** A request for appraisal must be in writing and be signed by all Named "Insureds" shown in the Declarations. You must comply with **SECTION I – CONDITIONS, C. Duties After Loss** before making a request for appraisal.

At least 10 days before requesting appraisal, the party seeking appraisal must provide the other party with a written estimate of the amount of any dispute that results from the covered cause of loss. The estimate shall include a description of each item of damaged property in dispute as a result of the covered loss, along with the extent of damage and the estimated amount to repair or replace the item.

**b.** In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. To qualify as a competent appraiser, neither the appraiser nor the company that employs the appraiser is entitled to receive a fee that is dependent on the amount of the appraisal award. However, the payment of an hourly or flat fee shall not render an appraiser incompetent under this provision.

**c.** The two appraisers will choose a competent, disinterested umpire. If

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Homeowners
FIM 00 23 11 21

they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.

**d.** The appraisers will separately set the amount of the loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of the loss.

In all instances, the written report of agreement will be in writing and shall include the following:

**(1)** A detailed list, including the amount to repair or replace, of each specific item included in the award from the appraisal findings;

**(2)** The agreed amount of each item, its replacement cost value and corresponding actual cash value; and

**(3)** The statement of "This award is made subject to the terms and conditions of the policy."

Each party will:

**(a)** Pay its own appraiser, including their costs associated with producing the estimate in **2.a.** of this provision, above; and

**(b)** Bear the other expenses of the appraisal and umpire equally.

**e.** You, we, the appraisers, and the umpire shall be given reasonable and timely access to inspect the property, in accordance with the terms of the policy.

**f.** You" and "We" do not waive any rights by demanding or submitting to an appraisal and retain all contractual rights to determine if coverage applies to each item in dispute.

**g.** Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

**(1)** Any other questions of fact;

**(2)** Questions of law;

**(3)** Questions of coverage;

**(4)** Other contractual issues; or

to conduct appraisal on a class-wide-basis.

**H.** **Suit Against Us** is deleted and replaced by the following

**H.** **Suit Against Us.**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under **Section I** of this policy and the action is started:

**a.** Within 5 years after the date of loss; or

**b.** Within any other applicable statutorily-required timeframe;

whichever is less.

**2.** If you, and we fail to agree on the settlement regarding the loss, prior to filing suit, you, must notify us of your disagreement and intent to file suit in writing to allow us an opportunity to exercise our right to request and complete the mediation or appraisal process.

The written notice of intent to file suit must:

**a.** Be delivered to us by one of the following methods:

**(1)** Certified mail to the attention of: First Protective Insurance at 500 International Parkway, Lake Mary, FL 32746; or

**(2)** Electronic mail to: legalnotices@flhi.com

No fewer than either:

**i.** 10 business days prior to filing suit; or

**ii.** Any other statutorily-required timeframe for notice of intent to initiate litigation;

Whichever is greater.

**b.** Specify all of the following:

**(1)** The amount claimed;

**(2)** The damages in dispute; and

**(3)** A demand;

**c.** Be signed by all Named "Insureds" shown in the Declarations;

**d.** If an "assignment agreement" is executed, the "assignee" must, concurrent with this notice and as a precondition to filing suit, provide:

   **(1)** The named insured;

   **(2)** The insurer; and

   **(3)** The "assignor" if not the named insured;

With a detailed written invoice or estimate of services, including:

   **i.** Itemized information on equipment, materials, and supplies; and

   **ii.** In the case of work performed, proof that the work has been performed in accordance with accepted industry standards.

**3.** If any "assignee(s)" and we fail to agree on the settlement regarding the loss, prior to filing suit, any "assignee(s), must notify us of your disagreement and intent to file suit in writing to allow us an opportunity to exercise our right to request and complete the mediation or appraisal process.

The written notice of intent to file suit must:

**a.** Be delivered to us by one of the following methods:

   **(1)** Certified mail to the attention of: First Protective Insurance at 500 International Parkway, Lake Mary, FL 32746; or

   **(2)** Electronic mail to: legalnotices@flhi.com.

No fewer than either:

   **i.** 10 business days prior to filing suit; or

   **ii.** Any other statutorily-required timeframe for notice of intent to initiate litigation;

Whichever is greater.

**b.** Specify all of the following:

   **(1)** The amount claimed;

   **(2)** The damages in dispute; and

   **(3)** A demand;

**c.** Be signed by all Named "Insureds" shown in the Declarations;

**d.** If an "assignment agreement" is executed, the "assignee" must, concurrent with this notice and as a precondition to filing suit, provide:

   **(1)** The named insured;

   **(2)** The insurer; and

   **(3)** The "assignor" if not the named insured;

With a detailed written invoice or estimate of services, including:

   **i.** Itemized information on equipment, materials, and supplies; and

   **ii.** In the case of work performed, proof that the work has been performed in accordance with accepted industry standards

**I.** **Our Option** is deleted and replaced by the following:

**I.** **Our Option.**

**1.** At our option, in lieu of issuing any loss payment, if we choose to exercise our option:

**a.** For losses settled on an actual cash value basis as outlined in **SECTION I – CONDITIONS, D. Loss Settlement**, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**b.** For losses insured for replacement cost as outlined in **SECTION I – CONDITIONS, D. Loss Settlement**, we may elect to repair or replace any or all of the damaged property with material of like kind and quality without deduction for depreciation.

**2.** If we choose to exercise our option, we will provide written notice to you no later than 30 days after we receive your signed sworn proof of loss.

We may invoke our option to repair within the stated time frame after either a supplemental or re-opened claim regardless of whether we invoked our option during the adjustment of the initial claim, or a prior supplemental or re-opened claim.

3. If we choose to exercise our option, you must cooperate with and grant us, or any person authorized to act on our behalf, reasonable access to the property in order for repairs to be made.

4. You are responsible for payment of the deductible stated in your Declarations Page.

5. You must comply with the duties described in **SECTION I – CONDITIONS, C. Duties After Loss.**

6. As often as is reasonably necessary to effectuate repairs, you must:

   a. Provide access to the property;

   b. Execute any necessary city, county, or municipal permits for repairs to be undertaken;

   c. Execute any work authorizations to allow contractors and related parties entry to the property;

   d. Otherwise cooperate with the repairs to the property.

Our right to exercise our option to repair or replace, and our decision to do so is a material part of this contract and under no circumstances relieves you or us of our mutual duties and obligations under this policy.

Any contract entered into between you and any:

   i. Repair person(s);

   ii. "Assignee(s);"

   iii. Contractor(s);or

   iv. Other person or company;

To perform repairs or services except reasonable emergency measures in **SECTION I – PROPERTY COVERAGES, Additional Coverages, 2.**, for any loss attributed to a covered peril shall not interfere with this right.

**J. Loss Payment** is deleted and replaced by the following:

**J. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment and we have not elected our option to repair.

1. Loss will be payable upon the earlier of the following:

   a. 20 days after we receive your proof of loss in compliance with **SECTION I – CONDITIONS, C. Duties After Loss,** paragraph **9,** and reach written agreement with you; or

   b. 60 days after we receive your proof of loss in compliance with **SECTION I – CONDITIONS, C. Duties After Loss,** paragraph **9;** and

      (1) There is an entry of a final judgment; or

      (2) There is a filing of an appraisal award or a mediation settlement with us.

   c. If payment is not denied, within 90 days after we receive notice of an initial, reopened or supplemental claim.

   However, this provision **c.** does not apply if factors beyond our control reasonably prevent such payment.

   Failure to comply with this provision **c.** does not form the basis of a private cause of action against us.

2. If payment is denied in part, we will pay the undisputed amounts within the same time stated unless we have exercised our option under **SECTION I – CONDITIONS, I.**

3. Payment of a portion of the claim(s) being asserted in a loss under this policy does not act as a waiver of our right to dispute or deny any unpaid portion of any claim(s) that you may assert arose from a loss.

4. Any payment for expenses of engineering reports, professional services, or other expert opinions, reports, or estimates will not be covered or reimbursed unless we first request or approve the report, service, or other opinion.

5. Payments for all losses are deemed made on the date the payment is mailed to the "insured" or any other person named in the policy or legally entitled to receive payment.

6. The preceding paragraph **5.** does not relieve our duty to replace any such payment made by check not yet presented to our bank for payment upon your:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a.  Notice to us that you or other such intended payee named on the check are not in physical receipt of such payment; and

b.  Request of its reissuance.

7.  In no event will we make duplicate payments for the same element of loss because of the "insured's" failure to notify us of the existence of or termination of an "assignment agreement."

L.  **Mortgage Clause** in Forms **HO 00 03** and **HO 00 06:**

Paragraph **L.2.a.** is deleted and replaced by the following:

a.  Notifies us of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

This includes immediately notifying us of foreclosure or if foreclosure proceedings have been initiated.

R.  **Concealment Or Fraud** is deleted and replaced by the following:

R.  **Concealment Or Fraud**

The entire policy will be void if, whether before or after a loss, any "insured" has:

1.  Intentionally concealed or misrepresented any material fact or circumstance;

2.  Engaged in fraudulent conduct; or

3.  Made material false statements;

relating to this insurance or relating to a claim under this policy.

However, if this policy has been in effect for more than 90 days, we may not terminate the policy on the basis of credit information available in public records.

(This is Condition **Q.** in Form **HO 00 04**)

The following conditions are added to **SECTION I – CONDITIONS** of your policy:

T.  **Notice of Claim**

If your policy provides hurricane or windstorm coverage, then a claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm must be given to us in accordance with the terms of this policy and as follows:

a.  A claim or reopened claim must be reported within two years after the

hurricane first made landfall or a windstorm other than a Hurricane caused the damage, or,

b.  A supplemental claim must be reported within three years after the hurricane first made landfall or a windstorm other than a Hurricane caused the damage, and,

c.  Within any other applicable statutorily-required timeframe;

Whichever is less.

This condition concerning time for submission of claim does not affect any limitation for legal action against us as provided in this policy under the **Suit Against Us** Condition including any amendment to that condition.

(This is Condition **S.** in form **HO 00 04**)

---

### SECTION II – LIABILITY COVERAGES

Under **A. Coverage E – Personal Liability**, the following paragraph is added:

This insurance does not apply to any sums awarded as punitive or exemplary damages.

### SECTION II – EXCLUSIONS

Paragraph **A. "Motor Vehicle Liability," 1.c.(4)** is deleted and replaced by the following:

(4)  Used for any business purpose.

Paragraph **A. "Motor Vehicle Liability," 2.b.** is deleted and replaced by the following:

b.  Located on the "residence premises" at the time of an "occurrence" and used solely to service the "residence premises;"

Paragraph **A. "Motor Vehicle Liability," 2.e.(2)** is deleted and replaced by the following:

(2)  A private residential community that contains the "insured's" "residence premises," provided the community has designated or otherwise permits its private roadways to be used by golf carts and provided the golf cart is being operated by a driver with a valid drivers license and who is at least 16 years of age.

This paragraph is added at the end of Paragraph **A.2.**

However, any coverage provided in **A.2.a.** through **A.2.e.** above does not apply to mopeds and motorized scooters except as provided in **A.2.c.**

Paragraph **B. "Watercraft Liability," 2.c.(1)(b)** is deleted.

Paragraph **B. "Watercraft Liability," 2.c.(2),** items **(b)** through **(d)** are deleted.

Under **E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others:**

Item **1.** is **Expected or Intended Injury** is deleted and replaced by the following :

  **1. Expected or Intended Injury**

    "Bodily injury" or "property damage" that:

    **a.** Was a result of a:

      **(1)** Willful and malicious; or

      **(2)** Criminal;

      act or omission of the "insured;"

    **b.** Was intended by the "insured;" or
    **c.** Would have been expected by the "insured" based upon a reasonable person standard.

    Exclusions **a.** through **c.** above apply to all "bodily injury" or "property damage" even if the:

    **i.** "Bodily injury" or "property damage" was sustained by a different person, entity, or property than was expected or intended;

    **ii.** "Bodily injury" or "property damage" was a different kind, quality, or degree than was expected or intended;

    **iii.** "Insured" lacked the mental capacity to control his or her conduct;

    **iv.** "Insured" was not charged with or convicted of a criminal act or omission; or

    **v.** "Insured" was impaired by the abuse or mis-use of illegal drugs, legal drugs illegally used, or alcohol;

Item **7. Sexual Molestation, Corporal Punishment, Physical Or Mental Abuse** is deleted and replaced by the following:

  **7. Sexual Molestation, Corporal Punishment, Physical Or Mental Abuse**

    "Bodily injury" or "property damage" arising out of actual or threatened sexual molestation, sexual battery, sexual harassment, corporal punishment, or physical or mental abuse.

This includes but is not limited to any:

  **a.** Verbal or nonverbal communication;

  **b.** Behavior or conduct with sexual connotations; or

  **c.** Infliction of physical, emotional, or psychological injury or harm;

whether for gratification, discrimination, intimidation, coercion, or other purposes, regardless of whether such action or resulting injury is alleged to be intentionally or negligently caused, or as a result of violating any criminal statute regulating sexual activity.

The following items are added to **SECTION II – EXCLUSIONS, E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others** of your policy:

  **9. Pollution or Contaminants**

    "Bodily injury" or "property damage" arising:

    **a.** Out of the ingestion of paint that has lead in it;

    **b.** Out of the ingestion of paint that has lead compounds in it;

    **c.** Out of the inhalation of paint that has lead in it;

    **d.** Out of the inhalation of paint that has lead compounds in it;

    **e.** From radon, or any other substance that emits radiation; or

    **f.** In any manner (including liability imposed by law) from the discharge, disposal, release or escape of:

      **(1)** Vapors or fumes;

      **(2)** Gas or oil;

      **(3)** Toxic chemicals, liquid or gas;

      **(4)** Waste materials; or

      **(5)** Irritants, contaminants or pollutants.

    All other conditions are the same.

  **10. Trampolines**

    "Bodily injury" or "property damage" arising out of or relating in any way to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a.  The use, maintenance, or repair of a trampoline on the insured premises;

b.  The use of a trampoline by an insured off of the insured premises;

c.  The supervision by an insured of trampoline usage on the insured premises; or

d.  The supervision by an insured of trampoline usage off of the insured premises.

A trampoline is defined as:

(1)  A rebounding device;

(2)  Constructed of a resilient sheet or web;

(3)  Supported by springs in a metal frame; and

(4)  Used as a springboard and landing area in tumbling and gymnastic springing.

**11. Roofing, Roof Accessories, and Tree Work**

"Bodily injury" or "property damage" arising out of, or related in any way to the performance of roofing work or gutter installation work or to tree cutting, pruning or removal work on the "insured location" for which there is a monetary compensation by employees of, or those working for or with, persons or companies that were required to be, but were not, licensed to perform said work by all required state or local authorities, including city, town, and/or other municipal, governmental, or administrative bodies.

**12. "Criminal Activity"**

"Bodily injury" or "property damage" caused by, arising out of, or related in any way to criminal acts meaning any and all criminal acts performed by, at the direction of, or with the prior knowledge of any "insured" regardless of whether the consequences of those acts were expected, intended or anticipated.

**13. "Assault or Battery"**

"Bodily injury" or "property damage" caused by, arising out of, or related in any way to assault or battery committed by or at the direction of an "insured."

**14. "Drone or Other Unmanned Aircraft Or Ship"**

"Bodily injury" or "property damage" arising out of, related in any way to, or resulting from the ownership, maintenance or use of a drone or other unmanned aircraft or ship that can navigate autonomously without human control or beyond line of sight by way of GPS, remote control, or onboard computer.

**15. "Excessive Liability"** is added as follows:

"Bodily injury" or "property damage" arising out of, related in any way to, or resulting from the ownership, maintenance or use, loading or unloading by anyone of:

a.  any swimming pool slide, diving board, waterfall or similar structure.

b.  any unfenced or uncovered swimming pool or spa.

c.  a ramp, bowl, half-pipe or similar structure that is designed for use with bicycles, skateboards, scooters or skates.

d.  a hoverboard or any other self-balancing two-wheeled scooter.

However, Exclusions **15.c.** and **15.d.** above does not apply when such structure is designed to assist a handicapped person and, at the time of an "occurrence", it is being used to assist a handicapped person.

Under **Exclusion F. Coverage E – Personal Liability**, the following paragraph **7.** is added:

7.  Any "personal injury" offense.

**SECTION II – CONDITIONS**

C.  **Duties After "Occurrence"** is deleted and replaced by the following:

C.  **Duties After Occurrence.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1.  Give written notice to us or our agent as soon as is practical, which sets forth:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. The identity of the policy and "insured";

b. Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

c. Names and addresses of any claimants and witnesses;

2. As often as we reasonably require:

a. You, and any and all "insureds;" and

b. Any member, officer, director, partner, or similar representative of the association, corporation, or other entity, if you are the association, corporation, or other entity, who is an "insured;" and

c. Any agent, representative, including any public adjuster, engaged on behalf of you or any "insured;" or any member, officer, director, partner, or similar representative of an association, corporation, or other entity, described in the paragraph above;

must:

(1) Submit to examination under oath and recorded statements at the location insured or other reasonable location designated by us, while not in the presence of each other or any other insured;"

(2) Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement identifying who you are may be provided; and

(3) Sign any transcript of the examinations under oath and recorded statements;

At our request, the examinations will be conducted separately and not in the presence of any other persons except legal representation;

Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us;

3. Cooperate with us in the investigation, settlement or defense of any claim or suit;

4. Promptly forward to us every notice,

demand, summons or other process relating to the accident or "occurrence";

5. At our request, help us:

a. To make settlement;

b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses;

6. Under the **SECTION II – ADDITIONAL COVERAGES, C. - Damage to Property of Others** submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

7. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation, or incur expense other than for first aid to others at the time of the "bodily injury."

D. **Duties of an Injured Person – Coverage F – Medical Payments to Others** is deleted and replaced by the following:

D. **Duties of Person making a claim for "bodily injury" or "property damage."**

In case of an accident or "occurrence," the person making a claim for "bodily injury" or "property damage" or someone acting for that person will perform the following duties that apply:

1. Give us written proof of claim, under oath if required, as soon as is practical;

2. Authorize us to obtain copies of medical reports and records;

3. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

4. As often as we reasonably require:

a. You, and any and all "insureds;" and

b. Any member, officer, director, partner, or similar representative of the association, corporation, or other entity, if you are the association, corporation, or other entity, who is an "insured;" and

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c.  Any agent, representative, including any public adjuster, engaged on behalf of you or any "insured;" or any member, officer, director, partner, or similar representative of an association, corporation, or other entity, described in the paragraph above;

must:

(1) Submit to examination under oath and recorded statements at the location insured or other reasonable location designated by us, while not in the presence of each other or any other insured;"

(2) Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement identifying who you are may be provided; and

(3) Sign any transcript of the examinations under oath and recorded statements;

At our request, the examinations will be conducted separately and not in the presence of any other persons except legal representation;

Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us.

J.  **Concealment or Fraud** is deleted and replaced by the following:

J.  **Concealment or Fraud**

The entire policy will be void if, whether before or after a loss, any "insured" has:

1.  Intentionally concealed or misrepresented any material fact or circumstance;

2.  Engaged in fraudulent conduct; or

3.  Made material false statements;

relating to this insurance or relating to a claim under this policy.

However, if this policy has been in effect for more than 90 days, we may not terminate the policy on the basis of credit information available in public records.

**SECTIONS I AND II – CONDITIONS**

C.  **Cancellation** is deleted and replaced by the following:

1.  You may cancel this policy at any time by returning it to us or by giving us advance written notice of the date cancellation is to take effect.

2.  If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, we may cancel this policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations, or provided to you electronically if we have your consent and agreement on file to receive documents electronically and you have not withdrawn such consent.

Proof of mailing, whether by postal mail or electronically as described in the next sentence, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox that you designate to us for the purpose of receiving mail.

a.  When you have not paid the premium, we may cancel during this period by letting you know at least 10 days before the date cancellation takes effect.

b.  If:

(1) There has been a material misstatement or fraud related to the claim;

(2) We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(3)** We have paid policy limits:

We may cancel during this period by letting you know at least 45 days before the date cancellation takes effect.

**c.** We shall be entitled to collect any additional premium required to keep the policy in effect for this period.

However, this provision **C.2.c.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**3.** If the conditions described in Paragraph **C.2.** do not apply, we may cancel only for the following reasons:

**a.** When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

**b.** We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice:

**(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**(2)** When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

**(a)** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(b)** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**(c)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

Except as provided in Paragraphs **C.3.a.** and **C.3.b.(1)** of this provision, we will let you know of our action at least 20 days before the date cancellation takes effect.

**(3)** When this policy has been in effect for more than 90 days, we may cancel:

**(a)** If there has been a material misstatement;

**(b)** If the risk has changed substantially since the policy was issued;

**(c)** In the event of failure to comply, within 90 days of the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

**(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

**(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(f)** On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

We will provide written notice at least 120 days before the date cancellation takes effect.

**(4)** When this policy has been in effect for more than 90 days, we may not cancel:

  **(a)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured"; or

  **(b)** On the basis of credit information available in public records.

**4.** If the date of cancellation becomes effective during a "hurricane occurrence":

  **a.** The date of cancellation will not become effective until the end of the "hurricane occurrence"; and

  **b.** We shall be entitled to collect additional premium for the period beyond the original date of cancellation for which the policy remains in effect.

However, this provision **C.4.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**5.** Notwithstanding any other provision of law, we may cancel this policy after giving you at least 45 days' notice if the Florida Office of Insurance Regulation determines that early cancellation of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition or lack of adequate reinsurance coverage for hurricane risk.

**6.** When this policy is cancelled, the premium for the period of time from the date of cancellation to the expiration date will be refunded pro rata.

**7.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 days after the date cancellation takes effect.

**D. Nonrenewal** is deleted and replaced by the following:

**D. Nonrenewal.**

**1.** We may elect not to renew this policy. We may do so by letting you know in writing at least 45 days before expiration of the policy. This nonrenewal notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically and you have not withdrawn such consent.

Proof of mailing, whether by postal mail or electronically as described in the next sentence, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox that you designate to us for the purpose of receiving mail.

  **a.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, then, during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", we may elect not to renew this policy only if:

    **(1)** You have not paid the renewal premium;

    **(2)** There has been a material misstatement or fraud related to the claim;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(3)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

**(4)** We have paid policy limits.

**b.** We shall be entitled to collect any additional premium required to keep the policy in effect during this period.

However, this provision **D.1.b.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**c.** If the conditions described in Paragraph **D.1.a.** do not apply, we may elect to not renew this policy by providing written notice at least 120 days before the expiration date of this policy.

**2.** We will not nonrenew this policy:

**a.** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**b.** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

**c.** On the basis of filing claims for loss caused by sinkhole damage, unless:

**(1)** The total of such property claim payments equal or exceed the policy limits of the policy in effect on the date of loss for property damage to the covered building; or

**(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**d.** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

**3.** If the date of nonrenewal becomes effective during a "hurricane occurrence":

**a.** The expiration date of this policy will not become effective until the end of the "hurricane occurrence"; and

**b.** We shall be entitled to collect additional premium for the period the policy remains in effect.

However, this provision **D.3.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**4.** Notwithstanding any other provision of law, we may nonrenew this policy after giving you at least 45 days' notice if the Florida Office of Insurance Regulation determines that early nonrenewal of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition or lack of adequate reinsurance coverage for hurricane risk.

**F.** **Subrogation** is deleted and replaced by the following:

**Subrogation**

All rights of recovery against any person or business for your damages are automatically transferred to us from you upon our payment to you under any coverage of this policy to the extent of our payment without need to obtain written assignment or transfer of rights from you. You must do nothing after loss to impair our recovery rights. Upon our request, you must sign and deliver all papers and cooperate with us in the prosecution of our subrogated claim.

Subrogation does not apply to Coverage **F.** or Paragraph **C. Damage to Property of Others** under **SECTION II – ADDITIONAL COVERAGES.**

The following Conditions are added:

**H.** **Renewal Notification.** If we elect to renew this policy, we will let you know, in writing:

**1.** Of our decision to renew this policy; and

2. The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy.

**I. Meetings or Inspections**

If we need access to an insured or claimant or to the insured property, we will provide you or the claimant 48 hours notice before scheduling a meeting or onsite inspection. You or the claimant may deny access to the property if the notice has not been provided. You or the claimant may waive the 48 hour notice requirement.

**J. Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

**K. Change in Ownership, Occupancy, or Usage of "Residence Premises."**

If we have not been notified by you within sixty (60) days of any change in ownership, title, use, or occupancy of the "residence premises," including:

1. The rental of the "residence premises;"
2. Vacancy or abandonment of the "residence premises;"

The use of the "residence premises" for any purpose other than a residential unit;

Any loss occurring from the 61st day after such change to the date proper notice is given, will be excluded from coverage. If this occurs, premium will be refunded for the period during which the coverage is suspended.

All other provisions of this policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERSONAL INJURY COVERAGE – FLORIDA

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

The following is added to **Coverage E – Personal Liability:**

**Personal Injury Coverage**

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

**SECTION II – EXCLUSIONS**

With respect to the coverage provided by this endorsement, **Section II – Exclusions** is replaced by the following:

This insurance does not apply to:

1. "Personal injury":

   **a.** Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

   **b.** Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

   **c.** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   **d.** Arising out of a criminal act committed by or at the direction of an "insured";

   **e.** Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;

   **f.** Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

   **g.** Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business".

   This exclusion does not apply to:

   **(1)** The rental or holding for rental of an "insured location":

      **(a)** On an occasional basis if used only as a residence;

      **(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      **(c)** In part, as an office, school, studio or private garage; and

   **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

   **h.** Arising out of civic or public activities performed for pay by an "insured";

   **i.** To you or an "insured" as defined under Definition **5.a.** or **5.b.**;

HOMEOWNERS
**FIM 00 51 05 21**

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

**(1)** Repay; or

**(2)** Share damages with;

another person who may be obligated to pay damages because of "personal injury" to an "insured";

**j.** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed; or

**k.** Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

**2.** Any loss, cost or expense arising out of any:

**a.** Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, "fungi", wet or dry rot, or bacteria; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants, "fungi", wet or dry rot, or bacteria.

## SECTION II – ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, Paragraph **D. Loss Assessment** is replaced by the following:

**D. Loss Assessment**

We will pay up to $1,000 for your share of loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of "personal injury".

## SECTION II – CONDITIONS

With respect to the coverage provided by this endorsement, Section **II** –Conditions **A. Limit Of Liability, B. Severability Of Insurance** and **C. Duties After Loss** are replaced by the following:

**A. Limit Of Liability**

Our total liability under Personal Injury Coverage for all damages resulting from any one offense will not be more than the Limit Of Liability shown in the Declarations for Coverage **E.** This limit is the same regardless of the number of "insureds", claims made or suits brought.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

**C. Duties After Offense**

In the event of a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

**a.** The identity of the policy and "named insured";

**b.** Reasonably available information on the time, place and circumstances of the offense; and

**c.** Names and addresses of any claimants and witnesses;

2. As often as we reasonable require, submit to an examination under oath, while not in the presence of any other "insured," and sign the same;

3. Cooperate with us in the investigation, settlement or defense of any claim or suit;

4. Promptly forward to us every notice, demand, summons or other process relating to the offense;

5. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation, or incur expense other than for first aid to others at the time of the "personal injury".

## SECTIONS I AND II – CONDITIONS

With respect to the coverage provided by this endorsement, Sections **I** and **II – Conditions J. Policy Period** does not apply.

All other provisions of this policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY**

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

(FOR USE WITH FORM HO 00 03)

**SCHEDULE \***

| | | | |
|---|---|---|---|
| 1. | **Section I – Property Coverage Limit of Liability For the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria** | $ 50,000 $ 50,000 | **Each Covered Loss** **Policy Aggregate** |
| 2. | **Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria** | $50,000 | |

\* Entries may be left blank if shown in the policy Declarations.

## DEFINITIONS

The following Definition is added:

"Fungi"

   **a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

   **b.** Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

## SECTION I – PROPERTY COVERAGES

**ADDITIONAL COVERAGES**

The following Additional Coverage **13.** is added:

**13. "Fungi", Wet Or Dry Rot, Or Bacteria**

   **a.** The amount shown in the Schedule above is the most we will pay for:

     **(1)** The total of all loss or costs payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

     **(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

     **(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

     **(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

   **b.** The coverage described in **13.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

   **c.** The **Each Covered Loss** amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage resulting from any one covered loss; and

   The **Policy Aggregate** amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage for all covered losses, regardless of the number of locations insured under this endorsement or number of claims made.

   **d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to any of the SECTION I –

Property Coverages shown in the Declarations to which this coverage applies.

## SECTION I – PERILS INSURED AGAINST

## COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES

Paragraph **2.c.(5)** is deleted and replaced by the following:

(5) Repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor, that occurs or develops over a period of time, whether hidden or not.

In the event this exclusion applies, we will not pay for any damages sustained from the first day and instant the repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor began.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

Paragraph **2.c.(6)(g)** is deleted and replaced by the following:

(g) Birds, rodents, insects, "vermin," amphibians, or reptiles;

The **Exception to c.(6)** is deleted and replaced by the following:

## Exception to c.(6)

If any of these cause water damage not otherwise excluded or limited elsewhere in the policy, from a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and repairing only that particular part of a building or only that particular part of an other structure covered under Coverage **A** or **B** on the "residence premises" necessary to access and repair that specific point of that system or appliance from which the water escaped.

The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that specific point of that system or

appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not. However, such tear out and repair coverage only applies if the water or steam causes actual damage to a covered building on the "residence premises."

In the event that additional tear out and repair are required beyond the coverage provided for access and repair in the provision immediately above, we will still pay only for our portion of the access and repair cost required to repair only that specific point of that system or appliance that caused the covered loss as described above. However, we do not cover loss:

a. To the system or appliance from which this water or steam escaped;

b. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises;"

c. To a plumbing system, whether above or below the ground, caused by:

(1) Age, collapse, obsolescence, wear, tear;

(2) Fading, oxidization, weathering;

(3) Deterioration, decay, marring, delamination, crumbling, settling, cracking;

(4) Shifting, bulging, racking, sagging, bowing, bending, leaning;

(5) Shrinkage, expansion, contraction, bellying, corrosion;

(6) The unavailability or discontinuation of a part or component of the system; or

(7) Any other age or maintenance-related issue;

d. To a plumbing system, whether above or below ground, caused by the impairment, state or condition of the system which prohibits repair or replacement including access, necessary to connect the adjoining

parts of appliances, pipes, or system; or

**e.** Otherwise excluded or limited elsewhere in the Policy.

For the purposes of this provision, a plumbing system or household appliance does not include:

**i.** A sump, sump pump, irrigation system, or related equipment; or

**ii.** A roof drain, gutter, down spout, or similar fixtures or equipment.

This coverage does not increase the limit of liability that applies to the damaged covered property.

## SECTION I – EXCLUSIONS

The following Exclusion **A.10** is deleted and replaced by the following:

**i. "Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", wet or dry rot, or bacteria, meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This Exclusion does not apply:

**(1)** When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

**(2)** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION II – CONDITIONS

**A. Limit of Liability** is deleted and replaced by the following:

**A. Limit of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of

"insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. This is the most we will pay regardless of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;

**2.** Number of persons injured;

**3.** Number of persons whose property is damaged;

**4.** Number of "insureds"; or

**5.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in **A. Limit of Liability** of this endorsement:

**B. Severability of Insurance** is deleted and replaced by the following:

**B. Severability of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II Conditions **A. Limit of Liability**. This Condition will not increase the limit of liability for this coverage. All other provisions of the policy apply.

**Homeowners**
**FIM 00 17 05 21**

### THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY

# ANIMAL LIABILITY EXCLUSION ENDORSEMENT

**SECTION II – LIABILITY COVERAGES**

The following paragraph is added to **COVERAGE E – PERSONAL LIABILITY**

We will NOT cover any damages caused by, arising out of or in connection with any animal owned or kept by any insured**, tenant or guest** whether or not the injury occurs on your premises or any other location. All other provisions and exclusions apply.

The following paragraph is added to **COVERAGE F – MEDICAL PAYMENTS TO OTHERS**

We will NOT cover any damages caused by, arising out of or in connection with any animal owned or kept by any insured**, tenant or guest** whether or not the injury occurs on your premises or any other location. All other provisions and exclusions apply.

**SECTION II – ADDITIONAL COVERAGES**

The following is added to paragraph **C. Damage to Property of Others**.

 **f.** Caused by, arising out of or in connection with any animal owned or kept by any insured**, tenant or guest** whether or not the injury occurs on your premises or any other location. All other provisions and exclusions apply.

Homeowners
FIM 00 19 05 21

**THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY**

# SCREEN ENCLOSURE HURRICANE LIMITATION

(FOR USE WITH ALL FORMS <u>EXCEPT</u> HO 00 04)

Your policy is amended as follows for **hurricane losses only**.

## DEFINITIONS

The following Definition is added:

"Screen Enclosure" means any structure on the residence premises (regardless of whether it is attached to your dwelling) enclosed by screens on more than one side otherwise open to the weather, and not constructed and covered by the same or substantially the same materials as that of the dwelling where you reside.

## SECTION I – PROPERTY COVERAGES

### Coverage A – Dwelling

The following paragraph **3.** is added:

**3.** We do not cover "screen enclosure(s)" as defined unless specified on the Declarations and for which an additional premium is paid. If an amount of coverage for "screen enclosure(s)" is listed on the declarations page, this amount is part of Coverage **A** and does not reduce your Coverage **A** limit of liability.

### Coverage B – Other Structures

The following paragraph is added:

We do not cover "screen enclosure(s)" as defined unless specified on the declarations page and for which an additional premium is paid. If an amount of coverage for "screen enclosure(s)" is listed on the declarations page, this amount is part of Coverage **B** and does not reduce your Coverage **B** limit of liability.

## SECTION I – CONDITIONS

The following paragraphs **D.3.** and **D.4.** are added:

**3.** "Screen enclosure(s)" as specified on the declarations page and for which an additional premium is paid, at replacement cost up to the amount shown on your declarations page for screen enclosures.

**4.** A loss to your property reduces our liability limit by the amount of the loss under the appropriate coverage. Upon repair or replacement of the property, the limit will return to the limit shown on the declarations page. If the damaged property has only been partially repaired or replaced, the limit will be equal to the replaced or repaired value, but not more than the value shown on the declarations page.

*Any loss payments under this coverage will be subject to the calendar-year hurricane deductible as defined in your policy. In the event that other covered areas are also damaged, the hurricane deductible amount will be applied to all damage collectively. This can result in high out-of-pocket expenses for you in the event of a hurricane loss.*

**THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY**

# ORDINANCE OR LAW COVERAGE

## SECTION I – ADDITIONAL COVERAGES

The following is added:

**11. Ordinance or Law.**

  **a.** You may use up to the Ordinance or Law percentage shown on the declarations page for the increased costs you incur due to the enforcement of building, zoning, or land use ordinance or laws. This coverage applies if the enforcement is directly caused by the same insured loss and the requirement is in effect at the time the covered loss occurs.

  This applies to any building, zoning, or land use ordinances which requires or regulates:

  **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against; or

  **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

  **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

  **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction,

demolition, remodeling, renovation, repair, or replacement of property as stated in **a.** above.

  **c.** We do not cover:

  **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

  **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants in or on any covered building or other structure.

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

  **d.** In the event that there are multiple methods of compliance with the building, zoning, or land use ordinance(s) or law(s) to which this Additional Coverage applies, the limit of liability will be up to the least amount of the available methods of compliance.

This is Additional Coverage **10.** in Form **HO 00 06**.

## SECTION I - EXCLUSIONS

Paragraph **1.a.** does not apply with respect to coverage provided by this endorsement.

(This is paragraph **A.1.a.** in Form HO 00 03)

All other provisions of this policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY**

# WINDSTORM PROTECTIVE DEVICES

For the premium credit applied:

1. We acknowledge the installation of storm shutters or other wind protective devices, reported to you by us, that protect all exterior wall and roof openings, including doors, windows, skylights and vents, other than soffit and roof ridge vents, that are part of:

   a. All buildings owned by you and located on, or at the location of, the "residence premises"; or

   b. A covered condominium or cooperative unit; or

   c. A one-family dwelling or an apartment unit in a two or more family building in which you reside as a tenant and which contains covered personal property.

   At the location described in the Declarations.

2. You agree to:

   a. Maintain each storm shutter or other windstorm protective device in working order;

   b. Close and secure all storm shutters or other windstorm protective devices when necessary or arrange for others to do so in your absence; and

   c. Let us know promptly of:

      (1) The alteration, disablement, replacement, or removal of, or significant damage to, any storm shutter or other windstorm protective device; or

      (2) Any alteration or additions to existing buildings owned by you or the construction of any new buildings owned by you.

      At the location described in the Declarations.

   While your failure to comply with any of the conditions in **2.** above will not result in denial of a claim for loss caused by the peril of Windstorm or Hail, we reserve the right to discontinue the benefits of this endorsement, including any related premium credit, in the event of such a failure.

All other provisions of the policy apply.

**Homeowners**
**FIM 00 33 05 21**

### THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY

# LOSS ASSESSMENT COVERAGE

**SECTION I – ADDITIONAL COVERAGES**

**7. Loss Assessment** is deleted and replaced by the following:

**7. Loss Assessment.**

**a.** We will pay, up to the limit shown on the declarations page, for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a peril insured against under Coverage A – Dwelling, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

**b.** This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

**c.** We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

**d.** Regardless of the number of assessments, the limit of liability is the most we will pay with respect to any one loss covered under:

**a.** Section I – Additional Coverage **7.**;

**(2)** Section II – Additional Coverage **D.**; or

**(3)** Both Section I and Section II.

**e.** Special limit

We will not pay more than $1000 of your assessment that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

**SECTION I – CONDITIONS**

**Q**. **Policy Period** does not apply to this coverage

**SECTION II – EXCLUSIONS**

Paragraph **F.1.a.** does not apply to this coverage.

**SECTION II – ADDITIONAL COVERAGES**

**D.  Loss Assessment** is deleted and replaced by the following:

**D. Loss Assessment.**

**1.** We will pay, up to the limit shown on the declarations page, for your share of loss assessment charged during the policy period

against you by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded under Section II of this policy; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

**(1)** The director, officer or trustee is elected by the members of a corporation or association of property owners; and

**(2)** The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

**3.** We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

**4.** Each of the following is considered to be a single loss:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

**b.** A covered act of a director, officer or trustee.  An act involving more than one director, officer or trustee is considered to be a single act.

**5.** Regardless of the number of assessments, the limit of liability is the most we will pay with respect to any one loss covered under:

**a.** Section I – Additional Coverage **7.** ;

**b.** Section II – Additional Coverage **D.**; or

**c.** Both Section I and Section II.

**6.** Special limit

We will not pay more than $1000 of your assessment that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

All other provisions of this policy apply.

Homeowners
**FIM 00 39 05 21**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CATASTROPHIC GROUND COVER COLLAPSE

**PERILS INSURED AGAINST**

The following peril is added:

**Catastrophic Ground Cover Collapse**

We insure for direct physical loss to property caused by the peril of "catastrophic ground cover collapse".

"Catastrophic Ground Cover Collapse" means geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. "Structural damage" to the covered building, including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

Contents coverage applies if there is a loss resulting from a "catastrophic ground cover collapse".

Damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute a loss resulting from a "catastrophic ground cover collapse".

"Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

c. Damage that results in listing , leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

e. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

"Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

"Primary structural system" means an assemblage of "primary structural members".

The Earth Movement Exclusion does not apply to this peril.

All other provisions of this policy apply.

Homeowners
**FIM 00 42 05 21**

**THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY**

# COSMETIC AND AESTHETIC DAMAGE TO FLOORS LIMITATION

### (Forms HO 00 03 and HO 00 06)

The total limit of liability for Coverages **A** and **B** (Coverage **A** in form **HO 00 06**) combined is $10,000 per policy term for cosmetic and aesthetic damages to floors.

1. Cosmetic or aesthetic damage includes but is not limited to:

   a. Chips;

   b. Scratches;

   c. Dents; or

   d. Any other damage to less than 5% of the total floor surface area and does not prevent typical use of the floor.

2. This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.

3. This limit does not increase the Coverage **A** or Coverage **B** limits of liability shown on the Declarations.

4. This limit does not apply to cosmetic or aesthetic damage to floors caused by a Peril Insured Against as named and described for **Coverage C – Personal Property**.

All other policy provisions apply.

Homeowners
**FIM 00 49 05 21**

### THIS ENODRSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY

# NO COVERAGE FOR LOSS CAUSED BY EROSION, TREE ROOTS, OR ORGANIC DEBRIS – FLORIDA
### (FOR USE WITH FORM HO 00 03 ONLY)

**SECTION I – PERILS INSURED AGAINST**

In Form **HO 00 03**, the following paragraphs **2.c.(6)(j)**, **2.c.(6)(k)**, and **2.c.(6)(l)** are added to **SECTION I – PERILS INSURED AGAINST**.

**(j)** Erosion;

**(k)** Tree roots, whether or not the tree is located on the land on which the dwelling is located; or

**(l)** The decomposition or deterioration of organic matter or debris.

All other provisions of this policy apply.

Homeowners
**FIM 00 72 05 21**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# ANIMAL LIABILITY SPECIAL LIMITS ENDORSEMENT - FLORIDA

**(FOR USE WITH FORM HO 00 03 Only)**

For an additional premium, the following special limits of liability apply to coverage provided by this Endorsement:

| SECTION II – COVERAGE E – Personal Liability Animal Liability Special Limits (annual aggregate) | $ * 25,000.00 |
|---|---|

*Entries may be left blank if shown in the policy Declarations.

For the additional premium, coverage under **SECTION II – LIABILITY COVERAGES, COVERAGE E – Personal Liability** will apply to "bodily injury" or "property damage" caused by, arising out of, or in connection with any animal owned by any "insured," subject to the exclusions and conditions listed in your policy.

The special limit of liability shown above is the most we will pay for the total of all losses covered under this Endorsement during the policy period, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this Endorsement.

## SECTION II – EXCLUSIONS

The following Exclusion **F.7.** is added as follows:

7. "Bodily injury" or "property damage" caused by, arising out of, or in connection with:

   a. Prohibited breeds of dogs;

   b. Guard dogs;

   c. Exotic, farm or saddle animals; or

   d. Any animal with any prior documented incident of biting or attacking,

   Owned by, kept by, or in the care of any "insured", resident, tenant or guest whether or not the damage occurs on your premises or any other location.

   Prohibited breeds of dogs are: Akitas, American Bulldogs, Beaucerons, Caucasian Mountain Dogs, Chows, Doberman Pinschers, German Shepherds, Great Danes, Keeshonds, Pit Bulls, Presa Canarios, Rottweilers, Staffordshire Terriers, and Wolf hybrids.

Any mixed breed made up of one or more of the breeds listed above is also considered a prohibited breed of dog.

Guard dogs are dogs specifically trained to guard property or people.

Exotic, farm or saddle animals include but are not limited to hoofed animals, livestock, reptiles, primates, and fowl.

Except for the coverage provided in this Endorsement, the Exclusions contained in the Animal Liability Exclusion Endorsement (**FIM 00 17**) shall apply.

All other provisions of the policy apply.

POLICY NUMBER: FPH3-000118820

**HOMEOWNERS**
**FIM 03 51 06 21**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALENDAR YEAR HURRICANE DEDUCTIBLE (PERCENTAGE) WITH SUPPLEMENTAL REPORTING REQUIREMENT – FLORIDA

**WARNING:** **IF THIS POLICY PROVIDES AN INFLATION GUARD OPTION, THE ACTUAL CALENDAR YEAR HURRICANE DEDUCTIBLE AMOUNT AT THE TIME OF LOSS MAY BE HIGHER THAN THE DOLLAR AMOUNT SHOWN IN THE DECLARATIONS.**

**SCHEDULE**

| | |
|---|---|
| **Calendar Year Hurricane Deductible Percentage Amount:** | 2 % |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following deductible language is added to this policy:

**HURRICANE DEDUCTIBLE**

The deductible for loss caused by a "hurricane" is the Hurricane Deductible as shown in the Schedule above.  If a deductible is not shown in the Schedule above, the deductible for Hurricane shown in the Declarations will apply.

In the event of a single loss caused by a "hurricane" during the calendar year, this deductible will apply in place of any other deductible stated in the policy.

For any subsequent loss caused by a "hurricane" during the calendar year, the deductible applied will be the greater of:

1. The remaining amount of the Hurricane Deductible; or

2. The All Other Perils Deductible amount shown in the Declarations.

In no event will the deductible applied to the loss caused by a "hurricane" be less than the All Other Perils Deductible amount shown in the Declarations. Any deductible applied under a policy not issued by us or an insurer in the same insurer group will not be applied to any loss under this policy.

If you experience "hurricane" losses in the same calendar year, on more than one policy issued by us or an insurer in the same insurer group for the same insured location, the applicable deductible will be the highest amount stated in any one of the policies. If you incurred a "hurricane" loss, any lower deductibles on policies subsequently issued or renewed by us or an insurer in the same insurer group within the same calendar year covering the same property will not apply to loss caused by "hurricane" until January 1 of the following calendar year.

If the renewal or replacement policy provides a lower hurricane deductible than the prior policy and you have not incurred a loss caused by a "hurricane" in that same calendar year, the lower hurricane deductible will take effect on the effective date of the renewal or replacement policy.

The Hurricane Deductible applies only to direct physical loss or damage to covered property caused by wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a "hurricane."

We require that you promptly report any loss or damage caused by a "hurricane" that is below the hurricane deductible so that we may consider the amount of such loss when adjusting claims for subsequent "hurricane" occurrences that occur during the calendar year.

The Hurricane Deductible does not apply to **SECTION I – PROPERTY COVERAGES, Additional Coverages, 7. Loss Assessment** (if a limit for this coverage is shown in the Declarations).

**DEFINITIONS:**

When used in this endorsement:

"Hurricane" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.  The duration of the "hurricane" includes the time period, in Florida:

1.  Beginning at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

2.  Continuing for the time period during which the hurricane conditions exist anywhere in Florida; and

3.  Ending 72 hours following the termination of the last hurricane watch or hurricane warning for any part of Florida by the National Hurricane Center of the National Weather Service.

All other provisions of this policy apply.

FIM 03 51 06 21

POLICY NUMBER: FPH3-000118820

**HOMEOWNERS
HO 04 46 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INFLATION GUARD

**SCHEDULE\***

| |
|---|
| Percentage Amount: 4 % |

\*Entry may be left blank if shown elsewhere in this policy for this coverage.

The limits of liability for Coverages **A, B, C** and **D** will be increased annually by the percentage amount that is:

**1.** Shown in the Schedule above; and

**2.** Applied pro rata during the policy period.

POLICY NUMBER: FPH3-000118820

**HOMEOWNERS**
**HO 04 53 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CREDIT CARD, ELECTRONIC FUND TRANSFER CARD OR ACCESS DEVICE, FORGERY AND COUNTERFEIT MONEY COVERAGE

**INCREASED LIMIT**

**SCHEDULE***

---

**SECTION I – PROPERTY COVERAGES**

    **ADDITIONAL COVERAGES**

    **6.**  **Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**
        The limit of liability for this coverage is increased as noted below.

| **Increase In Limit Of Liability** | **Total Limit Of Liability** |
|---|---|
| 10,000 | |

All other provisions of this policy apply.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

---

Copyright, Insurance Services Office, Inc.,  1999

**HOMEOWNERS**
**HO 04 96 10 00**

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

    **a.** One or more activities:

      **(1)** Not described in **b.** through **d.** below; and

      **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

    **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in **A.2.** above, and

  **2.** Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

    **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section **II** – Exclusions;

    **b.** Coverage, under Section **I**, for other structures from which any "business" is conducted; and

  **2.** Limits Section **I** coverage, under Coverage **C** – Special Limits of Liability, for "business" property:

    **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

    **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

**HOMEOWNERS**
**HO 05 99 05 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW – FLORIDA

**A. Coverage**

We insure, up to $5,000, for direct physical loss, not caused by the negligence of an "insured", to property covered under Section **I** caused by water, or waterborne material, which:

**1.** Backs up through sewers or drains; or

**2.** Overflows or is discharged from a:

   **a.** Sump, sump pump; or

   **b.** Related equipment;

   even if such overflow or discharge results from mechanical breakdown. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not increase the limits of liability for Coverage **A, B, C** or **D** stated in the Declarations.

**B. Section I – Perils Insured Against**

With respect to the coverage described in **A.** above, Paragraphs:

**A.2.c.(6)(b)** in Form **HO 00 03;**

**A.2.e.(2)** in Form **HO 00 05;**

**2.j.(2)** in Endorsement **HO 05 26;**

**3.j.(2)** in Endorsement **HO 17 51;** and

**2.c.(6)(b)** in Endorsement **HO 17 52;**

are replaced by the following:

Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**C. Special Deductible**

The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement.

We will pay only that part of the total of all loss payable under Section **I** that exceeds $250. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage **D** – Loss Of Use.

**D. Exclusion**

The **Water** Exclusion is replaced by the following:

**Water**

This means:

**1.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**2.** Water which:

   **a.** Backs up through sewers or drains; or

   **b.** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

   as a direct or indirect result of flood;

**3.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**4.** Waterborne material carried or otherwise moved by any of the water referred to in **D.1.** through **D.3.** of this Exclusion.

This Exclusion applies regardless of whether any of the above, in **D.1.** through **D.4.,** is caused by an act of nature or is otherwise caused.

This Exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **D.1.** through **D.4.,** is covered.

All other provisions of this policy apply.

**HOMEOWNERS**
**HO 23 86 05 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT – FLORIDA

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage **C;** and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (3) Smoking implements; or

      (4) Jewelry; and

   f. Golfer's equipment, meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles, whose age or history contributes to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above.

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage **C,** if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in **A.2.a. – f.** above, the limit of liability that applies to the item.

2. We will settle the loss as follows:

   a. If the Mobilehome Endorsement is not made a part of this policy, we will settle the loss as noted in Paragraph **C.1.** above whether or not actual repair or replacement is complete.

© Insurance Services Office, Inc., 2012

**b.** If the Mobilehome Endorsement is made a part of this policy:

**(1)** If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value of the loss until the actual repair or replacement is complete.

**(2)** You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged property.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2012